FILED

1  NYE, PEABODY, STIRLING, HALE & MILLER, LLP
   David L. Nye (SBN 67009)
2  Jonathan D. Miller (SBN 220848)
   33 West Mission St., Suite 201
3  Santa Barbara, California 93101
   Ph: (805) 963-2345
4  Em: david@nps-law.com
        jonathan@nps-law.com
5
6  TERRY L. BAKER, ATTORNEY AT LAW
   Terry L. Baker (SBN 214365)
7  820 Bay Avenue, Suite 230L
   Capitola, CA 95010
8  Tel:   (831) 476-7900
   Fax:   (831) 476-7906
9
   SCHENDZIELOS & ASSOCIATES, LLC
10 Daniel J. Schendzielos (CO, SBN 22542)
   8547 E. Arapahoe Rd., Suite J534
11 Greenwood Village, CO 80112
   Tel:   (303) 773-6600
12 Fax:   (303) 957-2382

13 Attorneys for Plaintiffs  JOHN R. BEHRMANN and NANCY P. BEHRMANN

2012 JUN 28  PM 4: 03

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

14              UNITED STATES DISTRICT COURT
15         FOR THE CENTRAL DISTRICT OF CALIFORNIA

                                    CV12-5636 DMG (CWx)

16 JOHN R. BEHRMANN, and NANCY P.        Case No.
   BEHRMANN, as individuals and assignees of DR.
17 ROBERT GRIEGO, DR. CAROLE GRIEGO,    COMPLAINT FOR DAMAGES
   JOHN GOODSON, TERRY P. GILLETT,
18 BRENDA A. GILLETT                     1) Breach of Implied Agreement
                                         2) Intentional Interference with
19              Plaintiffs,                 Contractual Relations
                                         3) Negligence
20      vs.                              4) Professional Negligence
                                         5) Negligent Misrepresentation and
21 MICHAEL GOLDSTEIN, an individual,        Omission
   CHRISTIE KENNETT, an individual, HUSCH 6) Material Breach of Fiduciary Duty
22 BLACKWELL LLP, a Missouri Limited Liability 7) Civil Conspiracy
   Partnership, JOHN T. HOUK, II, an individual, 8) Consumer Legal Remedies Act
23 MIRIAM M. HOUK, an individual, JOHN T.  9) Violation of Pennsylvania Unfair
   HOUK III, an individual, JANET H. RIDGELY,    Trade Practices and Consumer
24 an individual, JULIE L. HOUK, an individual,   Protection Law – PA Stat. 201-1 et
   NATIONAL HERITAGE FOUNDATION,  a non-       seq.
25 profit organization, and DOES 1-10, inclusive. 10) Violation of Missouri
                                             Merchandising Practices Act – Mo.
26              Defendants.                   Rev. Stat 407.010 et seq.
27
28                                       DEMAND FOR JURY TRIAL

                                    1
                        COMPLAINT FOR DAMAGES

Plaintiffs, John R. Behrmann and Nancy P. Behrmann (collectively referred to as the "Behrmanns" or "Plaintiffs"), individually and as assignees of Dr. Robert Griego, Dr. Bill Finnegan, William P. O'Connell, , Dr. Robert Griego, (collectively referred to as the "Plaintiffs") through their undersigned counsel, allege for their Complaint against each of the named Defendants as follows:

## I.

## PARTIES

1.      Plaintiff John R. Behrmann ("J. Berhmann") is an individual over the age of twenty one (21) years who is a citizen and resident of the State of Pennsylvania.   At all times material to this Complaint he has been married to Nancy P. Behrmann.

2.      Plaintiff Nancy P. Behrmann is an individual over the age of twenty one (21) years who is a citizen and resident of the State of Pennsylvania. At all times material to this Complaint she has been married to J. Behrmann.

3.      Assignor Dr. Robert Griego is an individual over the age of twenty one (21) years who is a citizen and resident of the State of Arizona. On or about June 27, 2012, Griego executed an assignment of rights authorizing Behrmann to pursue all claims relating to NHF and the Houks on his behalf.

4.      Assignor Dr. Carole Griego is an individual over the age of twenty one (21) years who is a citizen and resident of the State of Arizona. On or about June 27, 2012, Griego executed an assignment of rights authorizing Behrmann to pursue all claims relating to NHF and the Houks on her behalf.

5.      Assignor John Goodson is an individual over the age of twenty one (21) years who is a citizen and resident of the State of Arizona.  On or about June 27, 2012, Goodson executed an assignment of rights authorizing Behrmann to pursue all claims relating to NHF and the Houks on his behalf.

6.      Assignor Terry Gillett is an individual over the age of twenty one (21) years who is a citizen and resident of the State of Arizona.  On or about

**COMPLAINT FOR DAMAGES**

1   June 28, 2012, Gillett executed an assignment of rights authorizing Behrmann to
2   pursue all claims relating to NHF and the Houks on his behalf.

3           7.    Assignor Brenda Gillett is an individual over the age of twenty
4   one (21) years who is a citizen and resident of the State of Arizona.  On or about
5   June 28, 2012, Gillett executed an assignment of rights authorizing Behrmann to
6   pursue all claims relating to NHF and the Houks on her behalf.

7           8.    Collectively throughout this complaint the assigned claims of
8   Dr. Robert Griego, Dr. Carole Griego, Terry Gillett, Brenda Gillett, and John
9   Goodson will be referred to as the "Plaintiffs" "Arizona Claims" and/or the
10  "Assigned Claims." The Griegos and their claim may also be referred to as the
11  "putative class representatives."

12          9.    Michael Goldstein ("Goldstein") is an individual over the age
13  of twenty one (21) years who is a citizen and resident of the State of California.
14  Based on information and belief, it is alleged that he is a resident of Newport,
15  California.

16          10.   Christie Kennett is an individual over the age of twenty one
17  (21) years who is a citizen and resident of the State of California. Based on
18  information and belief, it is alleged that she is a resident of Northern California,
19  however the City and County of her residence is currently unknown.

20          11.   Husch Blackwell LLP is a law firm organized pursuant to the
21  laws of Missouri, and with it's primary business offices in Missouri. At all times
22  material to this Complaint Goldstein and Kennett were attorneys with the law firm
23  of Husch Blackwell working out of the St. Louis, Missouri office and were hired
24  to represent or advise the Behrmann plaintiffs, National Heritage Foundation, Inc.
25  ("NHF"), the Houk defendants, and Joel Baker.   At all times material to this
26  Complaint Goldstein, Kennett and Husch Blackwell acted in concert, complicity
27  and collaboration with each other and each of the other Defendants.

28

---

3

**COMPLAINT FOR DAMAGES**

12. National Heritage Foundation, Inc. ("NHF") is a non-profit organization. At all times relevant to this complaint NHF was held out to the public (including Plaintiffs) by the Defendants as a nonprofit, public charity exempt from federal income tax under 26 U.S.C. §501(c)(3). At all times material to this Complaint, the Defendants asserted collectively and publicly that the purpose of NHF was to assist the progress of scientific, charitable, educational and religious activities by consolidating and centralizing the administration of charitable donations and projects. NHF has headquarters in and is based in the State of Virginia.

