David L. Nye (SBN. 67009)
Jonathan D. Miller (SBN. 220848)
**NYE, PEABODY, STIRLING, HALE & MILLER, LLP**
33 West Mission St., Suite 201
Santa Barbara, California 93101
Telephone: (805) 963-2345
Facsimile: (805) 563-5385
Email:   david@nps-law.com
jonathan@nps-law.com

**SCHENDZIELOS & ASSOCIATES, LLC**
Daniel J. Schendzielos (CO. SBN 22542)
8547 E. Arapahoe Rd., Suite J534
Greenwood Village, CO 80112
Tel:      (303) 773-6600
Fax:      (303) 957-2382

**TERRY L. BAKER, ATTORNEY AT LAW**
Terry L. Baker (SBN 214365)
820 Bay Avenue, Suite 230L
Capitola, CA 95010
Tel:      (831) 476-7900
Fax:      (831) 476-7906

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN R. BEHRMANN, and NANCY P. BEHRMANN, as individuals and assignees of DR. ROBERT GRIEGO, DR. CAROLE GRIEGO, TERRY P. GILLETT, BRENDA A. GILLETT, WILLIAM P. O'CONNELL, and JINAN O'CONNELL<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN T. HOUK, II, an individual, MIRIAM M. HOUK, an individual, JOHN T. HOUK III, an individual, JANET H. RIDGELY, an individual, JULIE L. HOUK, an individual, NATIONAL HERITAGE FOUNDATION, a non-profit organization, ROBERT BEN KORI & ASSOCIATES, corporate form unknown, | Case No.  CV12-5636 DMG (CWx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS MICHAEL GOLDSTEIN'S AND HUSCH BLACKWELL'S RULE 12 MOTION TO DISMISS**<br><br>[Filed concurrently herewith Plaintiffs' Opposition to Motion to Dismiss]<br><br>**Date: December 21, 2012**<br>**Time: 9:30 a.m.**<br>**Dept: 7**<br><br>Complaint Filed:   June 28, 2012<br>Judge:                 Hon. Dolly Gee |

1  CONGRESSIONAL DISTRICT
   PROGRAM, INC., a corporation;
2  CHARITY ADMIN, INC., a corporation;
3  UNITED CHARITABLE PROGRAMS, a
   non-profit organization; NATIONAL
4  PHILANTHROPIC INSTITUTE, a
   corporation; INTERNATIONAL
5  PHILANTHROPIC INSTITUTE, a
6  corporation; STELLAR FINANCIAL,
7  INC., a corporation; STELLAR
8  TECHNOLOGY SOLUTIONS, LLC, a
   limited liability company; STELLAR
9  ADVISORS, INC., a corporation; IAN
10 SCOTT-DUNNE, an individual;
   STELLAR McKIM, LLC, a limited
11 liability company;  McKIM CAPITAL, a
12 corporation; JAMES CAHILL, an
   individual; MICHAEL GOLDSTEIN, an
13 individual, CHRISTIE KENNETT, an
14 individual, HUSCH BLACKWELL LLP, a
   Missouri Limited Liability Partnership,
15 PATTON BOGGS, LLP, a limited liability
16 partnership, FOLEY & LARDNER, LLP, a
17 limited liability partnership; and DOES 1-
   10, inclusive.
18
19                     Defendants.
20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................1

II.    BACKGROUND FACTS ............................................................4

       A.    Clarification on the Bankruptcy Claims Against NHF ...............6

       B.    Clarification on the Behrmanns' Bankruptcy Appeal ................7

III.   DISCUSSION...............................................................................7

       A.    Plaintiffs' Claims for Relief Should Not Be Dismissed.............7

       B.    Plaintiffs Have Adequately Pled A Claim Under RICO ...........9

             1.   Plaintiffs Have Standing To Assert A RICO Claim............9

             2.   Plaintiffs Have Pled A Direct Causal Link Between The
                  Losses They Sustained And The RICO Enterprise.......... 12

             3.   Plaintiffs Have Pled A Pattern Of Racketeering Activity
                  Sufficient To Maintain Their RICO Claim...................... 15

             4.    Plaintiffs Have Pled Facts Establishing Defendants'
                  "Operation" And "Management" of the Enterprise
                  Sufficient To Maintain Their RICO Claim..................16

             5.   Plaintiffs Have Pled Facts Sufficient To Allege A
                  Conspiracy Under Section 1962(d)........................ ...17

             6.   Plaintiffs Have Pled The Other Necessary Elements
                  Sufficient To Maintain Their RICO Claims................18

       C.    Defendants Have Failed To Meet Their Burden To Prove That
             Plaintiffs' Had Knowledge Of Defendants' Professional
             Negligence Prior To The Expiration Of The Statute Of
             Limitations.......................................................18

D.    Plaintiffs Have Adequately Pled A Claim For Professional Negligence And The Statute Of Limitations Has Been Effectively Tolled...................................................................20

    1.  Plaintiffs' did not sustain actual injury until June 30, 2009...........................................................21

    2.  Defendants Willfully Concealed The Facts Constituting Their Wrongful Acts Further Tolling The Statue of Limitation...........................................................22

E.    Plaintiffs' Remaining Causes of Action Were Similarly Tolled..................................................23

IV.    CONCLUSION.........................................................24

# TABLE OF AUTHORITIES

**Cases**

*A. McD. v. Rosen,*
  (Pa. Super. Ct. 1993) 423 Pa.Super. 304[621 A.2d 128, ] ...................... 23

*Arpin v. Santa Clara Valley Transp. Agency,*
  (9th Cir. 2001) 261 F.3d 912 ................................................................. 8

*Baisch v. Gallina,*
  (2d Cir. 2003) 346 F.3d 366 ................................................................. 17

*Baker v. Beech Aircraft Corp.,*
  (1974) 39 Cal.App.3d 315 [114 Cal.Rptr. 171]................................... 3, 23

*Beneficial Standard Life Ins. Co. v. Madariaga,*
  (9th Cir. 1988) 851 F.2d 271 ................................................................. 23

*Bizzell v. Hemingway,*
  (4th Cir. 1977) 548 F.2d 505 ................................................................. 13

*Blanks v. Shaw,*
  (2009) 171 Cal.App.4th 336 [89 Cal.Rptr.3d 710] ................................... 20

*Broam v. Bogan,*
  (9th Cir. 2003) 320 F.3d 1023 ................................................................. 8

*Budd v. Nixen,*
  (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433] ..................... 19, 20

*Canyon County v. Syngenta Seeds, Inc.,*
  (9th Cir. 2008) 519 F.3d 969 ................................................................. 9

*Carlton v. Quint,*
  (2000) 77 Cal.App.4th 690 [91 Cal.Rptr.2d 844] ................................... 20

*Davies v. Krasna,*
  (1975) 14 Cal.3d 502 [121 Cal.Rptr. 705, 535 P.2d 1161]..................... 21

*Baumer v. Pachal,,*
  8 F.3d 1341 ................................................................................. 16

PLAINTIFFS' OPPOSITION TO DEFENDANTS MICHAEL GOLDSTEIN'S AND HUSCH
BLACKWELL'S RULE 12 MOTION TO DISMISS

*First Capital Asset Management, Inc. v. Satinwood, Inc.,*
   (2d Cir. 2004) 385 F.3d 159 ................................................................ 16, 17

