David L. Nye (SBN. 67009)
Jonathan D. Miller (SBN. 220848)
**NYE, PEABODY, STIRLING, HALE & MILLER, LLP**
33 West Mission St., Suite 201
Santa Barbara, California 93101
Telephone: (805) 963-2345
Facsimile: (805) 563-5385
Email:   david@nps-law.com
jonathan@nps-law.com

**SCHENDZIELOS & ASSOCIATES, LLC**
Daniel J. Schendzielos (CO. SBN 22542)
8547 E. Arapahoe Rd., Suite J534
Greenwood Village, CO 80112
Tel:      (303) 773-6600
Fax:      (303) 957-2382

**TERRY L. BAKER, ATTORNEY AT LAW**
Terry L. Baker (SBN 214365)
820 Bay Avenue, Suite 230L
Capitola, CA 95010
Tel:      (831) 476-7900
Fax:      (831) 476-7906

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN R. BEHRMANN, and NANCY P. BEHRMANN, as individuals and assignees of DR. ROBERT GRIEGO, DR. CAROLE GRIEGO, TERRY P. GILLETT, BRENDA A. GILLETT, WILLIAM P. O'CONNELL, and JINAN O'CONNELL<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN T. HOUK, II, an individual, MIRIAM M. HOUK, an individual, JOHN T. HOUK III, an individual, JANET H. RIDGELY, an individual, JULIE L. HOUK, an individual, NATIONAL HERITAGE FOUNDATION, a non-profit organization, ROBERT BEN KORI & | Case No.  CV12-5636 DMG (CWx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT KENNETT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**Date: January 11, 2013**<br>**Time: 9:30 a.m.**<br>**Dept: 7**<br><br><br>Complaint Filed:  June 28, 2012<br>Trial Date:         None<br>Judge:               Hon. Dolly Gee |

1  ASSOCIATES, corporate form unknown,
   CONGRESSIONAL DISTRICT
2  PROGRAM, INC., a corporation;
3  CHARITY ADMIN, INC., a corporation;
   UNITED CHARITABLE PROGRAMS, a
4  non-profit organization; NATIONAL
5  PHILANTHROPIC INSTITUTE, a
   corporation; INTERNATIONAL
6  PHILANTHROPIC INSTITUTE, a
7  corporation; STELLAR FINANCIAL,
   INC., a corporation; STELLAR
8  TECHNOLOGY SOLUTIONS, LLC, a
9  limited liability company; STELLAR
10 ADVISORS, INC., a corporation; IAN
   SCOTT-DUNNE, an individual;
11 STELLAR McKIM, LLC, a limited
12 liability company;  McKIM CAPITAL, a
   corporation; JAMES CAHILL, an
13 individual; MICHAEL GOLDSTEIN, an
14 individual, CHRISTIE KENNETT, an
15 individual, HUSCH BLACKWELL LLP, a
   Missouri Limited Liability Partnership,
16 PATTON BOGGS, LLP, a limited liability
17 partnership, FOLEY & LARDNER, LLP, a
   limited liability partnership; and DOES 1-
18 10, inclusive.
19
20          Defendants.
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................1

II. BACKGROUND FACTS .......................................................4

  A. Clarification on the Bankruptcy Claims Against NHF ...........7

  B. Clairification on the Behrmanns' Bankruptcy Appeal ............7

III. DISCUSSION ................................................................8

  A. Plaintiffs' Claims for Relief Should Not Be Dismissed .........8

  B. Plaintiff Have Adequately Pled a Claim for Professional Negligence ...9

    1. Plaintiffs Have Pled a Direct Causal Link Between The Losses They Sustained And The Defendants' Wrongful Conduct ........................ 12

    2. Plaintiffs Did Not Have To Relinquish Control Over The Money In Their Foundation ................................................................. 15

  C. Plaintiffs Adequately Stated A Claim For Negligent Misrepresentation ................................................................. 17

  D. Plaintiffs Have Pled Facts Sufficient To Allege A Civil Conspiracy .. 19

  E. Plaintiffs Adequately Pled Claims Under The Consumer Protection Status ................................................................. 20

IV. CONCLUSION ................................................................ 23

PLAINTIFFS' OPPOSITION TO DEFENDANT KENNETT'S MOTION TO DISMISS

# **TABLE OF AUTHORITIES**

**Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
 7 Cal. 4th 503, 869 P.2d 454 (1994) .................................................... 19, 20

*Arpin v. Santa Clara Valley Transp. Agency,*
 (9th Cir. 2001) 261 F.3d 912 .................................................................. 8

*Baisch v. Gallina,*
 (2d Cir. 2003) 346 F.3d 366 .................................................................. 20

*Baker v. Beech Aircraft Corp.,*
 (1974) 39 Cal.App.3d 315 [114 Cal.Rptr. 171]........................................ 3

*Behrmann v. Nat'l Heritage Found.,*
 663 F.3d 704 (4th Cir. 2011) .................................................................. 13

*Blanks v. Shaw,*
 (2009) 171 Cal.App.4th 336 .................................................................. 9, 10

*Broam v. Bogan,*
 (9th Cir. 2003) 320 F.3d 1023 .................................................................. 8

*Budd,*
 supra, 6 Cal.3d 195            9

*Carlton v. Quint,*
 (2000) 77 Cal.App.4th 690 .................................................................. 9

*Doctors' Co.,*
 supra, 49 Cal.3d , 260 Cal.Rptr. 183, 775 P.2d 508.................................. 20

*First Capital Asset Management, Inc. v. Satinwood, Inc.,*
 (2d Cir. 2004) 385 F.3d 159 ........................................................ 15, 20, 22

*Fox v. Pollack,*
 (1986) 181 Cal.App.3d 954, 226 Cal.Rptr. 532 ...................................... 18

*Gagne v. Bertran,*
 (1954) 43 Cal.2d 481 –488, 275 P.2d 15.................................................. 18

ii

PLAINTIFFS' OPPOSITION TO DEFENDANT KENNETT'S MOTION TO DISMISS

*Gutierrez v. Mofid,*
   (1985) 39 Cal.3d 892 ................................................................ 10

*In re Schimmels,*
   (9th Cir. 1997) 127 F.3d 875 .................................................... 13

*Kourtis v. Cameron,*
   (9th Cir. 2005) 419 F.3d 989 ............................................... 12, 13

*L.B. Research and Educ. Foundation v. UCLA Foundation,*
   (2005) 130 Cal.App.4th 171[29 Cal.Rptr.3d 710, ] ................... 17

*Lazar v. Superior Court,*
   (1996) 12 Cal.4th 631, 49 Cal.Rptr.2d 377, 909 P.2d 981 .......... 17

