1  **NYE, PEABODY, STIRLING, HALE & MILLER, LLP**
   Jonathan D. Miller (SBN. 220848)
2  Holly Blackwell (SBN. 224941)
   33 West Mission St., Suite 201
3  Santa Barbara, California 93101
   Telephone: (805) 963-2345
4  Facsimile: (805) 563-5385
   Email:    david@nps-law.com
5  jonathan@nps-law.com

6  **SCHENDZIELOS & ASSOCIATES, LLC**
   Daniel J. Schendzielos (CO. SBN 22542)
7  8547 E. Arapahoe Rd., Suite J534
   Greenwood Village, CO 80112
8  Tel:      (303) 773-6600
   Fax:      (303) 957-2382
9

10 **TERRY L. BAKER, ATTORNEY AT LAW**
   Terry L. Baker (SBN 214365)
11 820 Bay Avenue, Suite 230L
   Capitola, CA 95010
12 Tel:      (831) 476-7900
   Fax:      (831) 476-7906
13

14 Attorneys for Plaintiffs

15       **UNITED STATES DISTRICT COURT**
       **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

16 | | |
|---|---|
| JOHN R. BEHRMANN, and NANCY P. BEHRMANN, as individuals and assignees of DR. ROBERT GRIEGO, DR. CAROLE GRIEGO, TERRY P. GILLETT, BRENDA A. GILLETT, WILLIAM P. O'CONNELL, and JINAN O'CONNELL | Case No.  CV12-5636 DMG (CWx) |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANT PATTON BOGGS' MOTION TO DISMISS** |
| Plaintiffs, | |
| vs. | **Hearing: January 11, 2013** **Time: 9:30 a.m.** **Dept: 7** |
| JOHN T. HOUK, II, an individual, MIRIAM M. HOUK, an individual, JOHN T. HOUK III, an individual, JANET H. RIDGELY, an individual, JULIE L. HOUK, an individual, NATIONAL HERITAGE FOUNDATION, a non-profit organization, ROBERT BEN KORI & | Complaint Filed:    June 28, 2012 Trial Date:          None Judge:               Hon. Dolly Gee |

17
18
19
20
21
22
23
24
25
26
27

28 | PLAINTIFFS' OPPOSITION TO DEFENDANT PATTON BOGGS' MOTION TO DISMISS |

ASSOCIATES, corporate form unknown, CONGRESSIONAL DISTRICT PROGRAM, INC., a corporation; CHARITY ADMIN, INC., a corporation; UNITED CHARITABLE PROGRAMS, a non-profit organization; NATIONAL PHILANTHROPIC INSTITUTE, a corporation; INTERNATIONAL PHILANTHROPIC INSTITUTE, a corporation; STELLAR FINANCIAL, INC., a corporation; STELLAR TECHNOLOGY SOLUTIONS, LLC, a limited liability company; STELLAR ADVISORS, INC., a corporation; IAN SCOTT-DUNNE, an individual; STELLAR McKIM, LLC, a limited liability company;  McKIM CAPITAL, a corporation; JAMES CAHILL, an individual; MICHAEL GOLDSTEIN, an individual, CHRISTIE KENNETT, an individual, HUSCH BLACKWELL LLP, a Missouri Limited Liability Partnership, PATTON BOGGS, LLP, a limited liability partnership, FOLEY & LARDNER, LLP, a limited liability partnership; and DOES 1-10, inclusive.

Defendants.

PLAINTIFFS' OPPOSITION TO DEFENDANT PATTON BOGGS' MOTION TO DISMISS

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ....................................... 1

**I.   INTRODUCTION** ......................................................................... 1

**II.  BACKGROUND FACTS** ............................................................... 3

    A.   Clarification on the Bankruptcy Claims Against NHF .......................... 5

    B.   Clarification on the Behrmanns' Bankruptcy Appeal ........................... 5

**III. DISCUSSION** ............................................................................... 6

    A.   Plaintiffs' Claims for Relief Should Not Be Dismissed ........................ 6

    B.   The RICO Claim Is Not Barred By Collateral Estoppel ........................ 7

    C.   The Order Authorizing Payment Of Patton Boggs' Fees Does Not
        Bar The Plaintiffs' Claims ........................................................ 10

    D.   The Noerr-Pennington Doctrine Does Not Provide Immunity To
        Defendant ............................................................................ 12

    E.   Although Plaintiffs' Complaint Mentions The Rico Claim Is Based
        On 18 USC 157, The Claims Against Patton Boggs Are Also
        Authorized By 18 USC 152 ........................................................ 16

    F.   Plaintiffs RICO Claim is Pled With Sufficient Particularity .................. 18

        1.   Plaintiffs Have Pled A Pattern Of Racketeering Activity Sufficient
            To Maintain Their RICO Claim ............................................... 19

        2.   Plaintiffs Have Pled Facts Establishing Defendants' "Operation"
            And "Management" of the Enterprise Sufficient To Maintain Their
            RICO Claim ..................................................................... 20

**IV. CONCLUSION** ............................................................................ 21

1

## **TABLE OF AUTHORITIES**

2

3 **CASES**

4 *Allied Tube & Conduit Corp v. Indian Head, Inc.,*

5     (1988) 486 U.S. 492, 108 S.Ct. 1931 ........................................................ 12

6 *Arpin v. Santa Clara Valley Transp. Agency,*

7     (9th Cir. 2001) 261 F.3d 912 ................................................................... 6

8 *Baker v. Beech Aircraft Corp.,*

9     (1974) 39 Cal.App.3d 315 [114 Cal.Rptr. 171].......................................... 3

10 *Behrmann v. Nat'l Heritage Found.,*

11     663 F.3d 704 (4th Cir. 2011) .................................................................. 9

12 *Bizzell v. Hemingway,*

13     (4th Cir. 1977) 548 F.2d 505 .................................................................. 9

14 *Broam v. Bogan,*

15     (9th Cir. 2003) 320 F.3d 1023 ................................................................. 6

16 *Canyon County v. Syngenta Seeds, Inc.,*

17     (9th Cir. 2008) 519 F.3d 969 .................................................................. 18