13. Defendant John T. Houk II ("Houk") is an individual over the age of twenty one (21) years who is a citizen and resident of the State of Virginia. At all times material to this Complaint Houk has been married to Miriam M. Houk. He is also the father of John T. Houk III and Janet H. Ridgely, and is the father-in-law of Julie L. Houk. At all times material to this Complaint Houk acted as a representative and agent of National Heritage Foundation, Inc. ("NHF"), Miriam M. Houk, John T. Houk III, Janet H. Ridgely and Julie L. Houk within the scope of his authority, and he acted in active concert, complicity and collaboration with each of the other Defendants.

14. Defendant Miriam M. Houk is an individual over the age of twenty one (21) years who is a citizen and resident of the State of Virginia. At all times material to this Complaint she has been married to Houk. She is also the mother of John T. Houk III and Janet H. Ridgely, and she is the mother-in-law of Julie L. Houk. At all times material to this Complaint Miriam M. Houk acted as a representative and agent of NHF, Houk, John T. Houk III, Janet H. Ridgely and Julie L. Houk within the scope of her authority, and she acted in active concert, complicity and collaboration with each of the other Defendants.

15. Defendant John T. Houk III is an individual over the age of twenty one (21) years who is a citizen and resident of the State of Virginia. At all

4

**COMPLAINT FOR DAMAGES**

times material to this Complaint he has been married to Julie L. Houk.  He is also the son of Houk and Miriam M. Houk, and he is the brother of Janet H. Ridgely. At all times material to this Complaint John T. Houk III acted as a representative and agent of NHF, Houk, Miriam M. Houk, Janet H. Ridgely and Julie L. Houk within the scope of his authority, and he acted in active concert, complicity and collaboration with each of the other Defendants.

        16.    Defendant Janet H. Ridgely is an individual over the age of twenty one (21) years who is a citizen and resident of the State of Virginia.  She is the daughter of Houk and Miriam M. Houk, and she is also the sister of John T. Houk III.  At all times material to this Complaint Janet H. Ridgely acted as a representative and agent of NHF, Houk, Miriam M. Houk, John T. Houk III and Julie L. Houk within the scope of her authority, and she acted in active concert, complicity and collaboration with each of the other Defendants.

        17.    Defendant Julie L. Houk is an individual over the age of twenty one (21) years who is a citizen and resident of the State of Virginia.  She is the wife of John T. Houk III, and she is the daughter-in-law of Houk and Miriam M. Houk. At all times material to this Complaint Julie L. Houk acted as a representative and agent of NHF, Houk, Miriam M. Houk, John T. Houk III and Janet H. Ridgely within the scope of her authority, and she acted in active concert, complicity and collaboration with each of the other Defendants.

        18.    The true names or capacities, whether individual, corporate, associate or otherwise of Defendants named herein as DOES 1 through 10, inclusive, are unknown to Plaintiffs, who are informed and believes, and thereon alleges, that each of the fictitiously named Defendants is in some way liable to Plaintiffs, and Plaintiffs therefore sue said Defendants by fictitious names. Specifically, but without limitation, Plaintiffs believe the fictitiously named Defendants may be alter-egos of named Defendants, successor or parent corporations, related entities and individuals and entities involved in the conduct

**COMPLAINT FOR DAMAGES**

alleged herein. Plaintiffs will amend this Complaint to show the true and correct names and capacities of the fictitiously named defendants when their true names have been ascertained.

19.   Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned each of the Defendants herein named, including those named fictitiously, were the agents, employees or representatives of each other in doing the things herein alleged and, in so doing, were acting in the course and scope of that agency, employment or representation and with the permission, consent or ratification of their codefendants. As such, the Defendants, and each of them, including those named fictitiously, are jointly and severally liable to plaintiffs.

**JURISDICTION AND VENUE**

20.   Jurisdiction is properly in Federal Court as there is complete diversity between the parties with no defendant a resident of the same state as any plaintiff.   Additionally, the amount in controversy and sought as damages by plaintiff is in excess of $75,000.

21.   Venue is proper in Central District of California pursuant to 28 U.S.C. section 1391 because the events at issue here occurred throughout the United States and in several states, but not at any one location, and at least one Defendant, Michael Goldstein, is subject to personal jurisdiction in this venue.

**CLASS ACTION ALLEGATIONS**

22.   The Plaintiffs bring this action on behalf of themselves and all other similarly situated persons who were affected by the confiscation of money placed in donor advised funds("DAF") with NHF despite repeated assurances that the funds were under the plaintiffs' control.  Without notice or warning to the putative class plaintiffs, the Houks used the DAF as collateral to secure loans from

6

**COMPLAINT FOR DAMAGES**

PNC Bank and Virginia Commonwealth Banks, who failed to do their due diligence to confirm ownership or control of the funds prior to seizing or encouraging the Houks to seize the money in Plaintiffs' DAF to pay the bank loans. Although the precise number of members of the class is unknown to Plaintiffs and can only be determined by appropriate discovery, Plaintiffs are informed and believe that the class is so numerous, consisting of over a thousand residents of California and several thousands of persons throughout the United States, that joinder of all members of the class in a single action is impracticable and that the disposition of claims through the procedure of a class action will be of benefit to the parties and the Court.

23.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the class. Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel who are competent and experienced.

24.    Plaintiffs' claims are typical of the claims of the members of the class because plaintiffs and each member of the class (hereinafter, "plaintiffs" refer to the named plaintiffs and the class they represent) were victims of the same improper actions and conduct of defendants resulting in the depletion of money plaintiffs contributed to their individual DAFs.

25.    Common questions of law and fact exist as to all members of the class and predominate over the questions, if any, affecting only individual members of the class. The common questions include, but are not limited to, the following:

(a)    Whether defendants made material misrepresentations or omissions to the Class with respect to the specialized and superior education, training, knowledge, skill and experience in respect of the development, evaluation, implementation and monitoring of efficient and effective charitable giving plans, programs and strategies;

7

**COMPLAINT FOR DAMAGES**

(b)     Whether defendants made material representations regarding assisting the Class in developing, evaluating, implementing and monitoring a tailored charitable giving plan, program and strategy that advanced and satisfied each Class members individual charitable giving goals;

(c)     Whether the Class reasonably and justifiably relied upon defendants to provide them with timely, accurate, truthful and comprehensive notice of (i) any change in the roles, duties and allegiances of any of the Defendants, (ii) any change in the representations, promises, commitments, advice and counsel in respect of effecting contributions to their respective DAFs, (iii) any basis for concern or inquiry relating to NHF or relating to contributions made to the DAFs, and(iv) any adverse developments that might negatively impact the Class members charitable giving strategy being implemented through the DAFs at NHF;

(d)     Whether defendants expressly and impliedly represented that the contributions made by the Class to their respective DAFs would be used subject to each Class member's sole advisory control.