*Grimmett v. Brown,*
   (9th Cir. 1996) 75 F.3d 506 ................................................................ 14

*Gutierrez v. Mofid,*
   (1985) 39 Cal.3d 892 [218 Cal.Rptr. 313, 705 P.2d 886] ...................... 20

*Harper v. New Japan Securities Intern., Inc.,*
   (C.D. Cal. 1982) 545 F.Supp. 1002 ........................................................ 15

*In re Michelson,*
   (Bankr. E.D. Cal. 1992) 141 B.R. 715 .................................................... 14

*In re Schimmels,*
   (9th Cir. 1997) 127 F.3d 875 ................................................................ 13

*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison,*
   (1998) 18 Cal.4th 739[76 Cal.Rptr.2d 749, 958 P.2d 1062, ] .................. 21

*Kourtis v. Cameron,*
   (9th Cir. 2005) 419 F.3d 989 ................................................................ 12, 13

*L.B. Research and Educ. Foundation v. UCLA Foundation,*
   (2005) 130 Cal.App.4th 171[29 Cal.Rptr.3d 710, ] ................................ 11

*Lee v. City of Los Angeles,*
   (9th Cir. 2001) 250 F.3d 668 ................................................................ 24

*Los Angeles News Service v. Conus Communications Co. Ltd. Partnership,*
   (C.D. Cal. 1997) 969 F.Supp. 579 ........................................................ 8

*M & D Enterprises, Inc. v. Wolff,*
   (Mo. Ct. App. 1996) 923 S.W.2d 389 .................................................... 23

*Martin v. Wilks,*
   (1989) 490 U.S. 755 [109 S.Ct. 2180, 104 L.Ed.2d 835] ........................ 12

*Millboro Lumber Co. v. Augusta Wood Products Corporation,*
   (1924) 140 Va. 409 [125 S.E. 306 ] ........................................................ 11

PLAINTIFFS' OPPOSITION TO DEFENDANTS MICHAEL GOLDSTEIN'S AND HUSCH
BLACKWELL'S RULE 12 MOTION TO DISMISS

*Motor City Bagels, L.L.C. v. American Bagel Co.,*

   (D. Md. 1999) 50 F.Supp.2d 460.................................................................. 11

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand,*

   (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421] ........................... 18

*Quintilliani v. Mannerino,*

   (1998) 62 Cal.App.4th 54[72 Cal.Rptr.2d 359, ] ..................................... 23

*Rescuecom Corp. v. Google Inc.,*

   (2d Cir. 2009) 562 F.3d 123 ...................................................................... 8

*Salinas v. U.S.,*

   (1997) 522 U.S. 52 [118 S.Ct. 469, 139 L.Ed.2d 352]............................ 17

*Samuels v. Mix,*

   (1999) 22 Cal.4th 1 [91 Cal.Rptr.2d 273, 989 P.2d 701]........................ 18

*San Francisco Bay Area Rapid Transit Dist. v. Spencer (N.D. Cal., Sept. 6,*

   *2005, C 04-04632 SI),*

   2005 WL 2171906(................................................................................... 16

*Sybersound Records, Inc. v. UAV Corp.,*

   (9th Cir. 2008) 517 F.3d 1137 .................................................................. 14

*Webb v. Webb,*

   (Va. Ct. App. 1993) 16 Va.App. 486 [431 S.E.2d 55 ] ........................... 11

*Wright v. Williams,*

   (1975) 47 Cal.App.3d 802 [121 Cal.Rptr. 194]....................................... 20

**Statutes**

11 U.S.C. § 1144........................................................................................ 13,14

11 U.S.C. § 786 ............................................................................................. 13

18 U.S.C. § 1964......................................................................................... 9, 23

Code Civ. Proc., § 340.6............................................................................ 21, 22

PLAINTIFFS' OPPOSITION TO DEFENDANTS MICHAEL GOLDSTEIN'S AND HUSCH
BLACKWELL'S RULE 12 MOTION TO DISMISS

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Despite the number of parties and voluminous allegations set forth in the Complaint, Plaintiffs' case against Michael Goldstein and his prior law firm, Husch Blackwell ("Defendants" or " Moving Defendants") is a simple one. In 1997, Goldstein undertook the legal representation of Plaintiffs John and Nancy Behrmann to provide them with advice regarding a charitable giving plan they wished to set up. The Berhmanns were referred to Goldstein by Joel Baker, the broker who was attempting to place the Behrmanns into the charitable giving plan. FAC ¶ 160. The charitable giving plan Baker was trying to sell to the Behrmanns was through an entity called National Heritage Foundation ("NHF").

The plan was supposed to allow the Behrmanns to have a charitable foundation under NHF's 501(c) umbrella. The Behrmanns could then direct which charity would receive money from their foundation.  In advance of entering into the plan, and in an effort to perform due diligence, the Behrmanns sought legal advice regarding the plan from Goldstein. At the time, Goldstein was directly and simultaneously representing Baker and NHF. This fact was never disclosed to the Behrmanns. FAC ¶ 160. Further, in violation of both legal and ethical duties, Goldstein was contributing a portion of money he received from each client, including the Behrmanns, into a Legal Defense fund set aside to defend NHF from any IRS inquiry. This fact was also never disclosed to the Behrmanns.

Prior to the Defendants' representation of the Behrmanns and up through the time NHF filed for bankruptcy in 2009, NHF continued to be under investigation by the IRS. This fact was also known to Defendants, but never disclosed to the Behrmanns. Had the disclosure been made, the Behrmanns

1  could have moved their charitable investment from NHF prior to its

2  bankruptcy.

3     Ultimately, NHF illegally sought bankruptcy protection in an intentional

4  effort to convert over $170 million in charitable investment funds, including

5  the Behrmanns' funds, to their own for-profit use. Specifically, at the time it

6  filed bankruptcy NHF knew the IRS was close to revoking its 501(c) status.

7  This decision would have required NHF to return charitable funds to charitable

8  investors, including the Behrmanns. Because NHF had been using these

9  charitable funds as leverage in for-profit investments, it knew it would not be

10  able to return all the funds, and that its fraudulent scheme would be revealed

11  and unraveled. In sum, the entire filing of the bankruptcy and the

12  representations made therein was done in a conscious effort to delay the IRS

13  from revoking NHF's 501(c) status until it could take control of the charitable

14  investors' money and move it to new companies through the bankruptcy court

15  to avoid further IRS inquiry.

16     Had Goldstein advised the Behrmanns of his representation of NHF and

17  Baker, or the fact that a portion of the money paid to him by the Behrmanns

18  was being placed into a fund to defend NHF from the IRS, the Behrmanns

19  would have never entered into NHF's charitable giving plan. FAC ¶ 212.

20  Because this fact was never disclosed, upon Goldstein's advice the Behrmanns

21  accepted the plan and put over $1 million into their charitable foundation at

22  NHF. Between 1997 and 2009, Goldstein and Husch Blackwell were

23  repeatedly provided information by NHF that it was under investigation by the

24  IRS. See FAC ¶¶ 87, 90-95.  During this time period, Defendants routinely

25  counseled NHF regarding this investigation. At no time did Defendants tell

26  Plaintiffs that NHF was under investigation. In an effort to avoid forfeiture by

27  the IRS, on January 24, 2009, NHF filed bankruptcy. On June 30, 2009, NHF,

28  through the bankruptcy proceeding, converted $650,000 of the Behrmanns

1    money that they had set aside to perform charitable giving to their own private

2    for-profit use.  FAC ¶ 169.