*Lee v. City of Los Angeles,*
   (9th Cir. 2001) 250 F.3d 668 .................................................... 23

*Los Angeles News Service v. Conus Communications Co. Ltd. Partnership,*
   (C.D. Cal. 1997) 969 F.Supp. 579 .............................................. 9

*Martin v. Wilks,*
   (1989) 490 U.S. 755 [109 S.Ct. 2180, 104 L.Ed.2d 835]............... 12

*Millboro Lumber Co. v. Augusta Wood Products Corporation,*
   (1924) 140 Va. 409 [125 S.E. 306 ]........................................... 16

*Motor City Bagels, L.L.C. v. American Bagel Co.,*
   (D. Md. 1999) 50 F.Supp.2d 460.............................................. 16

*Mox Incorporated v. Woods,*
   (1927) 202 Cal. 675 –678, 262 P. 302...................................... 20

*Rescuecom Corp. v. Google Inc.,*
   (2d Cir. 2009) 562 F.3d 123 ...................................................... 8

*Salinas v. U.S.,*
   (1997) 522 U.S. 52 [118 S.Ct. 469, 139 L.Ed.2d 352]............... 20

*Small v. Fritz Companies, Inc.,*
   30 Cal. 4th 167, 65 P.3d 1255 (2003)................................. 18, 19

*Webb v. Webb,*
   (Va. Ct. App. 1993) 16 Va.App. 486 [431 S.E.2d 55 ] ........................... 16

*Wright v. Williams,*
   (1975) 47 Cal.App.3d 802 ....................................................... 10

*Wyatt v. Union Mortgage Co.,*
   (1979) 24 Cal.3d 773, 157 Cal.Rptr. 392, 598 P.2d 45.......................... 19

*Yelin v. Swartz,*
   790 F. Supp. 2d 331 (E.D. Pa. 2011)......................................... 21

**Statutes**

11 U.S.C. § 1144.................................................................. 13

Civ.Code, § 1572, subd. 2 ....................................................... 18

Civ.Code, § 1710, subd. 2 ....................................................... 18

Code Civ. Proc., § 340.6......................................................... 11

Mo. Ann. Stat. § 407.020 (West)................................................. 22

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Despite the number of parties and voluminous allegations set forth in the Complaint, Plaintiffs' case against Christie Kennett and her prior law firm, Husch Blackwell ("Defendants" or " Moving Defendants") is a simple one. In 1997, Kennett undertook the legal representation of Plaintiffs John and Nancy Behrmann to provide them with advice regarding a charitable giving plan they wished to set up. The Behrmanns were referred to Michael Goldstein and Kennett by Joel Baker, the broker who was attempting to place the Behrmanns into the charitable giving plan. FAC ¶ 160. The charitable giving plan Baker was trying to sell to the Behrmanns was through an entity called National Heritage Foundation ("NHF").

The plan was supposed to allow the Behrmanns to have a charitable foundation under NHF's 501(c) umbrella. The Behrmanns could then direct which charity would receive money from their foundation.  In advance of entering into the plan, and in an effort to perform due diligence, the Behrmanns sought legal advice regarding the plan from Defendants. At the time, the firm was directly and simultaneously representing Baker and NHF. This fact was never disclosed to the Behrmanns. FAC ¶ 160. Further, in violation of both legal and ethical duties, Defendants were contributing a portion of money  received from each client, including the Behrmanns, into a Legal Defense fund set aside to defend NHF from any IRS inquiry. This fact was also never disclosed to the Behrmanns.

Prior to the Defendants' representation of the Behrmanns and up through the time NHF filed for bankruptcy in 2009, NHF continued to be under investigation by the IRS. This fact was also known to Defendants, but never disclosed to the Behrmanns. Had the disclosure been made, the

**PLAINTIFFS' OPPOSITION TO DEFENDANT KENNETT'S MOTION TO DISMISS**

1  Behrmanns could have moved their charitable investment from NHF prior to

2  its bankruptcy.

3      Ultimately, NHF illegally sought bankruptcy protection in an

4  intentional effort to convert over $170 million in charitable investment

5  funds, including the Behrmanns' funds, to their own for-profit use.

6  Specifically, at the time it filed bankruptcy NHF knew the IRS was close to

7  revoking its 501(c) status. This decision would have required NHF to return

8  charitable funds to charitable investors, including the Behrmanns. Because

9  NHF had been using these charitable funds as leverage in for-profit

10  investments, it knew it would not be able to return all the funds, and that its

11  fraudulent scheme would be revealed and unraveled. In sum, the entire

12  filing of the bankruptcy and the representations made therein was done in a

13  conscious effort to delay the IRS from revoking NHF's 501(c) status until it

14  could take control of the charitable investors' money and move it to new

15  companies through the Bankruptcy Court to avoid further IRS inquiry.