18 *City of Columbia v. Omni Outdoor Adver., Inc.,*

19     (U.S.S.C. 1991) 499 U.S. 365, 111 S. Ct. 1344 , 113 L. Ed. 2d 382 ....... 12

20 *Collins v. Pond Creek Mining Co.,*

21     (4th Cir. 2006) 468 F.3d 213 .................................................................. 7

22 *Defendant cites this Court to the holding in Baumer v. Pachal,,*

23     8 F.3d 1341 ....................................................................................... 20

24 *First Capital Asset Management, Inc. v. Satinwood, Inc.,*

25     (2d Cir. 2004) 385 F.3d 159 ................................................................... 19

26

27

28

*Freeman v. Lasky, Haas & Cohler,*
   (9th Cir. 2005) 410 F3d 1180 ................................................................ 14

*Grimmett v. Brown,*
   75 F.3d 506 (9th Cir. 1996) ............................................................. 1, 10

*Handeen v. Lemaire,*
   112 F.3d 1339 (8th Cir. 1997) .............................................................. 1

*Harper v. New Japan Securities Intern., Inc.,*
   (C.D. Cal. 1982) 545 F.Supp. 1002 ..................................................... 19

*Health Plan, Inc.,*
   supra, 552 F.3d ................................................................................ 13

*In re Michelson,*
   (Bankr. E.D. Cal. 1992) 141 B.R. 715 ................................................. 9

*In re Schimmels,*
   (9th Cir. 1997) 127 F.3d 875 ............................................................... 8

*In re Stemple,*
   (E.D. Virginia 2007) 361 BR 778 ....................................................... 10

*Kearney v. Foley & Lardner, LLP,*
   (9th Cir. 2009) 590 F3d 638 ............................................................... 14

*Kottle v. Northwest Kidney Ctrs.,*
   (9th Cir. 1998) 146 F3d 1056 ............................................................. 13

*Kourtis v. Cameron,*
   (9th Cir. 2005) 419 F3d 989 ................................................................ 8

*Lee v. City of Los Angeles,*
   (9th Cir. 2001) 250 F3d 668 ............................................................... 21

*Los Angeles News Service v. Conus Communications Co. Ltd. Partnership,*
   (C.D. Cal. 1997) 969 F.Supp. 579 ....................................................... 7

iii

*Martin v. Wilks,*

    (1989) 490 U.S. 755 [109 S.Ct. 2180, 104 L.Ed.2d 835]............................ 8

*Mine Workers v. Pennington,*

    381 U.S. 657, 85 S.Ct. 1585 , 14 L.Ed.2d 626 (1965) .............................. 12

*Noerr,*

    supra, 365 U.S., 81 S.Ct.......................................................................... 12

*Rescuecom Corp. v. Google Inc.,*

    (2d Cir. 2009) 562 F.3d 123 .................................................................... 6

*San Francisco Bay Area Rapid Transit Dist. v. Spencer (N.D. Cal., Sept. 6,*

    *2005, C 04-04632 SI),*

    2005 WL 2171906(............................................................................... 20

*Sosa v. DIRECTV, Inc.,*

    (9th Cir. 2006) 437 F.3d 923 .................................................................. 13

**Regulations**

11 U.S.C. § 1144.......................................................................................... 9

11 U.S.C. § 786............................................................................................ 9

18 U.S.C. § 1964(c) .................................................................................... 18

18 U.S.C. sections 152(2), (3), (5), (6), or (7)............................................ 17

18 USC 152............................................................................................ 16, 18

18 USC 157............................................................................................ 16, 17

18 USC 1961.............................................................................................. 16

18 USC section 1961(D) ............................................................................ 16

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

"An attorney's license is not an invitation to engage in racketeering" See e.g. *Handeen v. Lemaire*, 112 F.3d 1339, 1349 (8th Cir. 1997). Defendant law firm, Patton Boggs, seeks to dispose of Plaintiffs' claims primarily on the basis that their actions were protected because it was undertaken in the course of representing their client.  Illegal acts, however, can never serve as the basis to avoid liability. At its core, RICO is a criminal statue, and allows suit against law firms and attorneys for promulgating bankruptcy fraud. See e.g. *Handeen v. Lemaire*, 112 F.3d 1339, 1349 (8th Cir. 1997); See also *Grimmett v. Brown*, 75 F.3d 506, 509 (9th Cir. 1996).

Despite the number of parties and voluminous allegations set forth in the Complaint, Plaintiffs' case against Patton Boggs ("Defendant" or "Moving Defendant") is a simple one. After years in which NHF and the Houk family engaged in a fraudulent scheme to find investors such as the Plaintiffs herein to establish charitable giving plans, in 2009, the final piece of the enterprise fell into place when, with the assistance and encouragement of Patton Boggs, NHF filed for bankruptcy.  This was not a typical bankruptcy filing by any means.  Unlike in most bankruptcy cases, where creditors receive pennies on the dollar to settle the debt owed, the majority of NHF's creditors received full (100%) compensation for their claims.  Only one small class of officially designated creditors (the annuity holders) were impacted at all by the bankruptcy filing, and their claims were reduced by a mere two percent.  Thus, the only category of creditors whose claims were reduced by the bankruptcy filing still received 98% payment of their claims. FAC 143.  At the same time, NHF was able to convert over $170 million in charitable investment funds, including over $1.2 Million of

1   the Behrmanns' and other Plaintiffs' funds, to their own for-profit use. FAC
2   144.

3         Specifically, at the time it filed bankruptcy NHF and Patton Boggs
4   knew the IRS was close to revoking its 501(c) status. This decision would
5   have required NHF to return charitable funds to charitable investors,
6   including the Plaintiffs. Because NHF had been using these charitable funds
7   as leverage in for-profit investments, it knew it would not be able to return
8   all the funds, and that its fraudulent scheme would be revealed and
9   unraveled. In sum, the entire filing of the bankruptcy and the representations
10  made therein was done in a conscious effort to delay the IRS from revoking
11  NHF's 501(c) status until it could take control of the charitable investors'
12  money and move it to new companies through the Bankruptcy Court to
13  avoid further IRS inquiry.  As set forth in the First Amended Complaint,
14  Patton Boggs and NHF proceeded to make knowing misrepresentations and
15  concealed facts regarding the Plaintiffs' discretionary use and right to
16  control or rescind their contracts.  These knowing and intentional
17  misrepresentations were made to the bankruptcy court, the other creditors,
18  and to plaintiffs in an attempt to convert the charitable funds to NHF's
19  discretionary use.