(e)     Whether defendants concealed that the Class members contributions to the DAF (i) were being used as collateral for NHF's institutional indebtedness, (ii) could be used by NHF to repay its institutional indebtedness and/or (iii) could be robbed by NHF of their intended purpose of benefitting worthy charitable organizations and causes.

26.     Were separate actions to be brought individually by members of the class, the resulting duplicity of lawsuits would cause undue hardship and expense to the Court and the litigants. The prosecution of separate individual actions would also create a risk of inconsistent rulings, thus, absent a class action, each defendant would likely retain the benefits of their wrongdoing and there would be a failure of justice.

**COMPLAINT FOR DAMAGES**

27.     Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

28.     The names and addresses of the persons who are members of the class are available from defendants' records. Notice can be provided to the members of the class using techniques and a form of notice similar to those customarily used in class actions arising under State law.

29.     Plaintiffs have incurred and, during the pendency of this action, will incur attorney's fees and expenses. Such attorney's fees and expenses are necessary for the prosecution of this action and will result in a benefit to the class.

30.     Plaintiffs are informed and believe, and based thereon allege, that certain members of the class are "senior citizens" or "disabled persons" as defined in *Civil Code* § 1761 (f) and (g), and are therefore entitled to treble damages under *Civil Code* § 3345.

## III.

## GENERAL ALLEGATIONS

31.     Plaintiffs incorporate each of the allegations contained in Paragraphs 1-30 of this Complaint as if set forth in full here.

32.     NHF is a Georgia not-for-profit corporation that was formed by Houk in 1994 for, among other purposes, soliciting contributions from those persons (such as the Plaintiffs) who wish to develop, evaluate, implement and monitor charitable giving plans, programs and strategies for the benefit of worthy organizations and causes.   At all times material to this Complaint, the Houk family has maintained the corporate offices of NHF within the State of Virginia.

33.     At all times material to this Complaint, Mariam M. Houk, John T. Houk III and Julie L. Houk served on the Board of Directors of NHF.   At all

9

**COMPLAINT FOR DAMAGES**

times material to this Complaint, Houk's family members constituted a majority of, and controlled, NHF's Board of Directors.

34.     At all times material to this Complaint, Houk served as Chief Executive Officer of NHF; Miriam M. Houk served as Chief Operating Officer of NHF; John T. Houk III served as President of NHF; and Janet H. Ridgely served as Vice President of NHF.   These were the only officer positions for NHF. Accordingly, all NHF's officers were members of Houk's immediate family.

35.     At all times material to this Complaint, NHF was held out to the public (including Plaintiffs) by the Defendants as a nonprofit, public charity exempt from federal income tax under 26 U.S.C. §501(c)(3).  At all times material to this Complaint, the Defendants asserted collectively and publicly that the purpose of NHF was to assist the progress of scientific, charitable, educational and religious activities by consolidating and centralizing the administration of charitable donations and projects.

A.     Background Relating to the Behrmanns

36.     Beginning in approximately January of 1997, J. Behrmann was introduced to Houk.  Houk represented and assured J. Behrmann that -- through NHF -- Houk could materially assist the Behrmanns in developing, evaluating, implementing and monitoring a tailored charitable giving plan, program and strategy that advanced and satisfied the Behrmanns' charitable giving goals.

37.     Part of the tailored charitable giving plan, program and strategy involved the creation of a trust. Defendant Husch Blackwell LLP, through defendants Goldstein and Kennett prepared the trust documents and also prepared a legal opinion advising plaintiffs of the legality of the Houk/NHF charitable giving plan, program and strategy.   Neither Husch Blackwell, Goldstein nor Kennett disclosed to plaintiffs that they also represented NHF and the Houks as well as Joel Baker who is a third party also involved in the sale of the Financial Independence Plan to plaintiffs. Goldstein, Kennett and Husch BLackwell neither

10

**COMPLAINT FOR DAMAGES**

advised plaintiffs of the possible conflict of interest, nor had them sign a conflict waiver.

38.     Houk held himself and NHF out to J. Behrmann as possessing specialized and superior education, training, knowledge, skill and experience in respect of the development, evaluation, implementation and monitoring of efficient and effective charitable giving plans, programs and strategies.  At all times material to this Complaint, the Behrmanns were solicited, invited, importuned and induced by to repose special trust and confidence in Houk and the other Defendants in respect of these charitable giving matters.

39.     As a result of these importuning, inducements and representations, the Behrmanns reasonably and justifiably chose to repose special trust and confidence in Houk and the other Defendants, and the Behrmanns continued to do so until NHF filed for bankruptcy relief in January of 2009.

40.     More particularly, Defendants (through Houk) aggressively solicited, invited, importuned and induced the Behrmanns to establish a donor advised fund ("DAF") -- which became known as Highbourne Foundation ("Highbourne") -- at NHF, and to make substantial contributions of cash and property to Highbourne/NHF.

41.     In the period between approximately January of 1997 and December of 2007, Defendants were successful in causing the Behrmanns to: (i) establish Highbourne as a DAF at NHF, and (ii) make cash and/or property charitable contributions in the approximate aggregate amount of $1.09 million to the Highbourne DAF.  Defendants accomplished this result via: (i) express and implied representations, assurances, promises and commitments published to J. Behrmann and his agents and representatives in telecommunications and mailings, and (ii) material omissions of material matters that in equity and good conscience should have been disclosed to the Behrmanns to ensure that the balance of that published to the Behrmanns was not materially misleading.

11

**COMPLAINT FOR DAMAGES**

42.     More particularly, at the inception of the relationship with NHF (in approximately January of 1997) Houk advised, counseled and encouraged the Behrmanns, via telecommunications and mailings, to establish Highbourne as a DAF at NHF so that Highbourne could be used as a vehicle through which the Behrmanns could make efficient and effective charitable, tax-deductible contributions to various worthy organizations and causes identified by the Behrmanns.  Defendants (through Houk) expressly and impliedly represented and advised the Behrmanns that:

A.     Defendants possessed superior knowledge, skill, knowledge and training, and that the Defendants services and abilities would be used exclusively to promote and advance the Behrmanns' goals of developing, evaluating, implementing and monitoring an efficient and effective charitable giving plan, program and strategy for the benefit of worthy causes and organizations identified by the Behrmanns.

B.     The strategy of making contributions through a DAF established at NHF would enable the Behrmanns to make one or more contributions of cash and/or property to Highbourne/NHF that would be tax-deductible in the year of the Behrmanns' contribution(s) to Highbourne/NHF;

C.     The Behrmanns' contributions would be judiciously held, invested, managed and utilized by Highbourne/NHF in a manner that: (i) would advance and promote the Behrmanns' charitable giving goals, and (ii)  would not imperil the Behrmanns' contributions and their availability for donation to worthy organizations and causes identified by the Behrmanns; and

D.     Upon making one or more contributions, the Behrmanns would hold the exclusive right/power to advise NHF as to subsequent donations that the Behrmanns wished to have made by Highbourne/NHF to worthy charitable organizations and causes identified by the Behrmanns.