3        Thereafter, the Behrmanns began their attempts to recover their money.

4    On January 16, 2012, during the course of the lawsuit with their broker the

5    Behrmanns took the deposition of Michael Goldstein. It was during that

6    deposition that John Behrmann learned, for the first time, that Goldstein was

7    directly involved in NHF's enterprise. The Berhmanns filed this action within

8    one year of learning this information.

9        As set forth in detail below, the Behrmanns have pled facts that are more

10   than sufficient to state their claims. And while Defendants' motion also seeks

11   to dismiss on the basis of statute of limitations, all the claims set forth in the

12   complaint have been timely filed upon discovery. Indeed, it should not be lost

13   on this Court that unlike a typical legal malpractice case, the fraudulent and

14   illegal acts at issue were purposefully cloaked in the attorney-client privilege in

15   an effort to conceal their discovery. Thus, the fact that it took the Berhmanns a

16   greater length of time to discover these acts should in no way affect their ability

17   to seek recovery for the same. *Baker v. Beech Aircraft Corp.* (1974) 39

18   Cal.App.3d 315, 324 [114 Cal.Rptr. 171]. To hold otherwise would condone

19   utilizing the attorney-client privilege to conceal fraud.

20        Finally, while Defendants' motion makes substantial efforts to color

21   Plaintiffs claims based on prior proceedings, the claims made regarding these

22   proceedings are, at best, misleading, and in most cases patently false. Setting

23   aside the fact that Defendants' request for judicial notice of their "facts" is

24   procedurally improper, Plaintiffs' trust the transparent nature of Defendants'

25   efforts to avoid liability will not be lost on this Court. If, as Defendants

26   contend, there is truly no basis for liability that will be born out shortly in the

27   discovery process. If, however, the facts in Plaintiffs' complaint are true, there

28   is more than sufficient evidence to establish Defendants' liability. Because

1  Plaintiffs ability to plead such facts is the only relevant inquiry at this stage,

2  Defendants motion must be denied.

3  **II.   BACKGROUND FACTS**

4       The factual allegations regarding plaintiffs' claims against Goldstein and

5  his firm are largely set forth in paragraphs 78-95, 160-164, and 209-214.  These

6  paragraphs establish that Defendants Michael Goldstein, Christie Kennett and

7  their firm, Husch & Eppenberger (now Husch Blackwell) began serving as

8  NHF's general counsel and tax counsel in early 1997.  The firm also undertook

9  the legal representation of numerous Philanthropic Development Officers

10  ("PDOs") and Board of Regents, many of whom were the financial planners

11  soliciting investments on behalf of NHF. Goldstein and his firm also undertook

12  the representation of the Behrmann Plaintiffs and many other Charitable

13  Investors in NHF for the purpose of advising them of the suitability of

14  charitable investments in NHF. At no point did Goldstein or his firm ever

15  advise the Behrmann Plaintiffs that they were simultaneously representing

16  Defendants, and specifically NHF, the Houk Family, and the Behrmanns'

17  broker and PDO, Joel Baker.

18       Defendants also never advised the Behrmann Plaintiffs and other

19  Charitable Investors that Defendants could use their invested funds for non-

20  charitable purposes that were not directed by the Plaintiffs.  FAC ¶ 78. All of

21  this information was intentionally concealed by the Defendants in order to

22  defraud the Behrmann Plaintiffs and other charitable investors and further the

23  enterprise.

24       Michael Goldstein worked with NHF to promote the fraudulent scheme

25  of NHF and the Houk family.  Goldstein travelled around the country and

26  conducted training seminars to other financial planners and attorneys to elicit

27  investment by their clients. At the trainings, Defendants and their agents

28  promised "substantial benefits for charitable organizations" and "creditor

1   protection for family wealth." Conferences began as early as June 24, 1997,

2   and continued up to the time NHF filed for bankruptcy. FAC ¶ 79.

3       On or about June 15, 1998, Defendants reported at an internal board

4   meeting that they continued to be under investigation by the IRS. This

5   information was relayed to Goldstein, and on September 9, 1998, Goldstein and

6   his firm confirmed via mail and/or wire that NHF would be the subject of an

7   IRS audit. This information was never disclosed to Plaintiffs or other

8   Charitable Investors. FAC ¶ ¶ 88-90.  Through 1998 and 1999, it is believed

9   and alleged that the Houk defendants informed Goldstein and his firm of the

10  on-going investigation by the IRS, and Goldstein in fact provided legal advice

11  to the Houks, NHF, and/or other defendants about the IRS investigation, but

12  never notified or revealed the existence of any potential conflict of interest or

13  concurrent representation to the plaintiffs.  FAC ¶ ¶ 91-92.

14      On or about July 6, 1999, Defendants wrote to their PDOs and attorneys,

15  including Defendants Goldstein and Kennett, via mail and facsimile and

16  encouraged them to have all Charitable Investors, including the Behrmann

17  Plaintiffs, transfer 100% ownership of all charitable split dollar policies to their

18  charitable foundation. This was done in furtherance of the Enterprise so that

19  Defendants could later use the bankruptcy courts to convert ultimate ownership

20  of these funds to Defendants. FAC ¶ 93. Defendants intended to convert the

21  ownership of the funds to avoid seizure by the IRS subsequent to its revocation

22  of NHF's 501(c) status. FAC ¶ 95.

23      Thereafter, on August 2, 1999, Defendants Goldstein, Kennett, and

24  Husch and Eppenberger advised the Behrmann Plaintiffs to transfer additional

25  money to NHF.  The firm continued to conceal that it was simultaneously

26  representing NHF or the Behrmanns' PDO, Joel Baker, all of who would

27  benefit substantially through the Enterprise if the Behrmanns followed

28  Goldstein's, Kennett's or Husch and Eppenberger's advice.  FAC ¶ 94.

Defendants expressly and impliedly undertook to provide competent and loyal professional legal services to the Behrmann Plaintiffs. Goldstein prepared Trust documents for Plaintiffs and also prepared a legal opinion regarding the NHF charitable funds and the marketed Financial Independence Plan. As an attorney working for Plaintiffs they expected Goldstein to offer unbiased independent legal evaluations.  These services were to include appropriate, timely and comprehensive advice and counsel in respect of developing, evaluating, implementing and monitoring an efficient and effective charitable giving strategy through NHF that would fulfill Plaintiffs' manifest charitable giving goals.  FAC ¶ 209.  Defendant Goldstein was grossly negligent in the performance of these services and duties for the Plaintiffs, and the performance by Defendant was materially below the standard expected of other similarly situated attorneys engaged in providing such services to clients across the country. FAC ¶¶ 210-213.

Had Defendant Goldstein properly disclosed the potential conflict of interests, his multiple representations, and the kickbacks he received from NHF as well as the fact that a portion of the Behrmanns' legal fees were being used to fund a "defense fund" for NHF, Plaintiffs would never have invested in NHF, and would not have sustained damages. FAC ¶ 212.