16      Had Kennett or anyone at her firm advised the Behrmanns of their

17  representation of NHF and Baker, or the fact that a portion of the money

18  paid by the Behrmanns was being placed into a fund to defend NHF from

19  the IRS, the Behrmanns would have never entered into NHF's charitable

20  giving plan. FAC ¶ 212. Because this fact was never disclosed, upon

21  Defendants' advice the Behrmanns accepted the plan and put over $1

22  million into their charitable foundation at NHF. Between 1997 and 2009,

23  Defendants and Husch Blackwell were repeatedly provided information by

24  NHF that it was under investigation by the IRS. See FAC ¶¶ 87, 90-95.

25  During this time period, Defendants routinely counseled NHF regarding this

26  investigation. At no time did Defendants tell Plaintiffs that NHF was under

27  investigation. In an effort to avoid forfeiture by the IRS, on January 24,

28  2009, NHF filed bankruptcy. On June 30, 2009, NHF, through the

1  bankruptcy proceeding, converted $650,000 of the Behrmanns' money that
2  they had set aside to perform charitable giving to their own private for-
3  profit use.  FAC ¶ 169.
4          Thereafter, the Behrmanns began their attempts to recover their
5  money. On January 16, 2012, during the course of the lawsuit with their
6  broker the Behrmanns took the deposition of Michael Goldstein. It was
7  during that deposition that John Behrmann learned, for the first time, that
8  Goldstein, Kennett and the Husch Blackwell firm were directly involved in
9  NHF's enterprise. The Berhmanns filed this action within one year of
10 learning this information.
11         As set forth in detail below, the Behrmanns have pled facts that are
12 more than sufficient to state their claims.  It should not be lost on this Court
13 that unlike a typical legal malpractice case, the fraudulent and illegal acts at
14 issue were purposefully cloaked in the attorney-client privilege in an effort
15 to conceal their discovery. Thus, the fact that it took the Berhmanns a
16 greater length of time to discover these acts should in no way affect their
17 ability to seek recovery for the same. *Baker v. Beech Aircraft Corp.* (1974)
18 39 Cal.App.3d 315, 324 [114 Cal.Rptr. 171]. To hold otherwise would
19 condone utilizing the attorney-client privilege to conceal fraud.
20         Finally, while Defendant's motion makes substantial efforts to color
21 Plaintiffs claims based on prior proceedings, the claims made regarding
22 these proceedings are, at best, misleading, and in most cases patently false.
23 Setting aside the fact that Defendant's request for judicial notice of their
24 "facts" is procedurally improper, Plaintiffs trust the transparent nature of
25 Defendants' efforts to avoid liability will not be lost on this Court. If, as
26 Defendants contend, there is truly no basis for liability, that will be born out
27 shortly in the discovery process. If, however, the facts in Plaintiffs'
28 Complaint are true, there is more than sufficient evidence to establish

1  Defendants' liability. Because Plaintiffs' ability to plead such facts is the
2  only relevant inquiry at this stage, Defendant's motion must be denied.

3  **II.   BACKGROUND FACTS**

4       The factual allegations regarding Plaintiffs' claims against Kennett
5  and her firm are largely set forth in paragraphs 78-95, 160-164, and 209-
6  214[1]. These paragraphs establish that Defendants Michael Goldstein,
7  Christie Kennett and their firm, Husch & Eppenberger (now Husch
8  Blackwell) began serving as NHF's general counsel and tax counsel in early
9  1997. The firm also undertook the legal representation of numerous
10 Philanthropic Development Officers ("PDOs") and Board of Regents, many
11 of whom were the financial planners soliciting investments on behalf of
12 NHF. The firm also undertook the representation of the Behrmann
13 Plaintiffs and many other Charitable Investors in NHF for the purpose of
14 advising them of the suitability of charitable investments in NHF. At no
15 point did Kennett or her firm ever advise the Behrmann Plaintiffs that they
16 were simultaneously representing Defendants, and specifically NHF, the
17 Houk Family, and the Behrmanns' broker and PDO, Joel Baker.

18      Defendants also never advised the Behrmann Plaintiffs and other
19 Charitable Investors that Defendants could use their invested funds for non-
20 charitable purposes that were not directed by the Plaintiffs. FAC ¶ 78. All
21 of this information was intentionally concealed by the Defendants in order
22 to defraud the Behrmann Plaintiffs and other charitable investors and further
23 the enterprise.

24      Michael Goldstein worked with NHF to promote the fraudulent
25 scheme of NHF and the Houk family. Goldstein travelled around the

26

27 [1] Plaintiffs acknowledge that the allegations at paragraphs 209-214 only explicitly refer to
28 Goldstein. The same allegations also apply to Kennett and the Husch Blackwell firm. To
the extent the failure of Plaintiffs to explicitly mention Kennett in these paragraphs could
form the basis for dismissal, Plaintiffs seek leave to amend the Complaint.

4

**PLAINTIFFS' OPPOSITION TO DEFENDANT KENNETT'S MOTION TO DISMISS**

country and conducted training seminars to other financial planners and attorneys to elicit investment by their clients. At the trainings, Defendants and their agents promised "substantial benefits for charitable organizations" and "creditor protection for family wealth." Conferences began as early as June 24, 1997, and continued up to the time NHF filed for bankruptcy. FAC ¶ 79.

On or about June 15, 1998, Defendants reported at an internal board meeting that they continued to be under investigation by the IRS. This information was relayed to Goldstein and Kennett, and on September 9, 1998, the firm confirmed via mail and/or wire that NHF would be the subject of an IRS audit. This information was never disclosed to Plaintiffs or other Charitable Investors. FAC ¶¶ 88-90.  Through 1998 and 1999, it is believed and alleged that the Houk Defendants informed Goldstein and his firm of the on-going investigation by the IRS, and Goldstein in fact provided legal advice to the Houks, NHF, and/or other Defendants about the IRS investigation, but never notified or revealed the existence of any potential conflict of interest or concurrent representation to the Plaintiffs. FAC ¶¶ 91-92.

On or about July 6, 1999, Defendants wrote to their PDOs and attorneys, including Defendants Goldstein and Kennett, via mail and facsimile and encouraged them to have all Charitable Investors, including the Behrmann Plaintiffs, transfer 100% ownership of all charitable split dollar policies to their charitable foundation. This was done in furtherance of the Enterprise so that Defendants could later use the bankruptcy courts to convert ultimate ownership of these funds to Defendants. FAC ¶ 93. Defendants intended to convert the ownership of the funds to avoid seizure by the IRS subsequent to its revocation of NHF's 501(c) status. FAC ¶ 95.

**PLAINTIFFS' OPPOSITION TO DEFENDANT KENNETT'S MOTION TO DISMISS**

Thereafter, on August 2, 1999, Defendants Goldstein, Kennett, and Husch and Eppenberger advised the Behrmann Plaintiffs to transfer additional money to NHF.  The firm continued to conceal that it was simultaneously representing NHF and the Behrmanns' PDO, Joel Baker, both of whom would benefit substantially through the Enterprise if the Behrmanns followed Goldstein's, Kennett's or Husch and Eppenberger's advice.  FAC ¶ 94.

Defendants expressly and impliedly undertook to provide competent and loyal professional legal services to the Behrmann Plaintiffs. They prepared Trust documents for Plaintiffs and also prepared a legal opinion regarding the NHF charitable funds and the marketed Financial Independence Plan. As an attorney working for Plaintiffs, the Behrmanns expected Kennett to offer unbiased independent legal evaluations.  These services were to include appropriate, timely, and comprehensive advice and counsel in respect of developing, evaluating, implementing and monitoring an efficient and effective charitable giving strategy through NHF that would fulfill Plaintiffs' manifest charitable giving goals.  FAC ¶ 209.  Defendants were grossly negligent in the performance of these services and duties for the Plaintiffs, and the performance by Defendants was materially below the standard expected of other similarly situated attorneys engaged in providing such services to clients across the country. FAC ¶¶ 210-213.

Had Defendant Kennett properly disclosed the potential conflict of interests, the multiple representations, and the kickbacks received from NHF as well as the fact that a portion of the Behrmanns' legal fees were being used to fund a "defense fund" for NHF, Plaintiffs would never have invested in NHF, and would not have sustained any of their damages. FAC ¶ 212.