20        On June 30, 2009, NHF, through the bankruptcy proceeding,
21  converted $650,000 of the Behrmanns' money that they had set aside to
22  perform charitable giving to their own private for-profit use.  FAC ¶ 169.
23  Thereafter, the Behrmanns began their attempts to recover their money. As
24  set forth in detail below, the Behrmanns have pled to facts that are more
25  than sufficient to state their claims.  It should not be lost on this Court that
26  the fraudulent and illegal acts at issue were purposefully cloaked in the
27  attorney-client privilege in an effort to conceal their discovery. Thus, the

28

1  fact that it took the Berhmanns a greater length of time to discover these

2  acts should in no way affect their ability to seek recovery for the same.

3  *Baker v. Beech Aircraft Corp.* (1974) 39 Cal.App.3d 315, 324 [114

4  Cal.Rptr. 171]. To hold otherwise would condone utilizing the attorney-

5  client privilege to conceal fraud.

6        Finally, while Defendant's motion makes substantial efforts to color

7  Plaintiffs claims based on prior proceedings, the claims made regarding

8  these proceedings are, at best, misleading, and in most cases patently false.

9  Setting aside the fact that Defendant's request for judicial notice of their

10  "facts" is procedurally improper, Plaintiffs trust the transparent nature of

11  Defendant's efforts to avoid liability will not be lost on this Court. If, as

12  Defendant contends, there is truly no basis for liability, that will be born out

13  shortly in the discovery process. If, however, as Defendant has represented

14  to the court, they are accepting the facts in Plaintiffs' Complaint are true,

15  there is more than sufficient evidence to establish Defendant's liability.

16  Because Plaintiffs' ability to plead such facts is the only relevant inquiry at

17  this stage, Defendant's motion must be denied.

18  **II.    BACKGROUND FACTS**

19        The factual allegations regarding Plaintiffs' claims against Patton

20  Boggs are largely set forth in paragraphs 135-150.  Taken as true, the

21  allegations of the complaint establish that Defendants pursued the

22  bankruptcy "with the express intent of perpetrating a fraud on the

23  bankruptcy court in order to convert over $170 million in charitable

24  investors' foundation funds to the unrestricted control of Defendants for

25  their sole benefit." FAC 136.  Patton Boggs worked with NHF's officers

26  and directors, fraudulently and purposefully concealed material information

27  from the bankruptcy court regarding the claimed assets and liabilities of

28

PLAINTIFFS' OPPOSITION TO DEFENDANT PATTON BOGGS' MOTION TO DISMISS

1   NHF. FAC 138.  Specifically, Patton Boggs law firm "became aware of

2   significant evidence that the overwhelming majority of the funds existing at

3   NHF did not belong to NHF or the Houks, but instead were controlled by

4   charitable investors, including Plaintiffs.  Patton Boggs ignored these

5   findings and instead represented to the bankruptcy court that all the

6   charitable investors' money actually belonged to NHF.  FAC 146.  Patton

7   Boggs further concealed evidence that would have established these

8   charitable investors had rescissionary rights, and thus, creditor status.  FAC

9   147-149.

10       Defendant specifically represented to the bankruptcy court "The

11  Donors are not creditors of the Debtor.  The agreement signed by each

12  Donor at the time its Donor Advised Fund was established clearly provides

13  that all ownership and custody in the donated funds are relinquished to the

14  Debtor."  FAC 146.   This representation is contrary to the facts regarding at

15  least these Plaintiffs.  The Arizona plaintiffs had specific contracts granting

16  them the right of rescission.  The contracts provided them the right to retain

17  control of the charitable foundations, and included the right to rescind or

18  transfer the funds at NHF to another qualified 501(c) in NHF did not use the

19  funds for the charitable purposes directed by Plaintiffs.  FAC 147.  The

20  Behrmanns also had contracts that retained their right to control the

21  charitable foundations, and funds in their foundation.  The right of control

22  was so great that the Plaintiffs personally handled the private investment of