---

12

**COMPLAINT FOR DAMAGES**

43.   Based upon Defendants' representations, promises, commitments, advice and counsel (communicated through Houk), the Behrmanns reasonably and justifiably: (i) entered into a contractual relationship with NHF, (ii) established Highbourne as a DAF within NHF in approximately January of 1997, and (iii) made a series of cash and property contributions to Highbourne/NHF in the period between approximately January of 1997 and December of 2007 in the aggregate amount of approximately $1.09 million.

44.   From and after January of 1997, the Behrmanns reasonably and justifiably relied upon Defendants to provide them with timely, accurate, truthful and comprehensive notice of: (i) any change in the roles, duties and allegiances of any of the Defendants, (ii) any change in the representations, promises, commitments, advice and counsel in respect of effecting contributions to Highbourne/NHF, (iii) any basis for concern or inquiry relating to NHF or relating to contributions made to Highbourne/NHF, and/or (iv) any adverse developments that might negatively impact the Behrmanns' charitable giving strategy being implemented through Highbourne/NHF.  At no time did any of the Defendants provide the Behrmanns with any notice or warning of any of these.

B.   Background of Assigned claims

45.   Assignors Dr. Robert Griego, Dr. Carole Griego, and John Goodson, were also assured that -- through NHF -- Houk could materially assist the plaintiffs in developing, evaluating, implementing and monitoring a tailored charitable giving plan, program and strategy that advanced and satisfied their respective charitable giving goals.

46.   Houk held himself and NHF out to Plaintiffs as possessing specialized and superior education, training, knowledge, skill and experience in respect of the development, evaluation, implementation and monitoring of efficient and effective charitable giving plans, programs and strategies.  At all times material to this Complaint, the Plaintiffs were solicited, invited, importuned

13

**COMPLAINT FOR DAMAGES**

and induced by to repose special trust and confidence in Houk and the other Defendants in respect of these charitable giving matters.

47. As a result of these importuning, inducements and representations, the Plaintiffs reasonably and justifiably chose to repose special trust and confidence in Houk and the other Defendants, and the Plaintiffs continued to do so until after NHF filed for bankruptcy relief in January of 2009.

48. More particularly, Defendants (through Houk) aggressively solicited, invited, importuned and induced the plaintiffs to establish a donor advised fund ("DAF") at NHF, and to make substantial contributions of cash and property to their respective DAFs.

49. In the period between the inception of their accounts and January of 2009, Defendants were successful in causing the plaintiffs to: (i) establish a DAF at NHF, and (ii) make cash and/or property charitable contributions DAF. Defendants accomplished this result via: (i) express and implied representations, assurances, promises and commitments published to each plaintiff and/or his agents and representatives in telecommunications and mailings, and (ii) material omissions of material matters that in equity and good conscience should have been disclosed to the Plaintiffs to ensure that the balance of that published to them was not materially misleading. Furthermore, even after NHF filed for bankruptcy, Houk continued to make assurances, promises and represent that the plaintiffs there was no risk to their accounts.

50. More particularly, at the inception of the relationship with NHF Houk advised, counseled and encouraged the Plaintiffs, via telecommunications and mailings, to establish a DAF at NHF so it could be used as a vehicle through which the Plaintiffs could make efficient and effective charitable, tax-deductible contributions to various worthy organizations and causes identified by the Plaintiffs. Defendants (through Houk) expressly and impliedly represented and advised the Plaintiffs that:

14

**COMPLAINT FOR DAMAGES**

A.     Defendants possessed superior knowledge, skill, knowledge and training, and that the Defendants services and abilities would be used exclusively to promote and advance the Plaintiffs' goals of developing, evaluating, implementing and monitoring an efficient and effective charitable giving plan, program and strategy for the benefit of worthy causes and organizations identified by the Plaintiffs.

B.     The strategy of making contributions through a DAF established at NHF would enable the Plaintiffs to make one or more contributions of cash and/or property to the DAF at NHF which would be tax-deductible in the year of the contribution(s) to NHF DAF;

C.     The Plaintiffs' contributions would be judiciously held, invested, managed and utilized by NHF in a manner that: (i) would advance and promote the Plaintiffs' charitable giving goals, and (ii) would not imperil the Plaintiffs' contributions and their availability for donation to worthy organizations and causes identified by the Plaintiffs; and

D.     Upon making one or more contributions, the Plaintiffs would hold the exclusive right/power to advise NHF as to subsequent donations that they wished to have made by NHF to worthy charitable organizations and causes identified by the Plaintiffs.

51.     Based upon Defendants' representations, promises, commitments, advice and counsel (communicated through Houk), the Plaintiffs reasonably and justifiably: (i) entered into a contractual relationship with NHF, (ii) established a DAF within NHF, and (iii) made a series of cash and property contributions to their respective DAF accounts at NHF in the period.

52.     From and after the inception of their accounts, Plaintiffs reasonably and justifiably relied upon Defendants to provide them with timely, accurate, truthful and comprehensive notice of: (i) any change in the roles, duties and allegiances of any of the Defendants, (ii) any change in the representations,

15

**COMPLAINT FOR DAMAGES**

promises, commitments, advice and counsel in respect of effecting contributions to their DAF accounts at NHF, (iii) any basis for concern or inquiry relating to NHF or relating to contributions made to their DAF accounts at NHF, and/or (iv) any adverse developments that might negatively impact the Plaintiffs' charitable giving strategy being implemented through their DAF accounts at NHF.  At no time did any of the Defendants provide the Plaintiffs with any notice or warning of any of these.

C.    The NHF Bankruptcy Filing and Proceedings

53.    In September of 2008, a Texas state court jury returned a $6.2 million verdict against NHF and in favor of Juan and Silvia Mancillas.  As a consequence, on January 24, 2009, NHF was forced to file a chapter 11 bankruptcy case in the United States Bankruptcy Court for the Eastern District of Virginia.

54.    Following the bankruptcy filing, J. Behrmann initiated a telephone call to Houk, and was assured by Houk that the Highbourne DAF would not be impacted.  The Behrmanns later learned facts from which they became suspicious that they had been seriously victimized by Defendants over the years.  For example, from internet reports and other publications that they accessed following NHF's bankruptcy filing, the Behrmanns learned that the following collection of important matters had not been appropriately, timely, fairly and comprehensively disclosed to them by the Defendants prior to the bankruptcy filing:

A.    Houk founded the original National Heritage Foundation, Inc. in 1968.  In approximately 1982, the IRS filed suit to revoke the original entity's charitable status for violations of the federal tax laws.  Houk and the entity were accused of multiple counts of mismanagement; Houk was ousted as the CEO; and the original organization changed its name to National Foundation, Inc.