## A.   Clarification on the Bankruptcy Claims Against NHF

Aside from the facts underlying this motion, Defendants, motion has attempted to misstate certain facts regarding the bankruptcy court proceedings that bear clarification. The claim of "fraud" made by the Behrmanns in the NHF bankruptcy proceedings had nothing to do with the Behrmanns' subsequent appeal of the initial confirmation order.  Rather, in the bankruptcy the Berhmanns alleged that they made contributions to Highbourne Foundation (their charitable investment fund) based upon fraudulent representations and omissions prior to the commencement of the NHF bankruptcy case.  The

1   Behrmanns alleged that this fraud entitled them to a "claim" in the Chapter 11
2   proceedings because they had an equitable right of rescission.  Accordingly, the
3   Behrmanns filed a claim in the NHF bankruptcy case seeking to recover against
4   NHF.  NHF's counsel objected to that claim which triggered a "contested
5   matter" in the NHF bankruptcy.  NHF's bankruptcy counsel filed a motion to
6   dismiss with supporting papers, so it was treated as a summary judgment
7   motion under FRCP 56.  The motion was DENIED by the Bankuptcy Judge
8   who observed that if the facts alleged by the Behrmanns were proven at trial
9   they would have a valid claim against NHF. The statement that the Bankruptcy
10  Court rejected the Behrmanns' fraud claim is flatly false.

### B.      Clarification on the Behrmanns' Bankruptcy Appeal

12          Wholly separate and independent of the foregoing, the NHF
13  reorganization plan contained provisions (Sections 7.19, 7.20 and 7.21) that
14  purported to afford releases to certain non-debtor third parties (principally
15  NHF's directors and officers) as part of the plan.  The Behrmanns objected to
16  the plan on the basis that these provisions were not permissible under
17  applicable chapter 11 decisional law (because they wished to preserve their
18  right to pursue claims against the Houk family).  The Behrmanns' objections to
19  these plan provisions was overruled by the Bankruptcy Court and on appeal to
20  the federal district court.  The Fourth Circuit reversed and ruled that the plan
21  provisions could not be sustained on the findings entered by the Bankruptcy
22  Judge.  On remand and reexamination of the evidentiary record, the Bankruptcy
23  Judge excised the provision providing for the release of non-debtors (the Houk
24  family) for pre-petition misconduct.

## III.   DISCUSSION

### A.      Plaintiffs' Claims for Relief Should Not Be Dismissed

27          Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) "are
28  viewed with disfavor" and are granted without leave to amend only in

1    "extraordinary" cases. *Broam v. Bogan* (9th Cir. 2003) 320 F.3d 1023,

2    1028(citations omitted).  When ruling on such a motion, the court is to "accept

3    as true all of the factual allegations set out in plaintiff's complaint, draw

4    inferences from those allegations in the light most favorable to plaintiff, and

5    construe the complaint liberally." *Rescuecom Corp. v. Google Inc.* (2d Cir.

6    2009) 562 F.3d 123, 127.

7         The court should also generally disregard extraneous evidence that does

8    not appear on the face of the complaint. *Arpin v. Santa Clara Valley Transp.*

9    *Agency* (9th Cir. 2001) 261 F.3d 912, 925. Defendants' motion relies on

10   various alleged facts and documents from outside the bounds of Plaintiffs'

11   complaint, but such matters are not properly subject to judicial notice for the

12   reasons discussed in Plaintiffs' separately-filed objections to their request for

13   judicial notice. In doing so, Defendants have misstated, and in some cases

14   directly mislead the court regarding what has transpired in the underlying

15   bankruptcy Plaintiffs' prior trial against its broker.

16        While Plaintiffs' opposition corrects the record, Defendants' attempt to

17   rely on ill-framed evidence outside of the operative complaint converts this

18   from a Rule 12 motion to a Rule 56 motion. "In such cases, the Rule 56

19   summary judgment standard applies, and the moving party must establish that

20   there are no material facts in dispute and that he or she is entitled to prevail as a

21   matter of law." *Los Angeles News Service v. Conus Communications Co. Ltd.*

22   *Partnership* (C.D. Cal. 1997) 969 F.Supp. 579, 582(question of jurisdiction and

23   merits of action are intertwined where Copyright Act provides basis for both

24   subject matter jurisdiction of federal court and plaintiff's substantive claim for

25   relief). Here, Defendants cannot possibly meet their burden, as there are

26   numerous disputed facts which if construed in Plaintiffs' favor would entitled

27   them to judgment.

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS MICHAEL GOLDSTEIN'S AND HUSCH
BLACKWELL'S RULE 12 MOTION TO DISMISS

### B.    Plaintiffs Have Adequately Pled A Claim Under RICO

#### 1.    Plaintiffs Have Standing To Assert A RICO Claim

As Defendants acknowledge, Plaintiffs have standing to bring a RICO claim if they can plead facts establishing (1) that they suffered an injury to a property interest; and (2) that the alleged RICO violation caused the injury. *Canyon County v. Syngenta Seeds, Inc.* (9th Cir. 2008) 519 F.3d 969, 972; 18 U.S.C. § 1964(c). Plaintiffs have adequately pled both of these elements. Specifically, Plaintiffs have pled that based on Defendants' RICO enterprise they contributed "cash and property…in the aggregate amount of approximately $1.09 million." FAC ¶ 166. These contributions were made between January of 1997 and December of 2007. FAC ¶ 166. Plaintiffs further have pled that as a result of Defendants' RICO enterprise they lost approximately $650,000 of this money. FAC ¶ 169. This satisfies the standing requirement of an injury to property.

Plaintiffs have also pled that the RICO violation caused the injury. FAC ¶ 1-9, 50-184. After setting forth over 130 paragraphs outlining the RICO enterprise and the specific illegal acts taken by Defendants, Plaintiffs state that as "a direct and proximate consequence of Defendants' material breaches of the duties owed to them, Plaintiffs have suffered substantial damages, losses and injuries in an amount not less that the value of the cash and property confiscated" by Defendants. FAC ¶ 183. This satisfies the causation component for standing.

Based on the foregoing, there is no merit to the argument that Plaintiffs have not adequately pled facts sufficient to establish standing to bring a RICO action. Notably, Defendants avoid this precise contention. Rather, Defendants again travel outside the Complaint to argue that documents signed by Plaintiffs surrendered the right to control Plaintiffs' own charitable foundation and the money they placed in that foundation to perform charitable giving. This is

contrary to the overwhelming volume of specific facts set forth in the RICO complaint establishing that Plaintiffs had the right of control and the right to rescind their contributions if they were not used for the charitable purposes directed by Plaintiffs. FAC ¶¶ 66(e); 148-150.

The argument presented by Defendants is the very same argument proffered by NHF in the bankruptcy and underlies the RICO action. FAC ¶ 139, 146-150 [emphasis added]. In sum, the argument is that Plaintiffs maintained donor advised funds at NHF with no right of control. Thus, the taking of over $170 million of these funds by Defendants did not damage Plaintiffs or other charitable investors. Plaintiffs, however, have pled facts showing that the funds they maintained were not donor advised funds. FAC ¶¶ 66(e); 122-125, 148-150. Rather, Plaintiffs were promised they would retain control of funds, the funds would only be used for charitable purposes, and only the charitable purposes directed by Plaintiffs. FAC ¶¶ 148-150. Up until the time of the bankruptcy, the Plaintiffs did, in fact, retain control of their funds, including the right to manage and grow their foundation's funds. FAC ¶¶ 148-149. Plaintiffs also had the right to direct which specific charities would receive the funds. The Plaintiffs further paid NHF a fee to have their foundation housed under the NHF 501(c) umbrella. FAC ¶ 150.