A.    **Clarification on the Bankruptcy Claims Against NHF**

Aside from the facts underlying this motion, Defendants have attempted to misstate certain facts regarding the Bankruptcy Court proceedings that bear clarification. The claim of "fraud" made by the Behrmanns in the NHF bankruptcy proceedings had nothing to do with the Behrmanns' subsequent appeal of the initial confirmation order. Rather, in the bankruptcy the Behrmanns alleged that they made contributions to Highbourne Foundation (their charitable investment fund) based upon fraudulent representations and omissions prior to the commencement of the NHF bankruptcy case. The Behrmanns alleged that this fraud entitled them to a "claim" in the Chapter 11 proceedings because they had an equitable right of rescission. Accordingly, the Behrmanns filed a claim in the NHF bankruptcy case seeking to recover against NHF. NHF's counsel objected to that claim which triggered a "contested matter" in the NHF bankruptcy. NHF's bankruptcy counsel filed a motion to dismiss with supporting papers, so it was treated as a summary judgment motion under FRCP 56. The motion was DENIED by the Bankuptcy Judge who observed that if the facts alleged by the Behrmanns were proven at trial they would have a valid claim against NHF. The statement that the Bankruptcy Court rejected the Behrmanns' fraud claim is flatly false.

B.    **Clarification on the Behrmanns' Bankruptcy Appeal**

Wholly separate and independent of the foregoing, the NHF reorganization plan contained provisions (Sections 7.19, 7.20 and 7.21) that purported to afford releases to certain non-debtor third parties (principally NHF's directors and officers) as part of the plan. The Behrmanns objected to the plan on the basis that these provisions were not permissible under applicable Chapter 11 decisional law (because they wished to preserve their right to pursue claims against the Houk family.) The Behrmanns' objections

1   to these plan provisions were overruled by the Bankruptcy Court and on

2   appeal to the federal District Court.  The Fourth Circuit reversed and ruled

3   that the plan provisions could not be sustained on the findings entered by

4   the Bankruptcy Judge.  On remand and reexamination of the evidentiary

5   record, the Bankruptcy Judge excised the provision providing for the release

6   of non-debtors (the Houk family) for pre-petition misconduct.

7   **III.    DISCUSSION**

8       **A. Plaintiffs' Claims for Relief Should Not Be Dismissed**

9           Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6)

10  "are viewed with disfavor" and are granted without leave to amend only in

11  "extraordinary" cases. *Broam v. Bogan* (9th Cir. 2003) 320 F.3d 1023,

12  1028(citations omitted).  When ruling on such a motion, the court is to

13  "accept as true all of the factual allegations set out in plaintiff's complaint,

14  draw inferences from those allegations in the light most favorable to

15  plaintiff, and construe the complaint liberally." *Rescuecom Corp. v. Google*

16  *Inc.* (2d Cir. 2009) 562 F.3d 123, 127.

17          The court should also generally disregard extraneous evidence that

18  does not appear on the face of the complaint. *Arpin v. Santa Clara Valley*

19  *Transp. Agency* (9th Cir. 2001) 261 F.3d 912, 925. Defendant's motion

20  relies on various alleged facts and documents from outside the bounds of

21  Plaintiffs' Complaint, but such matters are not properly subject to judicial

22  notice for the reasons discussed in Plaintiffs' separately-filed objections to

23  their request for judicial notice. In doing so, Defendants have misstated, and

24  in some cases directly misled the court regarding what has transpired in the

25  underlying bankruptcy case and Plaintiffs' prior trial against their broker.

26          While Plaintiffs' opposition corrects the record, Defendants' attempt

27  to rely on ill-framed evidence outside of the operative Complaint converts

28

**PLAINTIFFS' OPPOSITION TO DEFENDANT KENNETT'S MOTION TO DISMISS**

1   this from a Rule 12 motion to a Rule 56 motion[2].  "In such cases, the Rule

2   56 summary judgment standard applies, and the moving party must establish

3   that there are no material facts in dispute and that he or she is entitled to

4   prevail as a matter of law." *Los Angeles News Service v. Conus*

5   *Communications Co. Ltd. Partnership* (C.D. Cal. 1997) 969 F.Supp. 579,

6   582 (question of jurisdiction and merits of action are intertwined where

7   Copyright Act provides basis for both subject matter jurisdiction of federal

8   court and plaintiff's substantive claim for relief). Here, Defendants cannot

9   possibly meet their burden, as there are numerous disputed facts which if

10  construed in Plaintiffs' favor would entitled them to judgment.

### B.      Plaintiffs Have Adequately Pled A Claim For Professional Negligence

13          The elements of a cause of action for professional negligence are "(1)

14  the duty of the professional to use such skill, prudence, and diligence as

15  other members of his profession commonly possess and exercise; (2) a

16  breach of that duty; (3) a proximate causal connection between the negligent

17  conduct and the resulting injury; and (4) actual loss or damage resulting

18  from the professional's negligence." *Budd*, supra, 6 Cal.3d 195, 200;

19  *Carlton v. Quint* (2000) 77 Cal.App.4th 690, 699. "'In addressing breach of

20  duty, "the crucial inquiry is whether [the attorney's] advice was so legally

21  deficient when it was given that he may be found to have failed to use 'such

22  skill, prudence, and diligence as lawyers of ordinary skill and capacity

23  commonly possess and exercise in the performance of the tasks which they

24  undertake." *Blanks v. Shaw* (2009) 171 Cal.App.4th 336, 357.

25          The issue of negligence in a legal malpractice case is ordinarily an

26  issue of fact. *Blanks*, supra, 171 Cal.App.4th 336, 376.  "It is well settled

---

[2] Kennett incorporates by reference the Request for Judicial Notice filed by Defendants Goldstein and Husch Blackwell. To the extent the Court considers the Request, Plaintiffs hereby incorporate their Objection to Request for Judicial Notice (Docket No. 42.)

**PLAINTIFFS' OPPOSITION TO DEFENDANT KENNETT'S MOTION TO DISMISS**

that an attorney is liable for malpractice when his negligent investigation, advice, or conduct of the client's affairs results in loss of the client's meritorious claim." *Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 900. "The standard is that of members of the profession 'in the same or a similar locality under similar circumstances'. . . . The duty encompasses both a knowledge of law and an obligation of diligent research and informed judgment." *Wright v. Williams* (1975) 47 Cal.App.3d 802, 802.