23  their individual foundations funds. FAC 149.  The Plaintiffs also paid an

24  annual management fee to NHF belying the claim that the money was

25  actually NHFs. FAC 150.  All of this information was known by Defendants

26  including Patton Boggs, but was purposefully, knowingly, and deliberately

27  concealed from the bankruptcy court. FAC 150.  Patton Boggs also assisted

28

1  NHF in filing false financial statements with the bankruptcy court that

2  grossly understated, and in many case,s concealed the true assets held by

3  NHF. FAC 139.

4  **A.      Clarification on the Bankruptcy Claims Against NHF**

5          Aside from the facts underlying this motion, Defendants have

6  attempted to misstate certain facts regarding the Bankruptcy Court

7  proceedings that bear clarification. The claim of "fraud" made by the

8  Behrmanns in the NHF bankruptcy proceedings had nothing to do with the

9  Behrmanns' subsequent appeal of the initial confirmation order.  Rather, in

10 the bankruptcy the Behrmanns alleged that they made contributions to

11 Highbourne Foundation (their charitable investment fund),  based upon

12 fraudulent representations and omissions prior to the commencement of the

13 NHF bankruptcy case.  The Behrmanns alleged that this fraud entitled them

14 to file a creditor's "claim" in the Chapter 11 proceedings because they had

15 an equitable right of rescission.  Accordingly, the Behrmanns filed a claim

16 in the NHF bankruptcy case seeking to recover against NHF.  NHF's

17 counsel objected to that claim which triggered a "contested matter" in the

18 NHF bankruptcy.  NHF's bankruptcy counsel filed a motion to dismiss with

19 supporting papers, so it was treated as a summary judgment motion under

20 FRCP 56.  The motion was DENIED by the Bankruptcy Judge who

21 observed that if the facts alleged by the Behrmanns were proven at trial they

22 would have a valid claim against NHF. The statement that the Bankruptcy

23 Court rejected the Behrmanns' fraud claim is flatly false.

24 **B.      Clarification on the Behrmanns' Bankruptcy Appeal**

25         Wholly separate and independent of the foregoing, the NHF

26 reorganization plan contained provisions (Sections 7.19, 7.20 and 7.21) that

27 purported to afford releases to certain non-debtor third parties (principally

28

1  NHF's directors and officers) as part of the plan.  The Behrmanns objected

2  to the plan on the basis that these provisions were not permissible under

3  applicable Chapter 11 decisional law (because they wished to preserve their

4  right to pursue claims against the Houk family.)  The Behrmanns' objections

5  to these plan provisions were overruled by the Bankruptcy Court and on

6  appeal to the federal District Court.  The Fourth Circuit reversed and ruled

7  that the plan provisions could not be sustained on the findings entered by

8  the Bankruptcy Judge.  On remand and reexamination of the evidentiary

9  record, the Bankruptcy Judge excised the provision providing for the release

10  of non-debtors (the Houk family) for pre-petition misconduct.

11  **III.    DISCUSSION**

12       **A.      Plaintiffs' Claims for Relief Should Not Be Dismissed**

13       Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) "are

14  viewed with disfavor" and are granted without leave to amend only in

15  "extraordinary" cases. *Broam v. Bogan* (9th Cir. 2003) 320 F.3d 1023,

16  1028(citations omitted).  When ruling on such a motion, the court is to "accept

17  as true all of the factual allegations set out in plaintiff's complaint, draw

18  inferences from those allegations in the light most favorable to plaintiff, and

19  construe the complaint liberally." *Rescuecom Corp. v. Google Inc.* (2d Cir.

20  2009) 562 F.3d 123, 127.

21       The court should also generally disregard extraneous evidence that does

22  not appear on the face of the complaint. *Arpin v. Santa Clara Valley Transp.*

23  *Agency* (9th Cir. 2001) 261 F.3d 912, 925. Defendant's motion relies on

24  various alleged facts and documents from outside the bounds of Plaintiffs'

25  complaint, but such matters are not properly subject to judicial notice for the

26  reasons discussed in Plaintiffs' separately-filed objections to their request for

27  judicial notice. In doing so, Defendant has misstated, and in some cases,

28

PLAINTIFFS' OPPOSITION TO DEFENDANT PATTON BOGGS' MOTION TO DISMISS

1   directly mislead the court regarding what has transpired in the underlying

2   bankruptcy as well as in the Behrmann's prior trial against its broker.

3        While Plaintiffs' opposition corrects the record, Defendant's attempt to

4   rely on ill-framed evidence outside of the operative complaint converts this

5   from a Rule 12 motion to a Rule 56 motion.  "In such cases, the Rule 56

6   summary judgment standard applies, and the moving party must establish that

7   there are no material facts in dispute and that he or she is entitled to prevail as a

8   matter of law." *Los Angeles News Service v. Conus Communications Co. Ltd.*

9   *Partnership* (C.D. Cal. 1997) 969 F.Supp. 579, 582 (question of jurisdiction

10  and merits of action are intertwined where Copyright Act provides basis for

11  both subject matter jurisdiction of federal court and plaintiff's substantive

12  claim for relief). Here, Defendants cannot possibly meet their burden, as there

13  are numerous disputed facts which if construed in Plaintiffs' favor would

14  entitle them to judgment.

15  **B.       The RICO Claim Is Not Barred By Collateral Estoppel**

16       Defendant suggests that rulings by the bankruptcy court collaterally

17  estopped Plaintiffs from pursuing this action.  Collateral estoppel or "issue

18  preclusion" may apply if a court has decided an issue of fact or law necessary

19  to a judgment.  The doctrine requires the moving party establish: (1) the issue

20  sought to be precluded is identical to one previously litigated; (2) the issue was

21  actually determined in the prior proceeding; (3) the issue's determination was a

22  critical and necessary part of the decision in the prior proceeding; (4) the prior

23  judgment is final and valid; and (5) the party against whom collateral estoppel

24  is asserted had a full and fair opportunity to litigate the issue in the previous

25  forum. *Collins v. Pond Creek Mining Co.* (4th Cir. 2006) 468 F.3d 213, 217.

26       Res judicata or "claim preclusion" has similar requirements, but applies

27  where there is: (1) a judgment on the merits in a prior suit; (2) the judgment

28

7

PLAINTIFFS' OPPOSITION TO DEFENDANT PATTON BOGGS' MOTION TO DISMISS

1  resolves claims by the same parties or their privies; and (3) there is a

2  subsequent suit based on the same cause of action.

3          The Moving Defendants appear to be focusing solely on a claim that

4  Plaintiffs cannot proceed due to collateral estoppel or issue preclusion.

5  Defendant was not, however, a party to the bankruptcy action. Thus, no rulings

6  of the bankruptcy court would have preclusive effect from Plaintiffs litigating

7  their claims against these Defendants. *Martin v. Wilks* (1989) 490 U.S. 755

8  [109 S.Ct. 2180, 104 L.Ed.2d 835] (A Non-Party does not enjoy the preclusive

9  effects of an earlier proceeding); See also, *Kourtis v. Cameron* (9th Cir. 2005)

10 419 F.3d 989, 996, (allowing claims to be litigated by non-party to prior

11 proceeding).  There has never been any adjudication of the merits of Plaintiffs

12 claims against Patton Boggs.  Moreover, the right to recover as a creditor in

13 bankruptcy is separate and distinct from the right to recover for injury sustained

14 as a result of RICO fraud. Where the same rights were not adjudicated in the

15 prior proceeding, there is no privity, and thus, no preclusive effect. *Id.* at p.

16 989; See also *In re Schimmels* (9th Cir. 1997) 127 F.3d 875, 881.

17         Additionally, the other necessary elements to establish a right to assert

18 collateral estoppel are also missing.  First, the Plaintiffs have never asserted a

19 claim for bankruptcy fraud or RICO before the bankruptcy court. Thus, the

20 court could not have issued a full and final adjudication of the claim.

21 Similarly, Plaintiffs have not had a full and fair opportunity to litigate the

22 claims in the bankruptcy action.  Finally, there has not been "final and valid"

23 prior judgment.