16

**COMPLAINT FOR DAMAGES**

B.    In the wake of his firing by the original National Heritage Foundation entity, Houk was discharged from at least two follow-on positions (at St. Paul's College in Southern Virginia and Palm Beach Atlantic College in West Palm Beach Florida).  In both instances, Houk declared that the differences that precipitated his discharge were his views on how fund-raisers -- such as Houk -- should be compensated by these educational institutions.

C.    Houk incorporated the current version of NHF in 1993.  Since that time, NHF has been engaged in ongoing battles with the Internal Revenue Service in respect of the legitimacy of NHF's practices as a charitable organization (offering NHF contributors various allegedly tax deductible options).

D.    At all times relevant to this Complaint, Houk has operated NHF much like a family business for the benefit of the Houk family.  Houk is NHF's chief executive.  Also on the NHF payroll is Houk's wife, Marian M. Houk (Chief Operating Officer), his son, John T. Houk III (President), his daughter, Janet H. Ridgely (Vice President) and daughter-in-law, Julie Houk (Vice President).  These persons have collectively been paid substantial sums by NHF and its affiliates.

E.    At all times material to this Complaint, the Houk family has controlled the NHF Board of Directors.  For some undisclosed time the Houk family has occupied all of the NHF officer positions.  Houk's explanation for the Houk family's dominance and control of NHF is that he does not want to repeat his mistakes of the past.

F.    NHF has been operated by the Houk family so as to engage in business transactions with business entities in which Houk holds a direct or indirect interest.  For example, NHF has paid rent in respect of a building owned by Houk, has lent money to Charity Admin, a for-profit Houk-family entity (which was subsequently written off) and later purchased services from yet another Houk family business, To the Point.

17

**COMPLAINT FOR DAMAGES**

1           G.     From NHF's offices (and using its personnel and resources)
2 the Houk family has dominated, controlled and operated yet another IRC
3 §501(c)(3) entity known as Congressional District Programs, Inc. ("CDP"). CDP
4 engages in soliciting persons to become "Program Managers." Program Managers
5 are individuals who – for a fee paid to CDP – become a Program Manager for
6 CDP and solicit funds from others to be donated to CDP. These donations are
7 allegedly tax deductible. The Program Managers thereafter submit disbursement
8 requests to CDP for disbursements in the Program Manager's "field of interest" as
9 well as for the Program Manager's expenses (such as entertainment and travel).
10 NHF and CDP maintain overlapping directors, officers and staff. No information
11 has ever been provided to the Behrmanns respecting the allocation of costs and
12 expenses of operation between NHF and CDP.

13           H.     At all times material to this Complaint, the Houk family
14 directors and officers of NHF have been confronted with material, undisclosed
15 conflicts of interest during the course of performing their duties for NHF. The
16 only conflicts disclosure required by NHF (in its bylaws) is disclosure to the NHF
17 Board of Directors which is dominated and controlled by the Houk family.

18           I.     NHF has been operated by the Houk family in a manner which
19 caused NHF to engage in highly dubious and risky activities and practices,
20 including (without limitation) extending $14 million in unsecured loans to a
21 nonpublic company operated by an individual who served as an unlicensed
22 investment adviser to NHF and a vendor of NHF's software.

23           J.     NHF has been fairly accused of engaging in imprudent
24 business and investment practices, and that it published financial statements that
25 were false and/or misleading.

26           K.     NHF elected not to establish, implement and monitor
27 appropriate measures and procedures to prevent material, unauthorized payments
28

---

**COMPLAINT FOR DAMAGES**

by its employees, and at least one substantial unauthorized payment was made by a NHF employee.

L.    NHF and Defendants expressly and impliedly represented that the contributions effected by Plaintiffs (through their respective DAFs) would be used for legitimate charitable purposes -- about which Plaintiffs would have sole advisory input.   Defendants' concealed that Plaintiffs' contributions: (i) were being used as collateral for NHF's indebtedness to PNC Bank and Virginia Commonwealth Bank, (ii) could be used by NHF to repay its indebtedness to PNC Bank and Virginia Commonwealth Bank, and/or (iii) could be robbed by NHF of their intended purpose of benefitting worthy charitable organizations and causes.

55.    During the course of NHF's bankruptcy proceedings, NHF confiscated and liquidated all of the funds and property then contained in Highbourne and other plaintiffs' DAFs at NHF.  NHF applied the proceeds to settle and pay indebtedness then owed by NHF to PNC Bank and Virginia Commonwealth Bank.

56.    In the case of Highbourne/NHF approximately $650,000 was confiscated.  The Behrmanns learned the money had been removed from their account on or about June 30, 2009.  It is believed that several thousand DAF funds were raided and that amounts taken ranged from several thousands of dollars to over a million dollars from individual DAFs.  None of these funds and property taken during the bankruptcy proceedings of NHF were contributed to worthy charitable causes as had been promised, represented, warranted and committed by NHF and the Defendants prior to the bankruptcy filing.

57.    The Behrmanns were given notice of the Bankruptcy filing and submitted claims against NHF to the bankruptcy court.

58.    Dr. Robert Griego, Dr. Carole Griego, Terry Gillett, Brenda Gillett, and John Goodson, and others similarly situated were not given notice of

**COMPLAINT FOR DAMAGES**

1  the bankruptcy filing and not given the opportunity to submit their claims to the

2  bankruptcy court.

3        59.   As a direct and proximate consequence of Defendants'

4  material misrepresentations/omissions, and as a direct and proximate consequence

5  of Defendants' material breaches of duties owed to Plaintiffs, the initial and all

6  subsequent contributions to Highbourne and other DAFs at NHF were made by

7  Plaintiffs.   But for these material misrepresentations/omissions, and material

8  breaches of duty, the Plaintiffs would not have made the initial and subsequent

9  contributions.

10        60.   As a direct and proximate consequence of Defendants'

11  material misrepresentations/omissions, and as a direct and proximate consequence

12  of Defendants' material breaches of duties owed to them, Plaintiffs have suffered

13  substantial damages, losses and injuries in an amount not less than the value of the

14  cash and property confiscated from Highbourne and other DAFs at NHF during

15  NHF's bankruptcy proceedings.   In addition, since the confiscation by NHF

16  during its bankruptcy proceedings, Plaintiffs have been required to fund worthy

17  causes with their personal funds.

18        61.   As a direct and proximate consequence of Defendants'

19  material misrepresentations/omissions, and as a direct and proximate consequence

20  of Defendants' material breaches of duties owed to them, Plaintiffs have been

21  required to retain and pay legal counsel reasonable fees and expenses to seek

22  suitable judicial relief.   The legal fees and expenses incurred by Plaintiffs are

23  substantial and can be expected to mount materially into the future as this

24  litigation continues.

25  //

26  //

27  //

28  //

---

20

**COMPLAINT FOR DAMAGES**

# IV.

# FIRST CLAIM FOR RELIEF

## (Breach of Implied Agreement)

Against Defendants NHF, John T. Houk II, Miriam M. Houk,

John T. Houk III, Janet H. Ridgely and Julie L. Houk

62.   Plaintiffs incorporate the allegations contained in Paragraphs 1-61 of this Complaint as if set forth in full here.