The element of control is a key distinguishing feature of the funds at issue from donor advised funds.[1] While Defendants so desperately want this

---

[1] While Defendants attempt to cite to a portion of NHF's application to suggest the Behrmanns gave up "ownership and custody" of certain donations, what is missing from the application language is the word "control." Indeed, the Behrmanns have pled and will be able to establish as the case goes forward that NHF had different application forms for different types of charitable investment funds. For donor advised funds, the applications specified that the charitable investor was relinquishing "ownership, custody, *and control*." This language is notably absent from the Behrmanns' application thereby supporting the fact that the Behrmanns and remaining Plaintiffs, who had similar applications, did not give up "control." Plaintiffs have previously pled this distinction in their complaint. FAC ¶ 146-150.  Nevertheless, to the extent the court deems further facts

PLAINTIFFS' OPPOSITION TO DEFENDANTS MICHAEL GOLDSTEIN'S AND HUSCH
BLACKWELL'S RULE 12 MOTION TO DISMISS

1  court to conclude that the funds at issue were donor advised funds, the facts as

2  pled establish otherwise. FAC ¶¶ 66(e); 122- 125, 148-150.

3      Moreover, because of the control that was promised and initially

4  provided, each of the charitable investors, including Plaintiffs, had an right of

5  rescission to force Defendants to return money set aside for charitable giving if

6  it was not used for the charitable purposes directed by the Plaintiffs. See e.g.

7  *Millboro Lumber Co. v. Augusta Wood Products Corporation* (1924) 140 Va.

8  409 [125 S.E. 306, 310]; *Webb v. Webb* (Va. Ct. App. 1993) 16 Va.App. 486

9  [431 S.E.2d 55, 61-62]; *Motor City Bagels, L.L.C. v. American Bagel Co.* (D.

10  Md. 1999) 50 F.Supp.2d 460, 482-83.  In the case of the Behrmanns, the right

11  was, at a minimum, equitable. In the case of the Arizona Plaintiffs, the right

12  was express and contractual. FAC ¶¶ 4, 147.

13      As Plaintiffs have clearly set forth in their Complaint, this right of

14  rescission entitled them under the law to be deemed creditors in bankruptcy.

15  FAC ¶¶ 4, 147-150. NHF and their agents knew of the rescissionary rights – as

16  they had entered into the agreements providing the same - but never advised

17  the bankruptcy court of the agreements, or Plaintiffs' creditor standing. FAC

18  ¶¶ 4, 135-150. To the contrary, in furtherance of their enterprise NHF

19  attempted to re-cast the nature of these funds in a blatant effort to avoid these

20  Plaintiffs being deemed creditors. FAC ¶¶ 4, 135-150.

21      California law, however, is unambiguous. Where any donor has placed

22  restrictive conditions on money or property set aside for charitable purposes,

23  the donor has standing to initiate an action to recover the property taken for

24  purposes other than that which the donor directed. *L.B. Research and Educ.*

25  *Foundation v. UCLA Foundation* (2005) 130 Cal.App.4th 171, 181 [29

26  Cal.Rptr.3d 710, 717]("Although the public in general may benefit from any

27  

28  regarding this should be pled to make this distinction, Plaintiffs are more than capable of
doing so.

PLAINTIFFS' OPPOSITION TO DEFENDANTS MICHAEL GOLDSTEIN'S AND HUSCH
BLACKWELL'S RULE 12 MOTION TO DISMISS

1   number of charitable purposes, charitable contributions must be used only for

2   the purposes for which they were received in trust. [Citations.] Moreover, part

3   of the problem of enforcement is to bring to light conduct detrimental to a

4   charitable trust so that remedial action may be taken [by the donor]"). Because

5   Plaintiffs have pled that they placed such conditions on their charitable

6   investments - and Defendants accepted those conditions - Plaintiffs have

7   standing under the law to initiate an action to seek redress for the use of the

8   funds for non-charitable purposes. As a result, if Plaintiffs' allegations are

9   accepted as true, they have adequately pled a RICO claim and Defendants'

10  attempt to challenge the same fails.

11              **2.    Plaintiffs Have Pled A Direct Causal Link Between The**

12                      **Losses They Sustained And The RICO Enterprise**

13          Further, Plaintiffs have pled a direct causal link between Defendants'

14  activities and the injury Plaintiffs' sustained. Specifically, Plaintiffs' pleading

15  establishes that as a result of Defendants' RICO enterprise, Plaintiffs were

16  deprived of $650,000 and forced to incur significant attorneys fees above this

17  amount in the bankruptcy proceeding. FAC ¶ 169.

18          To avoid these facts Defendants make two arguments. First, Defendants

19  suggest that rulings by the bankruptcy court collaterally estopped Plaintiffs

20  from pursuing this action. The Moving Defendants, however, were not a party

21  to the bankruptcy action. Thus, no rulings of the bankruptcy court would have

22  preclusive effect from Plaintiffs litigating their claims against these

23  Defendants. *Martin v. Wilks* (1989) 490 U.S. 755 [109 S.Ct. 2180, 104 L.Ed.2d

24  835](A Non-Party does not enjoy the preclusive effects of an earlier

25  proceeding); See also, *Kourtis v. Cameron* (9th Cir. 2005) 419 F.3d 989, 996,

26  (allowing claims to be litigated by non-party to prior proceeding). Moreover,

27  the right to recover as a creditor in bankruptcy is separate and distinct from the

28  right to recover for injury sustained as a result of RICO fraud. Where the same

rights were not adjudicated in the prior proceeding, there is no privity, and thus, no preclusive effect. *Id.* at p. 989; See also *In re Schimmels* (9th Cir. 1997) 127 F.3d 875, 881.

Despite this, Defendants continue to argue that the bankruptcy court's order confirming NHF's Plan for Reorganization was a final judgment further precluding Plaintiffs from a "collateral attack" on that judgment. That order, however, was timely appealed by the Behrmanns - first to the district court and then to the Fourth Circuit Court of Appeals. On December 9, 2011, the Fourth Circuit Court of Appeals vacated the Plan and remanded the matter back to the bankruptcy court for further consideration. Specifically, the court stated:

> "Because the present record does not allow us to assess—under any standard of review—whether NHF's circumstances entitle it to the benefit of the Release Provisions, we must *vacate* the district court's judgment and remand the case to allow the bankruptcy court—if the record permits it—to set forth specific factual findings supporting its conclusions. (*Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 713 (4th Cir. 2011).)

On August 27, 2012, and October 22, 2012, the court made additional rulings which modified the Plan.  NHF and the Houks are now appealing these rulings. Thus, as of this date, there is no confirmed Plan or final judgment resulting from that Plan. Accordingly, contrary to Defendants' suggestions the six (6) month window to challenge to fraud underlying the Plan has yet to run. 11 U.S.C. § 1144.