There can be no question that an attorney has a duty to disclose potential conflicts of interest.  Representing multiple parties involved in a transaction constitutes a conflict of interest.  Defendants expressly and impliedly undertook to provide competent and loyal professional legal services to the Behrmann Plaintiffs. They prepared Trust documents for Plaintiffs and also prepared a legal opinion regarding the NHF charitable funds and the marketed Financial Independence Plan. As an attorney working for Plaintiffs, the Behrmanns expected Defendant Kennett to offer unbiased independent legal evaluations.  These services were to include appropriate, timely and comprehensive advice and counsel in respect of developing, evaluating, implementing and monitoring an efficient and effective charitable giving strategy through NHF that would fulfill Plaintiffs' manifest charitable giving goals.  FAC ¶ 209.  Defendants were grossly negligent in the performance of these services and duties for the Plaintiffs, and the performance by Defendants was materially below the standard expected of other similarly situated attorneys engaged in providing such services to clients across the country. FAC ¶¶ 210-213.

Had Defendant Kennett properly disclosed the potential conflict of interests, the multiple representations, and the kickbacks received from NHF, as well as the fact that a portion of the Behrmanns' legal fees were being used to fund a "defense fund" for NHF, Plaintiffs would never have

1    invested in NHF, and would not have sustained any of their damages. FAC ¶

2    212.

3        Here, as set forth in the FAC, Plaintiffs did not sustain compensable

4    damages until June 30, 2009, when NHF absconded with $650,000. FAC ¶

5    169.  Kennett's motion does not separately address a statute of limitations

6    claim and incorporates the arguments set forth in the Goldstein/Husch

7    Blackwell motion to dismiss.  Plaintiffs similarly incorporate the arguments

8    in opposition to the Goldstein/Husch Blackwell motion.  However, it should

9    be noted that Plaintiffs were never put on notice of any potential malpractice

10    until they took the deposition of Goldstein in January 2012.  Furthermore,

11    there is nothing in the Complaint or the wealth of documents in Defendants'

12    request for judicial notice that Plaintiffs suffered "actual damage" at any

13    earlier date. Accordingly, the earliest date the statute of limitations could

14    have started to accrue was on June 30, 2009. Plaintiffs' FAC was filed on

15    November 29, 2012, well within Code Civ. Proc., § 340.6's four year

16    statute.

17        And while Defendants argue Code Civ. Proc., § 340.6's more

18    restrictive one-year should apply, here again there is no admissible evidence

19    Plaintiffs knew at any time prior to January 2012, that Goldstein and

20    Kennett were simultaneously representing NHF and Baker, and that they

21    obtained monetary kick-backs for this joint representation. Thus, under

22    either interpretation of the California statute, Plaintiffs' claims for legal

23    malpractice are timely.

24        Contrary to the arguments made in her Motion to Dismiss, Plaintiffs

25    do not allege the malpractice or wrongful conduct engaged in by Kennett

26    was a failure to know the IRS rules would change.  Rather, it was the

27    undisclosed conflicts of interest and multiple representations that violated

28    the professional obligation owed to the Behrmanns which constitutes

PLAINTIFFS' OPPOSITION TO DEFENDANT KENNETT'S MOTION TO DISMISS

1  professional negligence.   Furthermore, the allegations supporting the RICO
2  claim, and the fact that Plaintiffs' attorneys were involved with an enterprise
3  and scheme to defraud them supports the claim for professional negligence.

4            **1.**    **Plaintiffs Have Pled A Direct Causal Link Between**
5                   **The Losses They Sustained And The Defendants'**
6                   **Wrongful Conduct**

7       Further, Plaintiffs have pled a direct causal link between Defendants'
8  activities and the injury Plaintiffs' sustained. Specifically, Plaintiffs'
9  pleading establishes that as a result of Defendants' conduct, Plaintiffs were
10  deprived of $650,000 and forced to incur significant attorney's fees above
11  this amount in the bankruptcy proceeding. FAC ¶ 169, 209-214.
12  Furthermore, the Behrmanns would not have continued to place their on-
13  going trust and reliance on the Defendants, or NHF and its Directors, had
14  the conflict of interest and multiple representations been disclosed.

15       To avoid these facts Defendants make two arguments. First,
16  Defendants suggest that rulings by the Bankruptcy Court collaterally
17  estopped Plaintiffs from pursuing this action. The Moving Defendants,
18  however, were not a party to the bankruptcy action. Thus, no rulings of the
19  Bankruptcy Court would have preclusive effect from Plaintiffs litigating
20  their claims against these Defendants. *Martin v. Wilks* (1989) 490 U.S. 755
21  [109 S.Ct. 2180, 104 L.Ed.2d 835](A Non-Party does not enjoy the
22  preclusive effects of an earlier proceeding); See also, *Kourtis v. Cameron*
23  (9th Cir. 2005) 419 F.3d 989, 996, (allowing claims to be litigated by non-
24  party to prior proceeding). Moreover, the right to recover as a creditor in
25  bankruptcy is separate and distinct from the right to recover for injury
26  sustained as a result of RICO fraud, or from an attorney for the legal
27  malpractice. Where the same rights were not adjudicated in the prior

28

1   proceeding, there is no privity, and thus, no preclusive effect. *Id.* at p. 989;

2   See also *In re Schimmels* (9th Cir. 1997) 127 F.3d 875, 881.

3       Despite this, Defendants continue to argue that the Bankruptcy

4   Court's order confirming NHF's Plan for Reorganization was a final

5   judgment further precluding Plaintiffs from a "collateral attack" on that

6   judgment. That order, however, was timely appealed by the Behrmanns -

7   first to the District Court and then to the Fourth Circuit Court of Appeals.

8   On December 9, 2011, the Fourth Circuit Court of Appeals vacated the Plan

9   and remanded the matter back to the bankruptcy court for further

10  consideration. Specifically, the court stated:

11      "Because the present record does not allow us to assess—under any

12      standard of review—whether NHF's circumstances entitle it to the

13      benefit of the Release Provisions, we must *vacate* the district court's

14      judgment and remand the case to allow the bankruptcy court—if the

15      record permits it—to set forth specific factual findings supporting its

16      conclusions. (*Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 713

17      (4th Cir. 2011).)

18      On August 27, 2012, and October 22, 2012, the court made additional

19  rulings which modified the Plan.  NHF and the Houks are now appealing

20  these rulings. Thus, as of this date, there is no confirmed Plan or final

21  judgment resulting from that Plan. Accordingly, contrary to Defendants'

22  suggestions the six (6) month window to challenge to fraud underlying the

23  Plan has yet to run. 11 U.S.C. § 1144.

24      As a second argument, Defendants claim there are insufficient facts to

25  establish a causal link between their conduct and Plaintiffs' losses. Here, the

26  investment of Plaintiffs' money by Defendants into a fund to defend NHF

27  from IRS scrutiny delayed the IRS from taking action against NHF, which,

28  in turn, allowed NHF to continue the enterprise and obtain more money

1   from Plaintiffs. It further permitted NHF to then file for bankruptcy and –

2   through fraud – convert Plaintiffs' charitable contributions to NHF.