24         Despite this, Defendants continue to argue that the bankruptcy court's

25 order confirming NHF's Plan for Reorganization was a final judgment further

26 precluding Plaintiffs from a "collateral attack" on that judgment. That order,

27 however, was timely appealed by the Behrmanns - first to the District court and

28

PLAINTIFFS' OPPOSITION TO DEFENDANT PATTON BOGGS' MOTION TO DISMISS

then to the Fourth Circuit Court of Appeals. On December 9, 2011, the Fourth Circuit Court of Appeals vacated the Plan and remanded the matter back to the bankruptcy court for further consideration. Specifically, the court stated:

> "Because the present record does not allow us to assess—under any standard of review—whether NHF's circumstances entitle it to the benefit of the Release Provisions, we must *vacate* the district court's judgment and remand the case to allow the bankruptcy court—if the record permits it—to set forth specific factual findings supporting its conclusions. (*Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 713 (4th Cir. 2011).)

On August 27, 2012, and October 22, 2012, the court made additional rulings which modified the Plan. NHF and the Houks are now appealing these rulings. Thus, as of this date, there is no confirmed Plan or final judgment resulting from that Plan. Accordingly, contrary to Defendants' suggestions the six (6) month window to challenge fraud underlying the Plan has yet to run. 11 U.S.C. § 1144.

Moreover, the law is clear that the six (6) month timeframe to challenge fraud in the bankruptcy court is not *an exclusive remedy. Bizzell v. Hemingway* (4th Cir. 1977) 548 F.2d 505("Although a party attacking an arrangement procured by fraud must ordinarily follow the procedure set forth in section 386 of the Bankruptcy Act, 11 U.S.C. § 786,4 this provision does not provide an exclusive remedy.)[1] Thus, because bankruptcy fraud is one of the causes enumerated under RICO, Plaintiffs are free to file this action to seek redress for

---

[1] Section 386 was replaced by section 1144 in the Bankruptcy Reform Act of 1978, but its language and the interpretation of that language is the same. *In re Michelson* (Bankr. E.D. Cal. 1992) 141 B.R. 715, 724-25("Since 11 U.S.C. § 1144 was derived from Bankruptcy Act § 386 and from Bankruptcy Rule 11–41 without substantial change, the cases decided under the former law retain vitality and inform the interpretation of 11 U.S.C. § 1144")

Defendants' activities. Plaintiffs are not limited to doing so only in the bankruptcy court, as the law interpreting RICO establishes the parallel jurisdiction of the bankruptcy court and the federal district court. *Grimmett v. Brown* (9th Cir. 1996) 75 F.3d 506, 515-16 ("With respect to RICO claims, the bankruptcy court and federal court are more properly considered "parallel avenues of relief.") Thus, even if Plaintiffs raised the RICO claim in the bankruptcy court (which they have not), it nevertheless is permitted to simultaneously press the claim against these Defendants in federal court. *Id.* at p. 506.[2]

Regardless of whether the present claims were pursued in federal court or in bankruptcy court, however, "if the confirmation was procured by fraud, the binding nature of the doctrines of res judicata and/or collateral estoppel will not apply, thus prohibiting the debtor from benefitting from his misdeeds to the detriment not only of his creditors but to the bankruptcy system as a whole. *In re Stemple* (E.D. Virginia 2007) 361 BR 778, 797. Thus, even if the doctrines of res judicata or collateral estoppel might otherwise potentially apply, because the allegations here (which must be taken as true), include fraud in procuring the confirmation order, it cannot be applied in this case.

### C.    The Order Authorizing Payment Of Patton Boggs' Fees Does Not Bar The Plaintiffs' Claims

---

[2] The request to transfer this entire case to the Bankruptcy Court under the "first to file" rule is improper and should be denied. The "first to file" rule may be invoked only "when a complaint involving the *same parties* and issues has already been filed in another district." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir.1991) (emphasis added). However, if the "parties involved in the two suits were not the same, adherence to the first-to-file rule would be reversible error." *Id.* at 628 n.13. Here, there is no action filed in Virginia or any other venue which involves the same parties or the same issues as are before the court here. No other court has ever been presented with the facts, evidence, or claims Plaintiffs assert in the First Amended Complaint. There is no basis for transfer of this action.

1    Defendant claims that its legal services were "approved" by the

2    bankruptcy court when it issued an order authorizing payment of Patton

3    Boggs' attorney fees, and the ruling thus acts as a bar to any claims against

4    the firm. The case cited in support of that argument is inapposite, however.

5    Defendant has cited no case supporting their claim that the order authorizing

6    payment of attorney's fees is a collateral bar to a third party asserting fraud

7    against the attorney.  There are no such cases Plaintiffs have been able to

8    find.  Rather, the cases addressing the attorney fees paid have only involved

9    a client's malpractice claim against the attorney. In that circumstance the

10   claim may be barred by the prior adjudication of a disputed fee petition.

11        *In re Susanna Shaw* (ND CA 2000) involved a bankrupt plaintiff who

12   opposed her attorney's application for payment of his fees in the bankruptcy

13   court alleging there had been attorney malpractice.  Over her objections, the

14   bankruptcy court ordered payment of the attorney fees.  Subsequently,

15   plaintiff filed a civil complaint alleging legal malpractice.  The Court noted

16   that plaintiff "was able to (and did) assert her malpractice claim as a defense

17   to Replogle's application for fees, and because the Bankruptcy Court

18   actually considered her claim in reaching a judgment that became final,

19   Shaw has already had a full and fair opportunity to litigate her claim. As a

20   result, Shaw's current state court malpractice suit is barred by both res

21   judicata and collateral estoppel."

22        Here, there are several key distinctions. Plaintiffs were not the debtors

23   in the bankruptcy proceeding.  Instead, Plaintiffs were potential creditors

24   some of whom were never even properly notified of the bankruptcy

25   proceeding.   Plaintiffs are not asserting a legal malpractice claim against

26   Patton Boggs.  They were not represented by the firm at any time, and are

27   not suing for malpractice, but for the fraud perpetrated on the bankruptcy

28

court, and the firm's part in the on-going RICO enterprise.  Furthermore, unlike in *In re Susanna Shaw*, there has been no full and final evaluation of the adequacy of Patton Boggs conduct as alleged in the First Amended Complaint at any point by the bankruptcy court.  The order awarding Patton Boggs their attorney fees simply has no bearing on the present action except to perhaps help to establish a basis and motive for the actions of the firm.