63.   For good and valuable consideration, Plaintiffs entered into implied agreements and understandings with Defendants under which Defendants agreed, on a continuing basis, to provide competent and loyal professional services to assist Plaintiffs in developing, implementing, evaluating and monitoring an efficient and effective charitable giving strategy that fulfilled Defendants' manifest goals.

64.   Defendants further impliedly agreed and covenanted to provide Plaintiffs with timely and appropriate notice of: (i) any change in the roles, duties and allegiances of any of the Defendants, (ii) any change in the advice and recommendations in respect of making contributions to NHF through Plaintiffs' DAFs, (iii) any basis for concern or inquiry relating to NHF or relating to contributions made to NHF through Plaintiffs DAFs, and/or (iv) any adverse developments that might negatively impact the Plaintiffs' charitable giving strategy being implemented through Plaintiffs' DAFs at NHF.

65.   Plaintiffs fully and timely performed all of their obligations and duties under these implied agreements and understandings.   In particular, Plaintiffs made their initial and subsequent contributions to their DAFs at NHF.

66.   Defendants (individually and/or through one or more of the other Defendants) materially breached their agreements and understandings with Plaintiffs by (i) engaging in robust and concealed self-dealing, and (ii) failing to appropriately, timely, fairly and comprehensively publish to Plaintiffs the

21

**COMPLAINT FOR DAMAGES**

substantial risks and dangers of initiating and continuing charitable giving plans, programs and strategies through NHF. Among other things, and without any effort at being exhaustive, Defendants failed to appropriately, timely, fairly and comprehensively publish to Plaintiffs the profoundly material and salient matters described in Paragraph 37 of this Complaint.

67. As a direct and proximate result and consequence of Defendants' material breaches of their agreements and understandings, Plaintiffs have sustained substantial damages, injuries and losses in an amount not less than the value of the cash and property confiscated from Plaintiffs' respective DAFs during NHF's bankruptcy proceedings.

68. All conditions precedent and subsequent to Plaintiffs' right to initiate and maintain this claim for relief against Defendants has been performed, waived or has otherwise occurred.

V.

**SECOND CLAIM FOR RELIEF**

**(Intentional Interference with Contractual Relations)**

Against Defendants John T. Houk II, Miriam M. Houk, John T. Houk III, Janet H. Ridgely and Julie L. Houk

69. Plaintiffs incorporate the allegations contained in Paragraphs 1-68 of this Complaint as if set forth in full here.

70. For valuable consideration, Plaintiffs entered into binding contractual relationships with NHF.

71. Each of the Defendants was knowledgeable about the contractual relationships that existed between NHF and each of the Plaintiffs. At its core, this contractual relationship involved NHF's commitment to faithfully and competently administer and execute Plaintiffs' charitable giving plans, programs and strategies in a manner consistent with that which had been represented to Plaintiffs.

22

**COMPLAINT FOR DAMAGES**

72.     Each of the Defendants (individually and/or through one or more of the other Defendants) intentionally interfered with the contractual relationships between NHF and each of the Plaintiffs by causing NHF to breach its contractual commitments to Plaintiffs.  In particular, Defendants caused NHF to use and consume Plaintiffs contributions to their DAFs at NHF in a manner that was wholly inconsistent with that which had been represented, promised and committed to Plaintiffs.

73.     As a direct and proximate result and consequence of Defendants' intentional interference with Plaintiffs contractual relationships with NHF, Plaintiffs have sustained substantial damages, injuries and losses in an amount not less than the value of the cash and property confiscated from Plaintiffs' respective DAFs during NHF's bankruptcy proceedings.

74.     Defendants' intentional interference with Plaintiffs' contractual relations with Defendants were attended by circumstances of malice and willful, wanton and/or reckless misconduct.

75.     All conditions precedent and subsequent to Plaintiffs' right to initiate and maintain this claim for relief against Defendants has been performed, waived or has otherwise occurred.

# VI.

## THIRD CLAIM FOR RELIEF

### (Negligence)

Against Defendants John T. Houk II, Miriam M. Houk, John T. Houk III, Janet H. Ridgely and Julie L. Houk

76.     Plaintiffs incorporate the allegations contained in Paragraphs 1-75 of this Complaint as if set forth in full here.

77.     Defendants (individually and/or through one or more other Defendants) expressly and impliedly undertook to provide competent and loyal professional services to Plaintiffs on a continuing basis.  These services were to

23

**COMPLAINT FOR DAMAGES**

include appropriate, timely and comprehensive advice and counsel in respect of developing, evaluating, implementing and monitoring an efficient and effective charitable giving strategy through NHF that would fulfill Plaintiffs' manifest charitable giving goals.

78.     Defendants were grossly negligent in the performance of these services and duties for the Plaintiffs, and the performance by Defendants was materially below the standard expected of other similarly situated charitable giving professionals engaged in providing such services to donors across the country.

79.     The negligence of Defendants in the performance of their services and duties was attended by circumstances of malice and willful, wanton and/or reckless misconduct.

80.     As a direct and proximate result and consequence of Defendants' carelessness, negligence and inattention, Plaintiffs have sustained substantial damages, injuries and losses in an amount not less than the value of the cash and property confiscated from Plaintiffs' respective DAFs during NHF's bankruptcy proceedings.

81.     All conditions precedent and subsequent to Plaintiffs' right to initiate and maintain this claim for relief against Defendants has been performed, waived or has otherwise occurred.

## VII.

## FOURTH CLAIM FOR RELIEF

## (Professional Negligence)

Against Defendant Michael Goldstein, Christie Kennett, and Husch Blackwell

82.     Plaintiffs incorporate the allegations contained in Paragraphs 1-81 of this Complaint as if set forth in full here.

83.     Defendant Goldstein expressly and impliedly undertook to provide competent and loyal professional legal services to the Behrmann

24

**COMPLAINT FOR DAMAGES**

Plaintiffs. Goldstein prepared Trust documents for plaintiffs and also prepared a legal opinion regarding the NHF donor advised funds and the marketed Financial Independence Plan. As an attorney working for plaintiffs they expected Goldstein to offer unbiased independent legal evaluations.  These services were to include appropriate, timely and comprehensive advice and counsel in respect of developing, evaluating, implementing and monitoring an efficient and effective charitable giving strategy through NHF that would fulfill Plaintiffs' manifest charitable giving goals.

84.    Defendant Goldstein was grossly negligent in the performance of these services and duties for the Plaintiffs, and the performance by Defendant was materially below the standard expected of other similarly situated attorneys engaged in providing such services to clients across the country.

85.    Specifically, Defendant Goldstein failed to disclose to plaintiffs that he was representing the Houks and NHF as well as a third party involved in selling the plaintiffs a "Financial Independence Plan", Joel Baker. Plaintiffs were led to believe that Goldstein was their attorney and was representing only their interests in the series of transactions with NHF. Goldstein neither disclosed to plaintiffs that he had a conflict of interest, nor obtained a waiver or acknowledgement of the conflict of interest from plaintiffs.