Moreover, the law is clear that the six (6) month timeframe to challenge fraud in the bankruptcy court is not *an exclusive remedy. Bizzell v. Hemingway* (4th Cir. 1977) 548 F.2d 505("Although a party attacking an arrangement procured by fraud must ordinarily follow the procedure set forth in section 386 of the Bankruptcy Act, 11 U.S.C. § 786,[4] this provision does not provide an

1  exclusive remedy.)[2] Thus, because bankruptcy fraud is one of the causes

2  enumerated under RICO, Plaintiffs are free to file this action to seek redress for

3  Defendants' activities. Plaintiffs are not limited to doing so only in the

4  bankruptcy court, as the law interpreting RICO establishes the parallel

5  jurisdiction of the bankruptcy court and the federal district court. *Grimmett v.*

6  *Brown* (9th Cir. 1996) 75 F.3d 506, 515-16("With respect to RICO claims, the

7  bankruptcy court and federal court are more properly considered "parallel

8  avenues of relief.") Thus, even if Plaintiffs raised the RICO claim in the

9  bankruptcy court (which they have not), it nevertheless is permitted to

10  simultaneously press the claim against these Defendants in federal court. *Id.* at

11  p. 506

12      As a second argument, Defendants claim there are insufficient facts to

13  establish a causal link between their conduct and Plaintiffs' losses. RICO

14  section 1962(a) prohibits a person who has derived income from a pattern of

15  racketeering activity to invest that income in an enterprise.  In the Ninth circuit,

16  a plaintiff establishes a causal link when he alleges facts sufficient to show that

17  Defendants invested illegally gotten profits into the enterprise. *Sybersound*

18  *Records, Inc. v. UAV Corp.* (9th Cir. 2008) 517 F.3d 1137, 1149. Once a

19  plaintiff shows that the use or investment of the income was a "substantial

20  factor" in causing his injury," he or she has sufficiently met their obligation to

21  plead a direct causal link. *Id.* at p. 1137

22      Here, the investment of Plaintiffs' money by Defendants into a fund to

23  defend NHF from IRS scrutiny delayed the IRS from taking action against

24  NHF, which, in turn, allowed NHF to continue the enterprise and obtain more

25  _____

26  [2] Section 386 was replaced by section 1144 in the Bankruptcy Reform Act of 1978, but its
language and the interpretation of that language is the same. *In re Michelson* (Bankr. E.D.

27  Cal. 1992) 141 B.R. 715, 724-25("Since 11 U.S.C. § 1144 was derived from Bankruptcy
Act § 386 and from Bankruptcy Rule 11–41 without substantial change, the cases decided

28  under the former law retain vitality and inform the interpretation of 11 U.S.C. § 1144")

money from Plaintiffs.  It further permitted NHF to then file for bankruptcy and –through fraud – convert Plaintiffs' charitable contributions to NHF.

The facts as pled, state that had these Defendants met their ethical and legal obligations to disclose potential conflicts of interest (i.e. their simultaneous representation of Plaintiffs, NHF and Plaintiffs' broker), Plaintiffs never would have placed their money at NHF.  Had Plaintiffs placed their money elsewhere, they would not have suffered the harm that is the basis of this suit.

Further, at no time during the representation of Plaintiffs did Defendants ever disclose that NHF was under investigation by the IRS, or that a portion of the attorneys' fees Plaintiffs' paid to Defendants were being used to defend NHF from the IRS's inquiry. Had either of these facts been disclosed, Plaintiffs again could have transferred their funds from NHF to another entity prior to the bankruptcy. This also would have prevented the losses that are at issue. Accordingly, there is a direct causal link between the Defendants' conduct and Plaintiffs' injury. These Defendants were not simply practicing law or providing legal advice. They were assisting NHF in committing fraud and avoiding IRS scrutiny and obtained compensation for doing so.

### 3.   Plaintiffs Have Pled A Pattern Of Racketeering Activity Sufficient To Maintain Their RICO Claim

In the Central District it is established that a "pattern" of racketeering activity requires two acts of racketeering activity within ten years of each other. *Harper v. New Japan Securities Intern., Inc.* (C.D. Cal. 1982) 545 F.Supp. 1002, 1004.  Each act of criminal activity counts as act of racketeering activity, even if numerous acts arise out of same episode. *Id.*

Here, Plaintiffs have specifically pled no less than eight (8) acts of mail and wire fraud against these specific Defendants, all of which occurred in a ten-year period. FAC ¶ 78, 87, 90-95. Each of these acts specifies the date and the

1  activity taken by these Defendants. For example, Plaintiffs claim that "On or
2  about February 14, 1998, Defendants reported at an internal board meeting that
3  they continued to be under investigation by the IRS. Shortly after the meeting,
4  Defendants contacted Michael Goldstein and Christie Kennett via mail and/or
5  wire at the Husch & Eppenberger firm (now Husch Blackwell) and relayed the
6  information regarding the IRS' investigation. This information was never
7  disclosed to Plaintiffs or other charitable investors. This is in spite of the fact
8  that, at the time, Goldstein, Kennett, and Husch & Eppenberger were actively
9  representing the Behrmann Plaintiffs." FAC ¶ 87.

10      Defendants' efforts to label such facts as "vague" or not meeting Rule
11  9(b)'s pleading standard does not make their allegations true. A basic reading
12  of Plaintiffs' Complaint adequately demonstrates that these facts are pled with
13  more than sufficient particularity to meet Plaintiffs' burden and establish
14  liability against these Defendants. See *First Capital Asset Management, Inc. v.*
15  *Satinwood, Inc.* (2d Cir. 2004) 385 F.3d 159, 178(denying motion to dismiss
16  RICO claims on similar grounds).

17          **4.    Plaintiffs Have Pled Facts Establishing Defendants'**
18              **"Operation" And "Management" of the Enterprise**
19              **Sufficient To Maintain Their RICO Claim**

20      Defendants claim that RICO liability cannot attach because they were
21  not involved in the "operation" or "management" of the RICO enterprise. In
22  support of this argument, Defendants cite this Court to the holding in *Baumer*
23  *v. Pachal*, 8 F.3d 1341. In doing so, Defendants suggest they only provided
24  legal services, and thus, cannot be held liable for RICO claim. The facts in
25  *Pachal*, however, are inapposite from those pled in the instant action.
26      The facts in this case are more akin to the Northern District's holding in
27  *San Francisco Bay Area Rapid Transit Dist. v. Spencer* (N.D. Cal., Sept. 6,
28  2005, C 04-04632 SI) 2005 WL 2171906("Spencer"). In *Spencer*, Defendants'

PLAINTIFFS' OPPOSITION TO DEFENDANTS MICHAEL GOLDSTEIN'S AND HUSCH
BLACKWELL'S RULE 12 MOTION TO DISMISS

1   motion to dismiss was denied where plaintiff properly alleged the attorneys
2   were active participants in directing the fraudulent scheme.

3       Likewise, here, Plaintiffs have pled that the moving Defendants were the
4   legal brains behind the operation to defraud charitable investors and avoid the
5   IRS. FAC ¶ 78, 87, 90-95. This is not a case where these Defendants simply
6   "drafted a partnership agreement," or "an authorized letter." Defendants were
7   in at the ground floor of NHF's formation and operation and assisted,
8   counseled, and directed them in the ways in which they could avoid the IRS
9   and obtain profit from the Plaintiffs. FAC ¶ 78, 87, 90-95. Because Plaintiffs
10  have pled the same, Defendants motion cannot succeed on this ground.