3       The facts as pled state that had these Defendants met their ethical and

4   legal obligations to disclose potential conflicts of interest (i.e. their

5   simultaneous representation of Plaintiffs, NHF and Plaintiffs' broker),

6   Plaintiffs never would have placed their money at NHF. Had Plaintiffs

7   placed their money elsewhere, they would not have suffered the harm that is

8   the basis of this suit.

9       Further, at no time during the representation of Plaintiffs did

10   Defendants ever disclose that NHF was under investigation by the IRS, or

11   that a portion of the attorneys' fees Plaintiffs paid to Defendants were being

12   used to defend NHF from the IRS's inquiry. Had either of these facts been

13   disclosed, Plaintiffs again could have transferred their funds from NHF to

14   another entity prior to the bankruptcy. This also would have prevented the

15   losses that are at issue. Accordingly, there is a direct causal link between the

16   Defendants' conduct and Plaintiffs' injury. These Defendants were not

17   simply practicing law or providing legitimate legal advice.

18       Here, Plaintiffs have specifically pled the date and the activity of

19   wrongful acts taken by Kennett and her firm. For example, Plaintiffs claim

20   that "On or about February 14, 1998, Defendants reported at an internal

21   board meeting that they continued to be under investigation by the IRS.

22   Shortly after the meeting, Defendants contacted Michael Goldstein and

23   Christie Kennett via mail and/or wire at the Husch & Eppenberger firm

24   (now Husch Blackwell) and relayed the information regarding the IRS'

25   investigation. This information was never disclosed to Plaintiffs or other

26   charitable investors. This is in spite of the fact that, at the time, Goldstein,

27   Kennett, and Husch & Eppenberger were actively representing the

28   Behrmann Plaintiffs." FAC ¶ 87, see also FAC ¶ 78, 87, 90-95.

Defendants' efforts to label such facts as "vague" or not meeting Rule 9(b)'s pleading standard does not make their allegations true. A basic reading of Plaintiffs' Complaint adequately demonstrates that these facts are pled with more than sufficient particularity to meet Plaintiffs' burden and establish liability against these Defendants. See *First Capital Asset Management, Inc. v. Satinwood, Inc.* (2d Cir. 2004) 385 F.3d 159, 178(denying motion to dismiss RICO claims on similar grounds).

Although Kennett spends considerable time arguing Plaintiffs are not entitled to recovery for a "delayed settlement", this argument is nonsensical and irrelevant. There is nothing in the First Amended Complaint to suggest that Plaintiffs' claim is based on any type of delay in reaching a settlement with NHF.

## 2. Plaintiffs Did Not Have To Relinquish Control Over The Money In Their Foundation

The argument presented by Defendants is the very same argument proffered by NHF in the bankruptcy and underlies this action. FAC ¶ 139, 146-150. In sum, the argument is that Plaintiffs maintained donor advised funds at NHF with no right of control. Thus, the taking of over $170 million of these funds by Defendants did not damage Plaintiffs or other charitable investors. Plaintiffs, however, have pled facts showing that the funds they maintained were not donor advised funds. FAC ¶¶ 66(e); 122-125, 148-150. Rather, Plaintiffs were promised they would retain control of funds, the funds would only be used for charitable purposes, and only the charitable purposes directed by Plaintiffs. FAC ¶¶ 148-150. Up until the time of the bankruptcy, the Plaintiffs did, in fact, retain control of their funds, including the right to manage and grow their foundation's funds. FAC ¶¶ 148-149. Plaintiffs also had the right to direct which specific charities would receive

the funds. The Plaintiffs further paid NHF a fee to have their foundation housed under the NHF 501(c) umbrella. FAC ¶ 150.

The element of control is a key distinguishing feature of the funds at issue from donor advised funds.[3] While Defendants so desperately want this court to conclude that the funds at issue were donor advised funds, the facts as pled establish otherwise. FAC ¶¶ 66(e); 122- 125, 148-150.

Moreover, because of the control that was promised and initially provided, each of the charitable investors, including Plaintiffs, had an right of rescission to force Defendants to return money set aside for charitable giving if it was not used for the charitable purposes directed by the Plaintiffs. See e.g. *Millboro Lumber Co. v. Augusta Wood Products Corporation* (1924) 140 Va. 409 [125 S.E. 306, 310]; *Webb v. Webb* (Va. Ct. App. 1993) 16 Va.App. 486 [431 S.E.2d 55, 61-62]; *Motor City Bagels, L.L.C. v. American Bagel Co.* (D. Md. 1999) 50 F.Supp.2d 460, 482-83.  In the case of the Behrmanns, the right was, at a minimum, equitable. In the case of the Arizona Plaintiffs, the right was express and contractual. FAC ¶¶ 4, 147.

As Plaintiffs have clearly set forth in their Complaint, this right of rescission entitled them under the law to be deemed creditors in bankruptcy. FAC ¶¶ 4, 147-150. NHF and their agents knew of the rescissionary rights –

---

[3] While Defendants attempt to cite to a portion of NHF's application to suggest the Behrmanns gave up "ownership and custody" of certain donations, what is missing from the application language is the word "control." Indeed, the Behrmanns have pled and will be able to establish as the case goes forward that NHF had different application forms for different types of charitable investment funds. For donor advised funds, the applications specified that the charitable investor was relinquishing "ownership, custody, *and control.*" This language is notably absent from the Behrmanns' application, thereby supporting the fact that the Behrmanns and remaining Plaintiffs, who had similar applications, did not give up "control." Plaintiffs have previously pled this distinction in their Complaint. FAC ¶ 146-150.  Nevertheless, to the extent the court deems further facts regarding this should be pled to make this distinction, Plaintiffs are more than capable of doing so.

**PLAINTIFFS' OPPOSITION TO DEFENDANT KENNETT'S MOTION TO DISMISS**

as they had entered into the agreements providing the same - but never advised the Bankruptcy Court of the agreements, or Plaintiffs' creditor standing. FAC ¶¶ 4, 135-150. To the contrary, in furtherance of their enterprise NHF attempted to re-cast the nature of these funds in a blatant effort to avoid these Plaintiffs being deemed creditors. FAC ¶¶ 4, 135-150.