### D.      The Noerr-Pennington Doctrine Does Not Provide Immunity To Defendant

The Noerr-Pennington doctrine does not apply to this case or the claims against Patton Boggs.  As the Supreme Court has stated, "concerted efforts to restrain or monopolize trade by petitioning government officials are protected from antitrust liability under the doctrine established by" the Noerr-Pennington doctrine. *Allied Tube & Conduit Corp v. Indian Head, Inc.*, (1988) 486 U.S. 492, 499, 108 S.Ct. 1931, 1936.  The doctrine was developed and applies to antitrust liability and cases involving efforts to "restrain or monopolize trade" and other anticompetitive conduct.  Here, Defendant has not established that the Noerr-Pennington doctrine even applies to cases such as the one at bar.

As discussed by the U.S. Supreme Court in *City of Columbia v. Omni Outdoor Adver., Inc.*, (U.S.S.C. 1991) 499 U.S. 365, 379-83, 111 S. Ct. 1344, 1353-55, 113 L. Ed. 2d 382.  The doctrine established by the Noerr-Pennington cases "recognized that the federal antitrust laws also do not regulate the conduct of private individuals in seeking anticompetitive action from the government. This doctrine, rests… ultimately upon a recognition that the antitrust laws, "tailored as they are for the business world, are not at all appropriate for application in the political arena." *Noerr, supra,* 365 U.S., at 141, 81 S.Ct., at 531. That a private party's political motives are

1   selfish is irrelevant: "*Noerr* shields from the Sherman Act a concerted effort

2   to influence public officials regardless of intent or purpose." *Mine Workers*

3   *v. Pennington,* 381 U.S. 657, 670, 85 S.Ct. 1585, 1593, 14 L.Ed.2d 626

4   (1965).  If the conduct was wrongful there may be other remedies, but as for

5   the Sherman Act, the *Noerr* exemption applies. *City of Columbia, supra* 499

6   U.S. at 83.

7            Plaintiffs do not allege Patton Boggs engaged in conduct in violation

8   of the Sherman Act, was restrictive of trade, or other anti-competitive

9   conduct.  Defendant attempts to have the court simply unilaterally apply the

10  protection offered by the Noerr-Pennington doctrine without ever first

11  establishing a right to the protection of the doctrine.  Because the Noerr-

12  Pennington doctrine does not apply to the facts or circumstances of this

13  case, which does not involve antitrust law, the court need not undertake

14  even a preliminary analysis of the doctrine.

15           Even assuming *arguendo*, the Defendant was even potentially

16  protected by *Noerr-Pennington*, the protection offered by the doctrine

17  would be precluded due to the Sham litigation exception. The Ninth Circuit

18  has identified three circumstances in which the sham litigation exception

19  might apply: first, where the lawsuit is objectively baseless and the

20  defendant's motive in bringing it was unlawful; second, where the conduct

21  involves a series of lawsuits 'brought pursuant to a policy of starting legal

22  proceedings without regard to the merits' and for an unlawful purpose; and

23  third, if the allegedly unlawful conduct 'consists of making intentional

24  misrepresentations to the court, litigation can be deemed a sham if 'a party's

25  knowing fraud upon, or its intentional misrepresentations to, the court

26  deprive the litigation of its legitimacy.'" *Sosa v. DIRECTV, Inc.* (9th Cir.

27  2006) 437 F.3d 923, 938, internal citations omitted.; *Kottle v. Northwest*

28

1   *Kidney Ctrs.* (9th Cir. 1998) 146 F3d 1056, 1060.   "Even though [plaintiff]

2   must ultimately prove the existence of a 'sham' by clear and convincing

3   evidence, it need only show that there is a genuine issue of material fact to

4   avoid summary judgment." *Kaiser Found. Health Plan, Inc., supra,* 552

5   F.3d at p. 1044.  Similarly on a motion to dismiss, Plaintiff cannot be held to

6   the clear and convincing evidence standard.  Here, Plaintiffs' allegations

7   must be accepted as true, and Plaintiffs have clearly and explicitly alleged

8   facts which taken as true, are sufficient to establish that the bankruptcy

9   filing constituted a sham proceeding.

10          A law firm that engaged in discovery misconduct in an antitrust suit

11   was subsequently sued by the same plaintiff, who now alleged that the

12   defense provided by the law firm was designed to stretch out the antitrust

13   suit and thus allow defendants (the firm's clients) to prolong their price-

14   fixing activity. Despite the misconduct, the doctrine may provide immunity

15   from suit if "There was enough objective merit and subjective good faith in

16   the defense of the original antitrust suit to cover it, and the conduct

17   incidental to it, with the *Noerr-Pennington* cloak." *Freeman v. Lasky, Haas*

18   *& Cohler* (9th Cir. 2005) 410 F.3d 1180, 1185.

19          *Noerr-Pennington* provides no immunity however, where a lawyer's

20   knowing fraud upon, or intentional misrepresentations to, the court "deprive

21   the litigation of its legitimacy." *Kearney v. Foley & Lardner, LLP*, (9th Cir.

22   2009) 590 F.3d 638, 648.  The "sham" exception applied where a law firm

23   suppressed evidence in the underlying case and intentionally misrepresented

24   that evidence did not exist.  Here, the allegations of the present case are

25   more similar to the facts of *Kearney v. Foley & Lardner*, supra, and as the

26   Court of Appeals noted in overturning the trial judge's dismissal of the

27

28

1   claims, "Defendants' alleged misconduct here was precisely the sort the

2   sham exception was created to address."