86.    Had Defendant Goldstein acted in a professional and not negligent manner, plaintiffs would have been more likely to realize that there was something "off" about the Houks and NHF.  Plaintiffs relied on the legal opinions of Goldstein to assure them of the validity of the NHF/Houk DAF plans. Plaintiffs would not have opened their DAFs with Houk/NHF if not for the legal opinion of Goldstein and reliance on the belief that they were getting unbiased professional opinion.

87.    The negligence of Defendant Goldstein in the performance of his services and duties was attended by circumstances of malice and willful,

25

**COMPLAINT FOR DAMAGES**

wanton and/or reckless misconduct.   As a direct and proximate result and consequence of Defendants' carelessness, negligence and inattention, Plaintiffs have sustained substantial damages, injuries and losses in an amount not less than the value of the cash and property confiscated from Plaintiffs' respective DAFs during NHF's bankruptcy proceedings.

88.   All conditions precedent and subsequent to Plaintiffs' right to initiate and maintain this claim for relief against Defendants has been performed, waived or has otherwise occurred.

## VIII.

## FIFTH CLAIM FOR RELIEF

## (Negligent Misrepresentation and Omission)

### Against all Defendants

89.   Plaintiffs incorporate the allegations contained in Paragraphs 1-88 of this Complaint as if set forth in full here.

90.   In the course of their dealings with Plaintiffs, Defendants (individually and/or through one or more other Defendants) negligently published material misrepresentations to Plaintiffs.   In addition, Defendants negligently omitted to disclose to Plaintiffs material facts which in equity and good conscience should have been disclosed to Plaintiffs in order to insure that the other matters that were published to Plaintiffs were not materially misleading.

91.   Among the facts and matters negligently misrepresented to Plaintiffs by Defendants are those described in Paragraphs 27 of this Complaint. Among the material facts and other matters negligently omitted from those disclosed by Defendants to Plaintiffs are those described in Paragraph 37 (including subsections A through L) of this Complaint.

92.   The negligent misrepresentations and omissions by Defendants described herein were attended by circumstances of malice and willful, wanton and/or reckless misconduct.

**COMPLAINT FOR DAMAGES**

93.   As a direct and proximate result and consequence of Defendants' negligent misrepresentations and omissions, Plaintiffs have sustained substantial damages, injuries and losses in an amount not less than the value of the cash and property confiscated from Plaintiffs' respective DAFs during NHF's bankruptcy proceedings.

94.   All conditions precedent and subsequent to Plaintiffs' right to initiate and maintain this claim for relief against Defendants has been performed, waived or has otherwise occurred.

## IX.

## SIXTH CLAIM FOR RELIEF

## (Material Breaches of Fiduciary Duties)

Against Defendants NHF, John T. Houk II, Miriam M. Houk, John T. Houk III, Janet H. Ridgely and Julie L. Houk

95.   Plaintiffs incorporate the allegations contained in Paragraphs 1-94 of this Complaint as if set forth in full here.

96.   Defendants (individually and/or through one or more other Defendants) expressly and impliedly invited and importuned Plaintiffs to repose special trust and confidence in them professionals possessing superior knowledge, training, skill and abilities in developing, evaluating, implementing and monitoring for Plaintiffs' exclusive benefit appropriate charitable giving plans, programs and strategies.  The Defendants agreed to assume responsibility to act for the benefit of the Plaintiffs in this undertaking.

97.   As a result of Defendants' representations and invitation, Plaintiffs reasonably and justifiably chose to repose special trust and confidence in Defendants, and continued to do so until NHF filed for bankruptcy relief in January of 2009.  More particularly, Plaintiffs trusted Defendants to services, counsel and assistance in developing, evaluating, implementing and monitoring an

**COMPLAINT FOR DAMAGES**

appropriate charitable giving plans, programs and strategies that satisfied Plaintiffs' manifest goals.

98.    Defendants assumed the solemn and non-delegable obligations and responsibilities associated with being fiduciaries for the benefit of Plaintiffs. Accordingly, Defendants owed Plaintiffs solemn and non-delegable fiduciary duties to Plaintiff – including, without limitation, the duties of (i) professionalism, g(ii) good faith and fair dealing, (iii) appropriate, timely and full disclosure, (iv) competence and care, (v) utmost fidelity, and (vi) ethical behavior and conduct.

99.    Defendants materially breached their fiduciary obligations and duties owed to Plaintiffs as more fully described above.

100.   The material breaches of fiduciary duties by Defendants were attended by circumstances of malice and willful, wanton and/or reckless misconduct.

101.   As a direct and proximate result and consequence of Defendants' material breaches of the fiduciary duties, Plaintiffs have sustained substantial damages, injuries and losses in an amount not less than the value of the cash and property confiscated from Plaintiffs' respective DAFs during NHF's bankruptcy proceedings.

102.   All conditions precedent and subsequent to Plaintiffs' right to initiate and maintain this claim for relief against Defendants has been performed, waived or has otherwise occurred.

## X.

## SEVENTH CLAIM FOR RELIEF

## (Civil Conspiracy)

### Against all Defendants

103.   Plaintiffs incorporate the allegations contained in Paragraphs 1-102 of this Complaint as if set forth in full here.

**COMPLAINT FOR DAMAGES**

104.   Defendants entered into one or more express or implied agreements/understandings pertaining to the establishment and funding of DAFs at NHF (which would later be exploited for Defendants' individual benefits) via the use of material misrepresentations, material omissions and breaches by NHF and one or more of the Defendants of contractual, tort and fiduciary obligations as is more fully described above.

105.   One or more lawful acts were performed to accomplish this illicit and wrongful goal.

106.   The civil conspiracy described herein was attended by circumstances of malice and willful, wanton and/or reckless misconduct on the part of Defendants.

107.   As a direct and proximate result and consequence of Defendants' participation in this civil conspiracy, Plaintiffs have sustained substantial damages, injuries and losses in an amount not less than the value of the cash and property confiscated from Plaintiffs' respective DAFs during NHF's bankruptcy proceedings.

108.   All conditions precedent and subsequent to Plaintiffs' right to initiate and maintain this claim for relief against Defendants has been performed, waived or has otherwise occurred.

## XII.

## EIGHTH CLAIM FOR RELIEF

### (Consumer Legal Remedies Act – Civil Code 1750 *et seq.*)

Against all Defendants

109.   Plaintiffs incorporate the allegations contained in Paragraphs 1-108 of this Complaint as if set forth in full here.

110.   The transactions complained of in this Complaint are "consumer transactions" within the meaning of the California Legal Remedies Act.   Plaintiffs were offered and sold specialized services by Defendants to be

29

**COMPLAINT FOR DAMAGES**

used primarily for personal, family and/or household purposes as described in Civil Code 1761.

111.   Defendants were "suppliers" within the meaning of Civil Code 1761 because they solicited, sold and engaged in consumer transactions with the Plaintiffs.