### 5.   Plaintiffs Have Pled Facts Sufficient To Allege A Conspiracy Under Section 1962(d)

13      The legal pleading standard applied to a RICO conspiracy claim under
14  Section 1962(d) is more relaxed than 1962 (a), (b), and (c). *First Capital Asset*
15  *Management, Inc.*, supra, 385 F.3d 159, 178("[T]he requirements for RICO[ ]
16  conspiracy charges under § 1962(d) are less demanding). To succeed on a
17  claim under Section 1962(d), Plaintiffs need only plead facts sufficient to show
18  that a conspirator intend to further an endeavor which, if completed, would
19  satisfy all of the elements of a substantive criminal offense. *Id.* at p. 159 Under
20  this standard, the RICO defendant need not complete the goal. *Id.* at p. 159
21  Rather, the claim is sufficient if the RICO defendant simply adopted the goal of
22  furthering or facilitating the criminal endeavor. *Id.* at p. 159. citing *Baisch v.*
23  *Gallina* (2d Cir. 2003) 346 F.3d 366, 376-77(quoting *Salinas v. U.S.* (1997)
24  522 U.S. 52, 65 [118 S.Ct. 469, 139 L.Ed.2d 352]).

25      Here, Plaintiffs' Complaint makes clear that the moving Defendants
26  adopted NHF's goal of concealing critical information from Plaintiffs in an
27  effort to induce further monetary investment. All the while, Defendants were
28  working with NHF to stave off inquiries from IRS. To suggest, as Defendants

do, that they did not adopt the criminal endeavor defies logic. If, as Defendants claim, they had not adopted this criminal endeavor and were simply performing legal services, they should have had no issue meeting their ethical obligation to disclose any potential conflicts of interest to Plaintiffs – a point Defendants make no effort to explain or refute.

### 6. Plaintiffs Have Pled The Other Necessary Elements Sufficient To Maintain Their RICO Claims

Defendants remaining allegations contend that Plaintiffs' RICO claim fails because they have not pled facts showing that Moving Defendants "derived income from a pattern of racketeering" or that Defendants "invested that income in the acquisition of an interest in the enterprise." See Defendants' Motion, pg 21, 15-18. As set forth above, all of these claims are defeated by the fact that Defendants took Plaintiffs' money and put a portion of the money into a legal fund to defend NHF without Plaintiffs' knowledge. FAC ¶ 78-95, 160-164, and 209-214. These allegations are also defeated by the fact that Defendants derived substantial income from representing individuals, like Plaintiffs, and advising them to place their charitable investments with NHF. FAC ¶ 78-95, 160-164, and 209-214.

### C. Defendants Have Failed To Meet Their Burden To Prove That Plaintiffs Had Knowledge Of Defendants' Professional Negligence Prior To The Expiration Of The Statute Of Limitations

The California Supreme Court has made clear that where a defendant in a legal malpractice action seeks to assert a statute of limitations defense, Defendant bears the burden of proof to prevail on that defense. *Samuels v. Mix* (1999) 22 Cal.4th 1, 10 [91 Cal.Rptr.2d 273, 989 P.2d 701], (A defendant must prove the facts necessary to enjoy the benefit of a statute of limitations.) A cause of action for legal malpractice is tolled and does not accrue until the

client discovers, or should discover, the facts establishing the elements of his cause of action. *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 194 [98 Cal.Rptr. 837, 491 P.2d 421]. "If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for professional negligence. Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice." *Budd v. Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433].

In their motion, Defendants utterly fail to meet their burden to establish that Plaintiffs had any knowledge of Defendants' legal malpractice prior to the last year. To the contrary, all Defendants suggest is that through various acts of Congress or articles about NHF, Plaintiffs should have somehow known that Defendants committed malpractice. Setting aside the absurdity of this argument, and the fact that the evidence relied on by Defendants is outside the complaint and not capable of judicial notice, what Defendants fail to acknowledge is that even after the purported acts of Congress and the news articles, Defendants still were writing to Plaintiffs as Plaintiffs' lawyers and telling them to put their money into NHF. FAC ¶ 94 (On August 2, 1999, Defendants advised Plaintiffs to transfer all ownership in the charitable split dollar program to NHF). Thus, the entire premise that acts of Congress or news articles put Plaintiffs on notice of Defendants' malpractice is a non-sequiter meant to distract this Court from the conduct at issue and the fact that Defendants have failed to meet their burden.  On this basis alone, Defendants' motion related to the professional negligence claim should be denied.

**D.     Plaintiffs Have Adequately Pled A Claim For Professional Negligence And The Statute Of Limitations Has Been Effectively Tolled**

The elements of a cause of action for professional negligence are "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Budd*, supra, 6 Cal.3d 195, 200; *Carlton v. Quint* (2000) 77 Cal.App.4th 690, 699 [91 Cal.Rptr.2d 844]. "'In addressing breach of duty, "the crucial inquiry is whether [the attorney's] advice was so legally deficient when it was given that he may be found to have failed to use 'such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.'" *Blanks v. Shaw* (2009) 171 Cal.App.4th 336, 357 [89 Cal.Rptr.3d 710].

The issue of negligence in a legal malpractice case is ordinarily an issue of fact. *Blanks*, supra, 171 Cal.App.4th 336, 376. "It is well settled that an attorney is liable for malpractice when his negligent investigation, advice, or conduct of the client's affairs results in loss of the client's meritorious claim." *Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 900 [218 Cal.Rptr. 313, 705 P.2d 886]. "The standard is that of members of the profession 'in the same or a similar locality under similar circumstances'. . . . The duty encompasses both a knowledge of law and an obligation of diligent research and informed judgment." *Wright v. Williams* (1975) 47 Cal.App.3d 802, 802 [121 Cal.Rptr. 194].

Generally, a suit for legal malpractice must be brought against an attorney within one year after discovery of the error or omission or within four

years after the wrongful act occurred, whichever occurs first.[3]  Code Civ. Proc., § 340.6, however, provides several circumstances where these statutes will be tolled. Specifically, Code Civ. Proc., § 340.6 tolls the statute of limitation where:

    (1)    The plaintiff has not sustained actual injury;

    (2)    The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred;

    (3)    The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and

### 1.    Plaintiffs' did not sustain actual injury until June 30, 2009

Actual injury only occurs once there is legally cognizable damage necessary to assert a cause of action for malpractice. *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 752 [76 Cal.Rptr.2d 749, 958 P.2d 1062, 1071]. There is no requirement that the act giving rise to malpractice confirm a causal nexus between the attorney's error and the asserted injury. *Id*. The determination of actual injury requires a factual analysis of the claimed error and its consequences. *Id*.

Under this standard, nominal damages will not end the tolling of Code Civ. Proc., § 340.6's limitations period. Instead, the inquiry concerns whether "events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages." (*Id*. citing *Davies v. Krasna* (1975) 14 Cal.3d 502, 513 [121 Cal.Rptr. 705, 535 P.2d 1161].)

---

[3] Whether intentional or otherwise, Defendants' moving papers wrongly suggest there is only a one-year statute of limitations for such claims. See Motion to Dismiss, Page 22, lines 14-15; 28, Page 23, lines 1-6.