California law, however, is unambiguous. Where any donor has placed restrictive conditions on money or property set aside for charitable purposes, the donor has standing to initiate an action to recover the property taken for purposes other than that which the donor directed. *L.B. Research and Educ. Foundation v. UCLA Foundation* (2005) 130 Cal.App.4th 171, 181 [29 Cal.Rptr.3d 710, 717]("Although the public in general may benefit from any number of charitable purposes, charitable contributions must be used only for the purposes for which they were received in trust. [Citations.] Moreover, part of the problem of enforcement is to bring to light conduct detrimental to a charitable trust so that remedial action may be taken [by the donor]"). Because Plaintiffs have pled that they placed such conditions on their charitable investments - and Defendants accepted those conditions - Plaintiffs have standing under the law to initiate an action to seek redress for the use of the funds for non-charitable purposes. As a result, if Plaintiffs' allegations are accepted as true, they have adequately pled their claim and Defendants' attempt to challenge the same fails.

## C. Plaintiffs Adequately Stated A Claim For Negligent Misrepresentation

The elements of fraud, including negligent misrepresentation are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d

---

981.) The tort of negligent misrepresentation does not require scienter or intent to defraud.  (*Gagne v. Bertran* (1954) 43 Cal.2d 481, 487–488, 275 P.2d 15.)  It encompasses "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true" (Civ.Code, § 1710, subd. 2), and "[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true" (Civ.Code, § 1572, subd. 2; see *Fox v. Pollack* (1986) 181 Cal.App.3d 954, 962, 226 Cal.Rptr. 532 [describing elements of the tort] )." *Small v. Fritz Companies, Inc.,* 30 Cal. 4th 167, 173-74, 65 P.3d 1255, 1258 (2003).

Furthermore, the courts have established that Forbearance—the decision not to exercise a right or power—is sufficient sufficient to fulfill the element of reliance necessary to sustain a cause of action for fraud or negligent misrepresentation. (*Id.*) Section 525 of the Restatement Second of Torts states: "One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act *or to refrain from action* in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation." (Rest.2d Torts, § 525, italics added.) Section 531 states the "general rule" that "[o]ne who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act *or to refrain from action* in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced." (Rest.2d Torts, § 531, italics added.) And section 551, subdivision (1) states: "One who fails to disclose to another a fact that he knows may justifiably induce the other to act *or refrain from acting* in a business transaction is subject to the same

1  liability to the other as though he had represented the nonexistence of the

2  matter that he has failed to disclose...." (Rest.2d Torts, § 551, italics added.)

3  *Small v. Fritz Companies, Inc.,* Supra, 30 Cal. 4th at 174.

4       Here, the First Amended Complaint adequately establishes that due to

5  the statements (and concealments) of Kennett, Goldstein, and the Husch

6  Blackwell firm, Plaintiffs were induced to enter into the transaction with

7  NHF. Furthermore, the Complaint alleges that due to the representations and

8  failures of Defendants to reveal key information such as their knowledge

9  that NHF was being investigated by the IRS, the Behrmanns did not transfer

10  their foundation to another company.

11      **D.  Plaintiffs Have Pled Facts Sufficient To Allege A Civil**

12          **Conspiracy**

13       Conspiracy is a legal doctrine that imposes liability on persons who,

14  although not actually committing a tort themselves, share with the

15  immediate tortfeasors a common plan or design in its perpetration. (*Wyatt v.*

16  *Union Mortgage Co.* (1979) 24 Cal.3d 773, 784, 157 Cal.Rptr. 392, 598

17  P.2d 45.) By participation in a civil conspiracy, a co-conspirator effectively

18  adopts as his or her own the torts of other co-conspirators within the ambit

19  of the conspiracy. (*Ibid.*) In this way, a co-conspirator incurs tort liability

20  co-equal with the immediate tortfeasors. *Applied Equip. Corp. v. Litton*

21  *Saudi Arabia Ltd.,* 7 Cal. 4th 503, 510-11, 869 P.2d 454, 457 (1994)

22  "'The elements of an action for civil conspiracy are the formation and

23  operation of the conspiracy and damage resulting to plaintiff from an act or

24  acts done in furtherance of the common design.... In such an action the

25  major significance of the conspiracy lies in the fact that it renders each

26  participant in the wrongful act responsible as a joint tortfeasor for all

27  damages ensuing from the wrong, irrespective of whether or not he was a

28  direct actor and regardless of the degree of his activity.' " *Applied Equip.*

1  *Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 511, 869 P.2d 454, 457

2  (1994), citing (*Doctors' Co., supra,* 49 Cal.3d at p. 44, 260 Cal.Rptr. 183,

3  775 P.2d 508, citing *Mox Incorporated v. Woods* (1927) 202 Cal. 675, 677–

4  678, 262 P. 302.)

5       Plaintiffs need only plead facts sufficient to show that a conspirator

6  intend to further an endeavor which, if completed, would satisfy all of the

7  elements of a substantive criminal offense. *Id.* at p. 159 Under this standard,

8  the defendant need not complete the goal. *Id.* at p. 159 Rather, the claim is

9  sufficient if the RICO defendant simply adopted the goal of furthering or

10  facilitating the criminal endeavor. *Id.* at p. 159. citing *Baisch v. Gallina* (2d

11  Cir. 2003) 346 F.3d 366, 376-77(quoting *Salinas v. U.S.* (1997) 522 U.S.

12  52, 65 [118 S.Ct. 469, 139 L.Ed.2d 352]).

13       Here, Plaintiffs' Complaint makes clear that the moving Defendants

14  adopted NHF's goal of concealing critical information from Plaintiffs in an

15  effort to induce further monetary investment. All the while, Defendants

16  were working with NHF to stave off inquiries from IRS. To suggest, as

17  Defendants do, that they did not adopt the criminal endeavor defies logic. If,

18  as Defendants claim, they had not adopted this criminal endeavor and were

19  simply performing legal services, they should have had no issue meeting

20  their ethical obligation to disclose any potential conflicts of interest to

21  Plaintiffs – a point Defendants make no effort to explain or refute.

22       **E.  Plaintiffs Adequately Pled Claims Under the Consumer**

23  **Protection Statutes**

24       Although the Pennsylvania Supreme Court has held that attorney

25  malpractice claims are not subject to the UTPCPL, the claims against

26  Kennett and her firm go beyond mere "malpractice."  Instead, the claims

27  include fraud, and participation in an Enterprise under the RICO statute.

28  Not all attorney conduct has been excluded from coverage under the

1   UTPCPL.  For example, debt collection conduct of an attorney has been

2   determined to be subject to the UTPCPL.  See *Yelin v. Swartz*, 790 F. Supp.

3   2d 331, 337 (E.D. Pa. 2011).

4          Similarly, the fact that a person engaged in an enterprise and

5   conspiracy happens to be an attorney should not act to protect their conduct

6   from liability under the UTPCPL.  This is not a matter of mere malpractice,

7   but goes beyond that to include potentially criminal conduct under the

8   RICO statute, and the conduct alleged is subject to the state consumer

9   protection statutes.