3       The allegations of the First Amended Complaint must be assumed to

4   be true. *Kearney, supra* 590 F.3d 646.  As the Kearney court noted, she

5   "has alleged intentional misrepresentations to the court, and fraud upon the

6   court through the suppression of evidence."  This "knowing fraud" deprives

7   the litigation of its legitimacy.  So too, the Plaintiffs here have alleged

8   Patton Boggs made intentional knowing misrepresentations to the court.

9       Among the allegations of the First Amended Complaint, Plaintiffs

10  allege the Patton Boggs law firm "became aware of significant evidence that

11  the overwhelming majority of the funds existing at NHF did not belong to

12  NHF or the Houks, but instead were controlled by charitable investors,

13  including Plaintiffs.  Patton Boggs ignored these findings and instead

14  represented to the bankruptcy court that all the charitable investors' money

15  actually belonged to NHF.  FAC 146.    Defendant specifically represented

16  to the bankruptcy court "The Donors are not creditors of the Debtor.  The

17  agreement signed by each Donor at the time its Donor Advised Fund was

18  established clearly provides that all ownership and custody in the donated

19  funds are relinquished to the Debtor."  FAC 146.   This representation is

20  contrary to the facts regarding these Plaintiffs.

21      Defendant also fraudulently and deliberately concealed information

22  from the bankruptcy court.  Defendant knew the Arizona plaintiffs had

23  specific contracts granting them the right of rescission.  The contracts

24  provided them the right to retain control of the charitable foundations, and

25  included the right to rescind or transfer the funds at NHF to another

26  qualified 501(c) in NHF did not use the funds for the charitable purposes

27  directed by Plaintiffs.  FAC 147.  The Behrmanns also had contracts that

28

PLAINTIFFS' OPPOSITION TO DEFENDANT PATTON BOGGS' MOTION TO DISMISS

retained their right to control the charitable foundations, and funds in their foundation.  The right of control was so great that the Plaintiffs personally handled the private investment of their individual foundations funds. FAC 149.  The Plaintiffs also paid an annual management fee to NHF belying the claim that the money was actually NHFs. FAC 150.  Patton Boggs also assisted NHF in filing false financial statements with the bankruptcy court that grossly understated, and in many cases concealed the true assets held by NHF. FAC 139.  All of this information was known by Defendants including Patton Boggs, but was purposefully, knowingly, and deliberately concealed from the bankruptcy court. FAC 150.

Just as the Ninth Circuit held a complaint alleging an attorney or law firm made intentional misrepresentations in an underlying litigation was not subject due to immunity based on *Noerr-Pennington*, so too this court should decline to extend the immunity to Defendant.

**E.**   **Although Plaintiffs' Complaint Mentions The Rico Claim Is Based On 18 USC 157, The Claims Against Patton Boggs Are Also Authorized By 18 USC 152**

18 USC 1961 explicitly states that bankruptcy fraud (under title 11) is a predicate act for a RICO action.  See 18 USC section 1961(D). Although the section explicitly exempts cases under section 157, it does not preclude all cases based in part on bankruptcy fraud.  Plaintiffs assert the exemption under section157 applies solely to those bankruptcy fraud cases which are pursued in a criminal court, and not civil cases.  Additionally, the definition of racketeering activity includes: (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title).

Title 18 U.S.C. §157 provides: A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so--

1.  files a petition under title 11;

2.  files a document in a proceeding under title 11; or

3.  makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title, shall be fined under this title, imprisoned not more than 5 years, or both.

While it is true Patton Boggs' conduct could potentially constitute bankruptcy fraud under section 157, this does not preclude the claims under the RICO statute as based on 18 U.S.C. sections 152(2), (3), (5), (6), or (7):

**(2)**  knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11;

**(3)**  knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11;

**(5)**  knowingly and fraudulently receives any material amount of property from a debtor after the filing of a case under title 11, with intent to defeat the provisions of title 11;

**(6)**  knowingly and fraudulently gives, offers, receives, or attempts to obtain any money or property, remuneration, compensation, reward, advantage, or promise thereof for acting or forbearing to act in any case under title 11;

(7)     in a personal capacity or as an agent or officer of any person or corporation, in contemplation of a case under title 11 by or against the person or any other person or corporation, or with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation;

Paragraphs 135-150 of the First Amended Complaint contain the primary factual allegations establishing the fraudulent representations and conduct undertaken by Patton Boggs and its attorneys. Although the First Amended Complaint may not explicitly refer to section 152, if this failure forms the basis for a grant of Defendant's motion, Plaintiffs request leave to amend the complaint to include further allegations supporting the claims against Patton Boggs based on section 152.

### F.      Plaintiffs RICO Claim is Pled With Sufficient Particularity

Plaintiffs have standing to bring a RICO claim if they can plead facts establishing (1) that they suffered an injury to a property interest; and (2) that the alleged RICO violation caused the injury. *Canyon County v. Syngenta Seeds, Inc.* (9th Cir. 2008) 519 F.3d 969, 972; 18 U.S.C. § 1964(c). Plaintiffs have adequately pled both of these elements. Specifically, Plaintiffs have pled that based on Defendants' RICO enterprise they contributed "cash and property…in the aggregate amount of approximately $1.09 million." FAC ¶ 166. These contributions were made between January of 1997 and December of 2007. FAC ¶ 166. Plaintiffs further have pled that as a result of Defendant's RICO enterprise the Behrmanns lost approximately $650,000 of this money. FAC ¶ 169.  The Griegos lost approximately $500,000. FAC 171.  The Gillette's lost over $125,000 due to the RICO action.  FAC 172.   The

1   O'Connell's had over $40,000 taken from their foundation. FAC 173. This

2   satisfies the standing requirement of an injury to property.

3       Plaintiffs have also pled that the RICO violation caused the injury. FAC

4   ¶ 1-9, 50-184. After setting forth over 130 paragraphs outlining the RICO

5   enterprise and the specific illegal acts taken by Defendant, Plaintiffs state that

6   as "a direct and proximate consequence of Defendant's material breaches of the

7   duties owed to them, Plaintiffs have suffered substantial damages, losses and

8   injuries in an amount not less that the value of the cash and property

9   confiscated" by Defendant. FAC ¶ 183. This satisfies the causation component

10  for standing.  Based on the foregoing, there is no merit to the argument that

11  Plaintiffs have not adequately pled facts sufficient to establish standing to bring

12  a RICO action.