112.   In connection with such consumer transactions, Defendants engaged in prohibited practices proscribed by Civil Code 1770.  These prohibited practices included:

A.   Misrepresenting that the services provided to Plaintiffs by NHF and the Defendants had qualities, characteristics and benefits that they did not possess, all  in violation of Civil Code 1770(a)(5);

B.   Misrepresenting that the services provided to Plaintiffs by NHF and the Defendants possessed a particular standard, quality or grade that they did not possess, all in violation of Civil Code 1770(a)(7); and

C.   Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, all in violation of Civil Code 1770(a)(14); and

D.   Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not, all in violation of Civil Code 1770(a)(16); and

113.   As a direct and proximate result and consequence of Defendants' unlawful acts, conduct, communication and practices which violated the California Consumers Legal Remedies Act, Plaintiffs have sustained substantial damages, injuries and losses in an amount not less than the value of the cash and property confiscated from Plaintiffs' respective DAFs during NHF's bankruptcy proceedings.

114.   The conduct of the Defendants in respect of these unlawful acts, conduct, communication and practices was willful, and thus each of the

**COMPLAINT FOR DAMAGES**

Plaintiffs are entitled to recover from each of the Defendants, jointly and severally.

115.   Under the provisions of Civil Code 1780, Plaintiffs who are senior citizens or disabled persons also seek to be awarded an additional $5,000 each.

116.   Plaintiffs are also entitled to an award against each of the Defendants of Plaintiffs' reasonable attorneys' fees and court costs pursuant to Civil Code 1780(e).

117.   All conditions precedent and subsequent to Plaintiffs' right to initiate and maintain this claim for relief against Defendants has been performed, waived or has otherwise occurred.

## XIII.

### NINTH CLAIM FOR RELIEF

### (Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 Pennsylvania statute sections 201-1 *et seq.*)

Behrmann Plaintiffs Against all Defendants

118.   Plaintiffs incorporate the allegations contained in Paragraphs 1-117 of this Complaint as if set forth in full here.

119.   Plaintiffs assert this cause of action in their capacity as a private attorney general on behalf of the members of the general public residing within the State of Pennsylvania.

120.   Defendants have engaged in an unfair business practice whereby Defendant has misrepresented to plaintiffs including but not limited to the following:

A.   Misrepresenting that the services provided to Plaintiffs by NHF and the Defendants had qualities, characteristics and benefits that they did not possess, all  in violation of 73 Pennsylvania Statute 201-2(4)(v);

31

**COMPLAINT FOR DAMAGES**

B.     Misrepresenting that the services provided to Plaintiffs by NHF and the Defendants possessed a particular standard, quality or grade that they did not possess, all in violation of 73 Pennsylvania Statute 201-2(4)(vii); and

C.     Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, all in violation of Civil Code 1770(a)(14); and

D.     Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not, all in violation of Civil Code 1770(a)(16).

121.   By engaging in the above-described practice, Defendant has committed one or more acts of unfair competition within the meaning of 73 Pennsylvania Statute 201-1 *et seq.*

122.   Defendant's practice has deceived members of the consuming public.

123.   The practice of Defendant is unlawful because it violates California Civil Code Sections 1770 and 73 Pennsylvania Stat. 201-1 *et seq.*.

124.   So as not to be unjustly enriched by its own wrongful conduct, Defendants should be required to disgorge and restore to members of the general public all monies wrongfully obtained by Defendant as a result of its unfair competition, together with interest thereon.

//
//
//
//
//
//
//

32

**COMPLAINT FOR DAMAGES**

# XIV.

## TENTH CLAIM FOR RELIEF

### (Violation of Missouri Merchandising Practices Act

### Missouri Revised Statutes 407.010 *et seq.*)

Behrmann Plaintiffs Against all Defendants

125.   Plaintiffs incorporate the allegations contained in Paragraphs 1-124 of this Complaint as if set forth in full here.

126.   Defendant Michael Goldstein and Christie Kennett were attorney licensed to practice in the State of Missouri, and was an employee or partner in a law firm located in Missouri when providing legal advice and assistance to the Behrmanns and to the defendants.  Goldstein and Kennett were employed by the firm of Husch Blackwell while engaging in these practices described in the complaint.

127.    Defendants have engaged in an unfair business practice whereby Defendant has misrepresented to plaintiffs including but not limited to the following:

A.    Misrepresenting that the services provided to Plaintiffs by NHF and the Defendants had qualities, characteristics and benefits that they did not possess;

B.    Misrepresenting that the services provided to Plaintiffs by NHF and the Defendants possessed a particular standard, quality or grade that they did not possess;

C.    Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

D.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

33

**COMPLAINT FOR DAMAGES**

128.   By engaging in the above-described practice, Defendant has committed one or more acts of unfair competition within the meaning of Missouri Revised Statute 407.010 et seq.

129.   Defendant's practice has deceived members of the consuming public.

130.   The practice of Defendant is unlawful because it violates California Civil Code Sections 1770 and Missouri Revised Statute 407.010 et seq.

131.   So as not to be unjustly enriched by its own wrongful conduct, Defendants should be required to disgorge and restore to members of the general public all monies wrongfully obtained by Defendant as a result of its unfair competition, together with interest thereon.

## **PRAYER FOR RELIEF**

WHERERORE, Plaintiffs respectfully pray that this Court enter judgment in their favor and against Defendants, jointly and severally, for the following relief:

A.   An order certifying this case as a class action and appointing Plaintiff and their counsel to represent the Class

B.   Appropriate actual compensatory damages (including appropriate rescission amounts, if any), special damages, consequential damages and incidental damages, in an amount sufficient to fully compensate Plaintiffs for the full extent of their damages, injuries and losses;

C.   Appropriate punitive or exemplary damages;

D.   Treble Plaintiffs' actual damages as provided in the Consumer Legal Remedies Act;

E.   Reasonable attorneys' fees/expenses;

34

**COMPLAINT FOR DAMAGES**

F.      Pre-judgment interest, post-judgment interest, expert witness fees and all costs of suit; and

G.      Such other and further relief as may be appropriate and just under the prevailing circumstances.

DATED: June 28, 2012          NYE, PEABODY, STIRLING, HALE & MILLER LLP


By: _____
          Jonathan D. Miller
          Attorney for Plaintiffs

---

35

**COMPLAINT FOR DAMAGES**

1

2               **DEMAND FOR JURY TRIAL**

3        PLAINTIFFS, JOHN R. BEHRMANN AND NANCY P. BEHRMANN,

4   INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY

5   SITUATED INDIVIDUALS, HEREBY DEMAND A JURY TRIAL IN THE

6   ABOVE REFERENCED MATTER.

7

8   DATED: June 28, 2012           NYE, PEABODY, STIRLING, HALE & MILLER LLP

9

10                          By: _____

11                               Jonathan D. Miller
                                 Attorney for Plaintiffs
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    36
                         **COMPLAINT FOR DAMAGES**