PLAINTIFFS' OPPOSITION TO DEFENDANTS MICHAEL GOLDSTEIN'S AND HUSCH BLACKWELL'S RULE 12 MOTION TO DISMISS

1     Here, as set forth in the FAC, Plaintiffs did not sustain compensable

2   damages until June 30, 2009, when NHF absconded with $650,000. FAC ¶

3   169. There is nothing in the Complaint or the wealth of documents in

4   Defendants' request for judicial notice that Plaintiffs suffered "actual damage"

5   at any earlier date. Accordingly, the earliest date the statute of limitations could

6   have started to accrue was on June 30, 2009. Plaintiffs' FAC was filed on

7   November 29, 2012, well within Code Civ. Proc., § 340.6's four year statute.

8     And while Defendants argue Code Civ. Proc., § 340.6's more restrictive

9   one-year should apply, here again there is no admissible evidence Plaintiffs

10   knew at anytime prior to (insert date of Goldstein's deposition), that Goldstein

11   was simultaneously representing NHF and Baker, or that he was obtaining

12   monetary kick-backs for this joint representation. Thus, under either

13   interpretation of the California statute, Plaintiffs claims for legal malpractice

14   are timely.

15       **2.**    **Defendants Willfully Concealed The Facts Constituting**

16            **Their Wrongful Acts Further Tolling The Statue of**

17            **Limitation**

18     Plaintiffs' FAC clearly pleads that all the information regarding these

19   Defendants was "intentionally concealed by Defendants in order to defraud the

20   Behrmann Plaintiffs and further the [RICO] enterprise." FAC ¶ 78.  As stated

21   previously, Defendants simultaneous representation of NHF and Joel Baker

22   was intentionally cloaked in the attorney-client privilege in an effort to prevent

23   Plaintiffs from discovering the inherent conflict, or question Defendants'

24   repeated advise to put money into NHF.  It was Defendants' obligation to

25   disclose all known conflict of interest related to the joint representation. To

26   suggest Plaintiffs should have otherwise been able to discover these conflicts

27   impermissibly shifts the burden to Plaintiffs by suggesting Plaintiffs should

28   have inquired about any potential conflicts, rather than to Defendants who have

the legal obligation to disclose the same. Because Plaintiffs have adequately plead facts suggesting that these Defendants willfully concealed the facts constituting their wrongful acts, the statute of limitations was further tolled.

**E.     Plaintiffs' Remaining Causes of Action Were Similarly Tolled**

For the same reasons set forth above, Plaintiffs' claims for negligent misrepresentation, conspiracy and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") and the Missouri Merchandising Practices Act ("MMPA") were similarly tolled. Specifically, Plaintiffs' claims for negligent misrepresentation and conspiracy both sound in fraud. *Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54, 69 [72 Cal.Rptr.2d 359, 369]. It is well-established that fraud-based claims toll the statute of limitations until discovery. *Baker*, supra, 39 Cal.App.3d 315, 324("To hold that by concealing fraud, or by committing fraud in such a manner as to conceal it until after the party committing the fraud could plead the statute of limitations to protect itself, is to make the law which was designed to prevent fraud the means by which it is successful and secure").

Likewise, claims under PUTPCPL and MMPA are also tolled where there is delayed discovery. See *A. McD. v. Rosen* (Pa. Super. Ct. 1993) 423 Pa.Super. 304, 308 [621 A.2d 128, 130](acknowledging Pennsylvania's delayed discovery rule); See also *M & D Enterprises, Inc. v. Wolff* (Mo. Ct. App. 1996) 923 S.W.2d 389, 400(acknowledging Missouri's delayed discovery rule)

With respect to Plaintiffs' RICO claim, the 9th Circuit adheres to the accrual rule. Under this rule, a RICO claim will not begin to accrue until a plaintiff has actual or constructive knowledge of alleged fraud. *Beneficial Standard Life Ins. Co. v. Madariaga* (9th Cir. 1988) 851 F.2d 271, 275;18 U.S.C. § 1964. If there is a triable issue of fact in this regard, neither a Rule 12 or Rule 56 motion should be granted. *Id.* Here, Plaintiffs have pled that they

1   first learned of all the facts giving rise to the RICO complaint in the past four

2   months. Moreover, with respect to the moving Defendants, Plaintiffs' have

3   appended declarations to this motion establishing that their knowledge of the

4   legal malpractice acts was only learned in the last year. See Declaration of John

5   and Nancy Behrmann filed concurrently. To the extent the court deems it

6   necessary to amend the pleading to make this clear, Plaintiffs are willing to do

7   so. On the face of the complaint, however, Plaintiffs have pled when they first

8   learned of the facts underlying the RICO enterprise. FAC ¶ 168. Based on this

9   date, the earliest the RICO statute could have begun to accrue was within the

10  last year.

11  **IV.   CONCLUSION**

12          For the reasons set forth above, Plaintiffs respectfully request

13  Defendants Rule 12 Motion be denied in its entirety. To the extent the court

14  deems otherwise, Plaintiffs request leave to amend to clarify their allegations

15  against these Defendants, and add additional allegations regarding the legal

16  defense fund and the profits derived therefrom that will only strengthen

17  Plaintiffs' claims.

18          Alternatively, if this Court decides to convert Defendants 12(b)(6)

19  motion to a Rule 56 motion for summary judgment, Plaintiffs respectfully

20  request this Court allow time for discovery, pursuant to Rule 56(f), before

21  ruling on such a motion. *Lee v. City of Los Angeles* (9th Cir. 2001) 250 F.3d

22  668, 688.

23

24  DATED: November 30, 2012        NYE, PEABODY, STIRLING, HALE & MILLER LLP

25

26                          By: _____

27                              Jonathan D. Miller

28                              Attorney for Plaintiffs

PLAINTIFFS' OPPOSITION TO DEFENDANTS MICHAEL GOLDSTEIN'S AND HUSCH
BLACKWELL'S RULE 12 MOTION TO DISMISS

**PROOF OF SERVICE**

RE: *John and Nancy Behrmann, et al. v. John T. Houk III, et al.*  CASE # CV12-5636 DMG (CWx)

      I am employed in the County of Santa Barbara, State of California.  I am over the age of eighteen years and not a party to this action.  My business address is 33 West Mission, Suite 201, Santa Barbara, California 93101.

      On the date stated below, I served the following documents: **PLAINTIFFS' OPPOSITION TO DEFENDANTS MICHAEL GOLDSTEIN'S AND HUSCH BLACKWELL' RULE 12 MOTION TO DISMISS** on the interested parties in this action:

James P. Fogelman
Shannon E. Mader
Michael Menssen
Karen Moody
GIBSON, DUNN AND CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197

Jon Wilson
M. John Carson
A. Joel Richlin
FOLEY AND LARDNER LLP
555 S. Flower St, Suite 3500
Los Angeles, CA 90071

Robert E. Gooding
Scott B. Garner
Jared S. Kirkwood
MORGAN, LEWIS & BOCKIUS LLP
5 Park Plaza, Suite 1750
Irvine, CA 92614

[]    [By Mail] I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Santa Barbara, California on November 30, 2012.

[]    [By Personal Service] I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s) on November 30, 2012.

[X]    [By Electronic Service] I caused such document(s) to be sent electronically on November 30, 2012 in accordance with the Court's electronic filing ("ECF") rules, pursuant to which registered ECF users receive service copies by e-mail delivery. A courtesy copy will follow as stated above.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  November 30, 2012

Jenna Gould