10          It should be noted Kennett does not make this argument regarding the

11   Missouri Merchandising Practices Act, (Missouri Statute 407.010 et seq.),

12   "merchandise" includes services, and Kennett does not attempt to argue that

13   the statute does not apply to attorneys in that state.  Instead, Kennett argues

14   that Plaintiffs were not specific enough in their allegations. This argument

15   fails.

16          The Merchandising Practices Act (and in general respects, the

17   Pennsylvania Statute) make it unlawful:

18          The act, use or employment by any person of any deception, fraud,

19          false pretense, false promise, misrepresentation, unfair practice or the

20          concealment, suppression, or omission of any material fact in

21          connection with the sale or advertisement of any merchandise in trade

22          or commerce or the solicitation of any funds for any charitable

23          purpose, as defined in section 407.453, in or from the state of

24          Missouri, is declared to be an unlawful practice. The use by any

25          person, in connection with the sale or advertisement of any

26          merchandise in trade or commerce or the solicitation of any funds for

27          any charitable purpose, as defined in section 407.453, in or from the

28          state of Missouri of the fact that the attorney general has approved

---

21

**PLAINTIFFS' OPPOSITION TO DEFENDANT KENNETT'S MOTION TO DISMISS**

1   any filing required by this chapter as the approval, sanction or

2   endorsement of any activity, project or action of such person, is

3   declared to be an unlawful practice. Any act, use or employment

4   declared unlawful by this subsection violates this subsection whether

5   committed before, during or after the sale, advertisement or

6   solicitation. Mo. Ann. Stat. § 407.020 (West)

7        Defendants' efforts to label such the facts of the Complaint as

8   "vague" or not meeting Rule 9(b)'s pleading standard does not make their

9   allegations true. A basic reading of Plaintiffs' Complaint adequately

10  demonstrates that these facts are pled with more than sufficient particularity

11  to meet Plaintiffs' burden and establish liability against these Defendants.

12  See *First Capital Asset Management, Inc. v. Satinwood, Inc.* (2d Cir. 2004)

13  385 F.3d 159, 178(denying motion to dismiss RICO claims on similar

14  grounds).

15       The First Amended Complaint alleges that Defendant was an attorney

16  in Missouri while the Plaintiffs were residents of Pennsylvania, and that

17  fraud and concealment was used to induce their involvement with NHF.

18  Furthermore, the facts as pled state that had these Defendants disclosed their

19  potential conflicts of interest, their simultaneous representation of Plaintiffs,

20  NHF, and Plaintiffs' broker, Plaintiffs never would have placed their money

21  at NHF.  Had Plaintiffs placed their money elsewhere, they would not have

22  suffered the harm that is the basis of this suit.  Similarly, had facts regarding

23  the IRS' investigation into NHF, or that a portion of the attorneys' fees

24  Plaintiffs' paid to Defendants were being used to defend NHF from the

25  IRS's inquiry been disclosed, Plaintiffs again could have transferred their

26  funds from NHF to another entity prior to the bankruptcy. This also would

27  have prevented the losses that are at issue. Accordingly, there is a direct

28  causal link between the Defendants' conduct and Plaintiffs' injury.

1    Here, Plaintiffs have specifically pled the date and the activity of

2  wrongful acts taken by Kennett and her firm. For example, Plaintiffs claim

3  that "On or about February 14, 1998, Defendants reported at an internal

4  board meeting that they continued to be under investigation by the IRS.

5  Shortly after the meeting, Defendants contacted Michael Goldstein and

6  Christie Kennett via mail and/or wire at the Husch & Eppenberger firm

7  (now Husch Blackwell) and relayed the information regarding the IRS'

8  investigation. This information was never disclosed to Plaintiffs or other

9  charitable investors. This is in spite of the fact that, at the time, Goldstein,

10  Kennett, and Husch & Eppenberger were actively representing the

11  Behrmann Plaintiffs." FAC ¶ 87, see also FAC ¶ 78, 87, 90-95.

12  Accordingly, Plaintiffs have adequately pled their claims against Kennett.

13  **IV.    CONCLUSION**

14    For the reasons set forth above, Plaintiffs respectfully request

15  Defendants Rule 12 Motion be denied in its entirety. To the extent the court

16  deems otherwise, Plaintiffs request leave to amend to clarify their

17  allegations against Defendant, and add additional allegations regarding the

18  legal defense fund and the profits derived therefrom that will only

19  strengthen Plaintiffs' claims.

20    Alternatively, if this Court decides to convert Defendants' 12(b)(6)

21  motion to a Rule 56 motion for summary judgment, Plaintiffs respectfully

22  request this Court allow time for discovery, pursuant to Rule 56(f), before

23  ruling on such a motion. *Lee v. City of Los Angeles* (9th Cir. 2001) 250 F.3d

24  668, 688.

25  DATED: December 14, 2012          NYE, PEABODY, STIRLING, HALE & MILLER LLP

26

27    By: _____

28    Jonathan D. Miller
      Attorney for Plaintiffs

---

23
**PLAINTIFFS' OPPOSITION TO DEFENDANT KENNETT'S MOTION TO DISMISS**

## PROOF OF SERVICE

RE: *John and Nancy Behrmann, et al. v. John T. Houk III, et al.* CASE # CV12-5636 DMG (CWx)

I am employed in the County of Santa Barbara, State of California. I am over the age of eighteen years and not a party to this action. My business address is 33 West Mission, Suite 201, Santa Barbara, California 93101.

On the date stated below, I served the following documents: **PLAINTIFFS' OPPOSITION TO DEFENDANT KENNETT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** on the interested parties in this action:

James P. Fogelman
Shannon E. Mader
Michael Menssen
Karen Moody
GIBSON, DUNN AND CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197

Jon Wilson
M. John Carson
A. Joel Richlin
FOLEY AND LARDNER LLP
555 S. Flower St, Suite 3500
Los Angeles, CA 90071

Edith R. Matthai
Gabrielle M. Jackson
David J. Weinman
Christy Gargalis
ROBIE & MATTHAI
500 S. Grand Ave, Ste 1500
Los Angeles, CA 90071

[]   [By Personal Service] I caused such envelope(s) to be delivered by hand to the office(s) of the addressee(s) on December 14, 2012.

[X]   [By Electronic Service] I caused such document(s) to be sent electronically on December 14, 2012 in accordance with the Court's electronic filing ("ECF") rules, pursuant to which registered ECF users receive service copies by e-mail delivery. A courtesy copy will follow as stated above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: December 14, 2012

Jenna Gould