13      Defendant's efforts to label such facts as "vague" or not meeting Rule

14  9(b)'s pleading standard does not make their allegations true. A basic reading

15  of Plaintiffs' Complaint adequately demonstrates that these facts are pled with

16  more than sufficient particularity to meet Plaintiffs' burden and establish

17  liability against this Defendant. See *First Capital Asset Management, Inc. v.*

18  *Satinwood, Inc.* (2d Cir. 2004) 385 F.3d 159, 178(denying motion to dismiss

19  RICO claims on similar grounds).

20          **1.    Plaintiffs Have Pled A Pattern Of Racketeering**

21                  **Activity Sufficient To Maintain Their RICO Claim**

22      In the Central District it is established that a "pattern" of racketeering

23  activity requires two acts of racketeering activity within ten years of each other.

24  *Harper v. New Japan Securities Intern., Inc.* (C.D. Cal. 1982) 545 F.Supp.

25  1002, 1004.  Each act of criminal activity counts as act of racketeering activity,

26  even if numerous acts arise out of same episode. *Id.*

27

28

Here, Plaintiffs have pled detailed accounts of the bankruptcy fraud engaged in by the Moving Defendant. FAC 135-150. Defendants' efforts to label such facts as "vague" or not meeting Rule 9(b)'s pleading standard does not make their allegations true. A basic reading of Plaintiffs' Complaint adequately demonstrates that these facts are pled with more than sufficient particularity to meet Plaintiffs' burden and establish liability against these Defendants. See *First Capital Asset Management, Inc. v. Satinwood, Inc.* (2d Cir. 2004) 385 F.3d 159, 178(denying motion to dismiss RICO claims on similar grounds).

**2. Plaintiffs Have Pled Facts Establishing Defendants' "Operation" And "Management" of the Enterprise Sufficient To Maintain Their RICO Claim**

Defendant claims RICO liability cannot attach because they were not involved in the "operation" or "management" of the RICO enterprise. In support of this argument, Defendant cites this Court to the holding in *Baumer v. Pachal*, 8 F.3d 1341. In doing so, Defendant suggest they only provided legal services, and thus, cannot be held liable for RICO claim. The facts in *Pachal*, however, are inapposite from those pled in the instant action.

The facts in this case are more akin to the Northern District's holding in *San Francisco Bay Area Rapid Transit Dist. v. Spencer* (N.D. Cal., Sept. 6, 2005, C 04-04632 SI) 2005 WL 2171906("Spencer"). In *Spencer*, Defendant's motion to dismiss was denied where plaintiff properly alleged the attorneys were active participants in directing the fraudulent scheme.

Likewise, here, Plaintiffs have pled that the moving Defendant was part of the legal brains behind the operation to defraud charitable investors and avoid the IRS. FAC ¶ 135-150.. This is not a case where these Defendants simply "drafted a partnership agreement," or "an authorized letter." Defendants were an integral part of the scheme created avoid the IRS and convert the

1   Foundation funds. FAC ¶ 135-150.  Because Plaintiffs have pled the same,

2   Defendants motion cannot succeed on this ground.

3        Here, Plaintiffs' Complaint makes clear that the moving Defendants

4   adopted NHF's goal of concealing critical information from Plaintiffs and from

5   the bankruptcy court in an effort to forward the goal of the Enterprise to

6   convert control of the funds. To suggest, as Defendants do, that they did not

7   adopt the criminal endeavor defies logic. If, as Defendants claim, they had not

8   adopted this criminal endeavor and were simply performing legal services,

9   would have had no problem providing a full, complete, and accurate

10  representation to the bankruptcy court regarding the nature of Plaintiffs'

11  foundations, the contracts rescissionary rights, and the control retained by these

12  Plaintiffs.

13  **IV.    CONCLUSION**

14       For the reasons set forth above, Plaintiffs respectfully request

15  Defendants Rule 12 Motion be denied in its entirety. To the extent the court

16  deems otherwise, Plaintiffs request leave to amend to clarify their allegations

17  against these Defendants, and add additional allegations regarding the legal

18  defense fund and the profits derived therefrom that will only strengthen

19  Plaintiffs' claims.

20       Alternatively, if this Court decides to convert Defendants 12(b)(6)

21  motion to a Rule 56 motion for summary judgment, Plaintiffs respectfully

22  request this Court allow time for discovery, pursuant to Rule 56(f), before

23  ruling on such a motion. *Lee v. City of Los Angeles* (9th Cir. 2001) 250 F.3d

24  668, 688.

25  //

26  //

27

28

1

2   DATED: December 21, 2012        NYE, PEABODY, STIRLING, HALE & MILLER LLP

3

4                                        By: _____

5                                              Jonathan D. Miller
                                               Attorney for Plaintiffs
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT PATTON BOGGS' MOTION TO DISMISS

**PROOF OF SERVICE**

RE: *John and Nancy Behrmann, et al. v. John T. Houk III, et al.* CASE # CV12-5636 DMG (CWx)

I am employed in the County of Santa Barbara, State of California. I am over the age of eighteen years and not a party to this action. My business address is 33 West Mission, Suite 201, Santa Barbara, California 93101.

On the date stated below, I served the following documents: **PLAINTIFFS' OPPOSITION TO DEFENDANT PATTON BOGGS' MOTION TO DISMISS** on the interested parties in this action:

James P. Fogelman
Shannon E. Mader
Michael Menssen
Karen Moody
GIBSON, DUNN AND CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197

Jon Wilson
M. John Carson
A. Joel Richlin
FOLEY AND LARDNER LLP
555 S. Flower St, Suite 3500
Los Angeles, CA 90071

Edith R. Matthai
Gabrielle M. Jackson
David J. Weinman
Christy Gargalis
ROBIE & MATTHAI
500 S. Grand Ave, Ste 1500
Los Angeles, CA 90071

[] [By Fax Service] I caused such document(s) to be sent via facsimile transmission on December 21, 2012.

[X] [By Electronic Service] I caused such document(s) to be sent electronically on December 21, 2012 in accordance with the Court's electronic filing ("ECF") rules, pursuant to which registered ECF users receive service copies by e-mail delivery. A courtesy copy will follow as stated above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: December 21, 2012

_____
Jenna Gould